November 23, 2022

James H. Brady
2422 Apple Ridge Circle
Manasquan, NJ 08736

Hon. Judge Donald M. Middlebrooks
Paul G. Rogers Federal Building and U.S. Courthouse
701 Clematis Street
Room 257
West Palm Beach, Florida 33401

Re: Index No. 9:22-cv-81780 *President Donald J. Trump v. Letitia James*

Dear Judge Middlebrooks:

I have a lot of information that will be very helpful to this Court. Please make sure this friend of the court letter is put on the docket sheet.

First it should be pointed out to this Court that currently no judge, including Judge Engoron, has ever done an analysis of the September 21, 2022 *Complaint* filed by Letitia James against the Trump's and the Trump organization. As a matter of law, it was wrong and unconstitutional for Judge Arthur Engoron to freeze the Trump Assets on November 3, 2022 without first ever doing any of the foundational tests needed to determine if the fraud charges in Ms. James's September 21, 2022 *Complaint* were supported.

The reason the needed tests were not mentioned or addressed in the September 21, 2022 *Complaint* is because Ms. James knew her fraud claims would not pass the 5 prong test required for a valid fraud claim.

The five prong fraud test was also never performed by Judge Engoron because he knew the September 21, 2022 fraud *Complaint* was hopelessly flawed because would not pass any of the five factual allegations needed for a cause of action for fraud.

In order for this Court to make a decision as to the merits of the *Complaint* before it now, the Court must read the *Complaint* filed by Ms. James on September 21, 2022 to determine whether it was true, as the Trump's claim, that the September 21, 2022 *Complaint* was in fact actually nothing more than a baseless, unconstitutional, political

1

FILED BY _____ D.C.

NOV 28 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

hit job filed for the sole purpose of destroying a man Ms. James publicly speaks of with disdain.

I am submitting as exhibits to this letter  proof  that it is true when Mr. Trump's attorneys  claim that the Trump's are being treated unfairly and unconstitutionally by both Ms. James and Judge Engoron.  I too have been the victim of the same type of abusive, shameful and unconstitutional conduct by both Ms. James and Judge Engoron.

Indeed, the attached letter dated November 4, 2022 to New York State Attorney General Letitia James (Exhibit A) proves that at the exact same time Ms. James was attacking New York City developer Donald Trump with false claims she is helping other politically connected billionaires get away with huge and destructive crimes against me.

The first four paragraphs of my November 2, 2022 letter to Ms. Letitia James shown below (Exhibit A) gives a summary of the two crimes against me that Ms. James continues to collaborate in covering up as NYS Attorney General:

> "You have deliberately completely ignored addressing two horrific crimes that you know took place against me and my wife that destroyed our family business Studio450 and wiped out our life savings of over $2.3 million dollars on September 5, 2018.
>
> Specifically, you know the first admitted crime involved Judge Judy Scheindlin's stepson Gregory Sheindlin who stipulated under oath at his May 4, 2021 deposition that the June 26, 2015 Jury interrogatory sheet that he and Judge Barry Ostrager represented as the grounds to collect over 1.7 million dollars on a personal guarantee never even had a question pertaining to personal guarantees on the June 26,2015 Jury interrogatory sheet.  (emphasis added) Judge Ostrager certainly knew none of the three questions on the June 26,2015 Jury sheet said anything about "personal guarantees "since he was the person that wrote the jury sheets that he kept secret from Brady till the trial was over. (emphasis added )
>
> You also know that the second proven crime is the fact that I was forced to pay over $500,000.00 to the lawyers for the New York Developers who stole the $70-90 million in air rights that were affirmed to be contractually appurtenant to my former 12th floor and Roof Unit Apartment in a commercial apartment named 450 West 31st Street Owners Corp. You know that the ongoing fraud scheme in this air rights case is to ignore the fact that my contract (which was registered in your office in 1980) and the final higher February 11, 2010 Appellate Division, First

Department Decision have always governed over the final lower July 15, 2014 Supreme Court Decision of Judge Shirley Kornreich.

You need to stop colluding in these crimes described above since no one, including you, is above the law."

Similarly, my attached November 17, 2022 letter to Judge Arthur Engoron (Exhibit B), which includes 4 exhibits, proves how unfairly I was treated by both Ms. Letitia James and Judge Engoron in the past.

II.

What makes the September 21, 2022 fraud *Complaint* filed by Ms. James against the Trump's and the Trump Organization so frivolous and untrue is the fact that Ms. James never even speaks of or addresses any of the multiple elements required for a successful fraud claim.

There are five elements to a fraud claim: "(1) a material misrepresentation of a fact, (2) knowledge of its falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009). A plaintiff alleging fraud must meet each element in order to prevail, whether it be on a motion or at trial. *Menaco v. New York Univ. Med. Ctr.*, 213 A.D.2d 167 (1st Dept. 1995). Failure to meet any one element results in the dismissal of the action. *Gregor v. Rossi*, 120 A.D.3d 447 (1st Dept. 2014).

A reading of the September 21, 2022 *Complaint* proves that Ms. James deliberately failed mention or conduct a pre-filing inquiry to determine if all of these five mandatory elements listed above were reached before she filed the *Complaint* against the Trump's.

The injustice against the Trump's was compounded by the fact that Judge Engoron adopted the false claim that the Trumps committed Fraud without ever showing how he made that untenable claim. Ms. James's fraud allegations were not supported by the five needed elements for there to be a legal and valid fraud claim against the Trump's and the Trump Organization. Judge Engoron never addressed the five prongs needed for a fraud claim because he also know the fraud claims would not pass the tests needed for a valid fraud claim.

Only one of the prongs for a fraud claim is asserted in the *Complaint,* namely that for decades Donald Trump, his three oldest children and his Organization exaggerated the values and sizes of the assets that they owned.

3

However, what is not mentioned in the September 21,2022 complaint is the fact that the banks and insurance companies that Trump used for his loans and insurance policies all knew full well that Donald Trump was notorious for grossly exaggerating the size and value of his assets. The parties to the contracts knew the claims were false, which is why the parties to the contracts never in over 40 years asserted that they were actually "lied to" or defrauded by the Trump's or the Trump Organization.

Donald Trump did not commit fraud by exaggerating the size and value of his assets. Indeed, it was the banks and insurance companies who may have committed fraud by going along with Trump's exaggerated valuations.

By playing along with the exaggerated values and sizes of Trump's assets, the banks and insurance companies do not have clean hands, which is one of the many reasons these institutions never asserted themselves that they were victims of fraud by the Trump's or the Trump Organization.

Under the law, Ms. James has no standing to charge the Trump's with fraud when no such claim is being made by any of the sophisticated parties to the contracts that were entered into with the Trumps in the past 50 Years.

Ms. James knows that even if Donald Trump's exaggerations of his wealth are deemed as "lies," that still would not alone mean he committed fraud since the other prongs required for a successful fraud claim have not been reached or asserted in the September 21, 2022 *Complaint*.

It was not a "mistake" that there is no discussion of what is needed for a fraud claim in the September 21, 2022 *Complaint*. It was a deliberate falsity by Ms. James and the Office of the New York State Attorney General.

Trump's lawyers should have made these legal arguments to Judge Engoron and they should have made these arguments in the their Florida State Court and Florida Federal Court Actions. Not making these arguments was certainly legal malpractice.

Judge Engoron knew or should have known about the fatal flaws in the September 21, 2022 *Complaint* and dismissed the September 21, 2022 *Complaint* as a matter of law for its pleading failures. Instead, Judge Engoron unjustly froze Trump's assets on November 3, 2022 after Ms. James made her October 31, 2022 Preliminary Injunction Motion to have the Trump Assets Frozen. None of the requirements needed for issuing a preliminary injunction were performed or even discussed by Judge Engoron or Ms.

James , thus their actions were an unconstitutional violation of the Trump's constitutional rights.

The fact is that Ms. James filed such a harsh complaint and sought such hard punishment against the Trump's and the Trump Organization when she knew her September 21,2022 *Complaint* did not even discuss any of the five prongs needed to have a valid fraud claim, proving the September 21,2021 *Complaint* was frivolous and filed in bad faith. No other explanation is plausible.

It is undisputed in the September 21, 2022 *Complaint* that the banks themselves never said they relied on anything Donald Trump said about the size and value of the Trump assets.

It is undisputed in the September 21, 2022 *Complaint* that the Trump's and the Trump Organization never said anything that the banks could not have proven false by their own due diligence.

It is undisputed in September 21, 2022 *Complaint* that the banks and insurance companies also never said were harmed in any way.

These above facts prove there was a complete lack of foundation for Ms. James's legal conclusions that the Trump's committed fraud.  A review of the September 21, 2022 *Complaint* proves Ms. James and her office failed to conduct a pre-filing inquiry to determine if the allegations of fraud would pass the five prong test.

My November 17, 2022 letter to Judge Engoron (Exhibit B) proves how unfair, cruel and incompetent this man is, and my proof supports Trump's claims against Judge Engoron.

The evidence in the November 17, 2022 letter proves Judge Engoron has a bad habit of making rulings that do not follow the required tests or the facts.  Exhibit B proves that in 2012. the Appellate Division, First Department reversed every single part of a decision he made against me in 2010.

Judge Engoron was wrong again when he went along with freezing the Trump assets without conducting a test to determine whether any of the fraud causes of actions against the Trump's and their Organization had any basis in law under the five  prong test that he was required to utilize.

This Court should permit Trump to amend his *Complaint* now that it has been moved to Federal Court by Ms. James.  In the amended *Complaint* the Trump's should switch to competent lawyers that would make the arguments found in this letter since these arguments meet the federal requirement of being "a short and plain statement of the claims showing that the pleading is entitled to the relief."

Permitting Mr. Trump to amend his *Complaint* to make these arguments would certainly be in the public interest and would be in the interest of justice.

I am available to answer any questions the Court may have.  My email address is Bradyny@gmail.com and my cell phone number is 201-923-5511.

Sincerely,

6

# EXHIBIT

# A

November 2, 2022

James H. Brady
2422 Apple Ridge Circle
Manasquan, NJ  08736

New York State Office of the Attorney General
Letitia James, Attorney General
The Capitol
Albany, NY  12224-0341

Dear Ms. James:

You have deliberately completely ignored addressing two horrific crimes that you know took place against me and my wife that destroyed our family business Studio450 and wiped out our life savings of over $2.3 million dollars on September 5, 2018.

Specifically, you know the first admitted crime involved Judge Judy Scheindlin's stepson Gregory Scheindlin who stipulated under oath at his May 4, 2021 deposition that the June 26, 2015 Jury interrogatory sheet that he and Judge Barry Ostrager represented as the grounds to collect over 1.7 million dollars on a personal guarantee never even had a question pertaining to personal guarantees on the June 26,2015 Jury interrogatory sheet. (emphasis added) Judge Ostrager certainly knew none of the three questions on the June 26,2015 Jury sheet said anything about "personal guarantees "since he was the person that wrote the jury sheets that he kept secret from Brady till the trial was over. (emphasis added )

You also know that the second proven crime is the fact that I was forced to pay over $500,000.00 to the lawyers for the New York Developers who stole the $70-90 million in air rights that were affirmed to be contractually appurtenant to my former 12th floor and Roof Unit Apartment in a commercial apartment named 450 West 31st Street Owners Corp. You know that the ongoing fraud scheme in this  air rights case is to ignore the fact that my contract (which was registered in your office in 1980) and the final higher February 11, 2010 Appellate Division, First Department  Decision have always governed over the final lower July 15, 2014 Supreme Court Decision of Judge Shirly Kornreich.

You need to stop colluding in these crimes described above since no one, including you, is above the law.

The attached letter from August 15, 2019 proves that for years you and your Assistant Attorney Generals have been personally involved in the crimes and coverup of the two crimes proven and admitted to have taken place against me and my family that wiped out our life saving on over 2.3 million dollars on September 5,2018.

Your  August 15, 2019 letter to Judge Scofield proves that you and your Assistant Attorney General Johnathan D. Conley totally lied and fiercely insisted on advancing the totally false argument  that a filing injunction imposed against me by Judge George B. Daniels on February 3,2017 in the case of Brady v Goldman would bar me from filing a complaint criminal complaint against Judge Barry Ostrager.

You and Mr. Ostrager knew when you wrote your August 15,2019 letter that in truth there was nothing in the February 3,2017 filing injunction that could be construed  as giving Barry Ostrager the right to scheme with Judge Judy Sheindlin's stepson Gregory Scheindlin to falsely represent that there was a jury finding on the three question June 26,2015 Jury interrogatory sheets that the personal guarantees were enforceable when they  both knew none of the three questions on the Jury sheet said anything  pertaining to personal guarantees. This fact was proven and admitted at Gregory Sheindlin's May 4,2021 deposition which you listened to already on YouTube.

The last paragraph of your August 15,2019 letter shows you and your Assistant Attorney General making the false argument that Judge Schofield should punish me and dismiss my claim against Barry Ostrager "with prejudice" for "failing to comply with the filing injunction imposed by Judge Danials".

These claims were known to be false by you, Mr. Ostrager  and Mr. Conley at the time the August 15,2019 letter was written. Your claims and that of Mr. Conley were so false and illogical that it was completely ignored and replaced with two different false made up reasons  by Judge Schofield five days later in her August 20,2019 Order of Dismissal.

The fact that you and Judge Schofield gave completely different reasons for dismissing the claims against Barry Ostrager proves you are both lying. In

the August 20, 2019 Dismissal Order from Judge Schofield it is shown that she shamelessly made up her own two false reasons for dismissing the case against Barry Ostrager. In the Order Judge Schofield said she was dismissing the case based on 1) judicial immunity and 2) the Rooker-Feldman Doctrine.

You know it was wrong and false for Judge Schofield to make up her own false excuses on August 20,2019 to dismiss my claims against Barry Ostrager that were not arguments for dismissal made by Judge Ostrager, you or your Assistant Attorney General just five days earlier in your attached August 15,2019 letter

Regardless of the Order of Dismissal the fraudulent misrepresentation of the Jury findings were criminal actions by Judge Ostrager and Gregory Sheindlin that must be addressed by your office now since no one is above the law.

I have a right to press charges for the two schemes that destroyed my livelihood and resulted in the theft of over 2.3 million dollars on September 5,2018.

No one is above the law and the crimes I said took place were admitted to have taken place at Sheindlin's May 4,2021 Deposition. (the deposition tapes can be found on YouTube)

The fact is Mr. Scheindlin's deposition testimony from May 4,2021 is new evidence proving Judge Schofield was totally wrong or lied when she said that the case against Ostrager was barred by Judicial immunity or the Rooker-Feldman doctrine. Indeed, since Sheindlin said at his deposition that the three question June 26,2015 jury interrogatory sheet said "absolutely nothing about personal guarantees" that proves Brady could not have lost in State Court on this threshold and sole issue. Since Sheindlin said the issue of personal guarantees were not even on the three question Jury Sheet that means the Jury could not have ever found in favor of the landlord and against Brady that the personal guarantees were enforceable.

In the second to last paragraph of your August 15,2019 letter it is shown that you are shamelessly advancing as truth Magistrate Judge Barbara Moses false claim that the filing injunction in Goldman would bar claims against Barry Ostrager. The false argument was so untrue in Magistrate Moses Report and Recommendation that it was completely rejected and reversed by Judge Caproni in a September 2019 Decision.

At this point you need to treat me equally and let me file complaints pertaining to the two crimes that I have proven to be the victim of by politically connected people. My cell phone number is 201-923-5511 and my email is Bradyny@gmail.com

Sincerely,

_____

James H. Brady

# EXHIBIT

# B

November 17, 2022

James H. Brady
2422 Apple Ridge Circle
Manasquan, NJ  08736

Hon. Justice Arthur Engoron
60 Centre Street
New York, NY 10007

Re:  Index No. 452564-2022, *People of the State of New York v. Donald J. Trump, et al*

Dear Judge Engoron:

I am writing you with very important information pertaining to the case listed above and the related cases before this Court.

I have firsthand irrefutable information that is very important to this case and the related cases before this Court.

First, former President Donald Trump, his family and his business are entitled to be treated fairly under the law and competently by Attorney General Letitia James and by this Court.  The evidence in this letter proves this certainly is not happening.

This mistreatment brings back very bad memories since in the past I too have been treated very unfairly by you and Ms. James.

In this short letter with its 4 exhibits, I will prove how this Court and Ms. James have treated me unfairly  in the past, and why it is true that the Trump's and their Organization are the victim of the same pattern of unfair conduct by this Court and illegal conduct by Ms. James.  Just like the Trump's, I absolutely believe that I have been the victim of vicious bias and mean conduct by both Ms. James and this Court.

My evidence of your unjust and wrong actions against me are best proven by reading your attached, unprofessional half page long November 29, 2010 decision which left me owing the landlord IGS Realty over one million dollars (Exhibit 1).

1

Your cruel court decision was so mean and false that everything you said in your November 29, 2010 decision was reversed in an Appellate Division, First Department decision dated October 11, 2012. (Exhibit 2).

Exhibit 2 proves the five judges of the Appellate Division, First Department reversed every single finding you made against me in your cruel, half-page, single-spaced decision.

A reading of your November 29, 2010 decision (Exhibit 1) shows you mocking me and shows you did not believe that I, as a Christian, was worthy of a proper and just adjudication of my motion to vacate my corporations' default judgments from October 13, 2009. A reading of your decision proves that although it is only a half-page long it is filled with mean punches against me. In fact, your decision shows you did not even bother to try to support your decision with any case law as there is no case law supporting your unreasonable refusal to not vacate the default judgments against me.

Indeed, although your whole decision was only half a page long it was also internally inconsistent in a very harming way because on one side of your mouth you said you were not vacating the default judgments, and on the other side of your mouth you said the case belonged in Supreme Court. These two conflicting claims cannot coexist. By not vacating the default judgments, the Supreme Court judges used *res judicata* to dismiss my claims and defenses.

You know or should have known, your refusal to vacate the defaults became viewed as an adjudication on the merits, barring me of any ability to have my claims and defenses litigated in Supreme Court. You knew, or should have known, this would happen and you should have been just and said the defaults were vacated and then moved the case to the Supreme Court. But you were too focused on abusing me.

Regardless of the fact that your decision was completely reversed years later by the Appellate Division, First Department, your cruel and condescending single-spaced, half-page decision caused irreversible harm and frankly destroyed my life and livelihood.

In my motion to have the defaults vacated, you were told all of the meritorious reasons why my three corporations did not have an attorney present for a summary proceeding on October 13, 2009. Yet without any basis of fact or law, you said in your decision that 1) I did not have a reasonable excuse for my corporations' defaults, and 2) that my motion to have the defaults vacated was made 10 months too late.

2

The attached Appellate Division, First Department Decision (Exhibit 2) proves that the 5 judges of the higher court unanimously disagreed with you on both of your claims against me, and the higher court unanimously ruled that as a matter of law and fact you were wrong when you said that I waited ten months too long to make my motion. The higher Court ruled my motion was timely as a matter of law since it was made within one year of the defaults. The First Department judges also unanimously ruled that you were wrong in your claim that I did not have a valid excuse for my corporations' defaults.

In the present cases before you, I am seeing the former president, his company and his family are having their lives and livelihoods destroyed by your unprecedented gleeful willingness to let Letitia James proceed with fraud claims against the Trump's and the Trump Organization that should have never have been brought by Ms. James, and as a matter of law should never have been allowed to proceed by you since NONE of the elements needed for a fraud claim exist.

Indeed, the present cases before this Court and all of the assertions being made by Ms. James against the Trump's and the Trump Organization center around claims of fraud against banks and insurance companies. Why is Letitia James making claims of fraud against banks and insurance companies when these institutions have never in over 40 years made these claims themselves against any of the Trump's or the Trump Organization?

Furthermore, both the current Manhattan District Attorney and the current United States Attorney for the Southern District of New York have the same information that Ms. James has presented before this Court, but these two prosecutors have refused to charge any of the Trump's with fraud for at least three independent reasons.

The first reason the Manhattan District Attorney and the United States Attorney for the Southern District of New York are not making fraud claims against the Trump's and their Organization is because they have no standing to make up fraud charges against the Trump's that have never been asserted by the banks or any other parties who entered into contracts with the Trump's and their Organization over the course of the past 45 plus years.

Second, as a matter of law, for a fraud claim to survive, there must be a party to the contract claiming that they were harmed or injured by the Trump's exaggeration of the size and value of their assets. That also never happened so you need to dismiss the cases before you.

Third, as a matter of law, for someone to make a valid fraud claim, the party making the claim must argue that there was a reasonable reliance on the statements made by the Trump's that they could not have discovered as false through their own due diligence.

None of listed above three requirements for a fraud claim ever took place, which means frankly that you have absolutely no justifiable basis to not drop the charges against the Trump's and their Organization.

In fact, publicly available documentary evidence (including documentary films from over 25 years ago) proves that, for over 40 years, since Donald Trump was in his 20s, he and the banks have had a relationship together where Mr. Trump would always claim his properties were worth more than they were. Mr Trumps exaggerated claims as to the value and size of the trump assets did not mean he was committing fraud, which is why in over 40 years no other law enforcement official besides Ms. James ever even thought of charging any of the Trump's or their Organization with fraud for saying that their properties were worth more or were larger than they were. No reliance whatsoever was ever placed on these claims by the banks or insurance companies. Everybody knows these institutions were required to perform their own independent due diligence as to the size and value of the Trump assets before any loans or insurance policies were issued to the Trumps and the Trump Organization.

Everybody knows that since the lending institutions had their own dirty hands for going along with the inflated values, these lenders could never claim that they were the victims of fraud by the Trump's or their Organization.

Everybody knows the banks were all required to do their due diligence, which absolutely includes doing their own appraisals and measurements of the Trump properties. This is why in over 40 years no one, including any other law enforcement official other than Ms. James, ever claimed to have been defrauded by the Trump's inflated assertions regarding the worth and size of their properties.

A review of the Complaint by Ms. James and a review of your decisions proves neither of you ever explained how you could justify permitting these false claims of fraud to proceed against the Trump's and the Trump Organization.

You need to address these destructive failures by this Court and Ms. James since I have proven to this court that, as a matter of law 1) the required elements for a fraud claim do not apply to the Trump's; 2) Ms. James has no standing to claim that the Trump's and their Organization committed fraud in commercial contracts made by sophisticated legal counsel for major banks when the parties to the contract have never themselves made

4

those claims; 3) It is impossible for the fraud claims to proceed against the Trump's and its Organization when, as a matter of law, the claim must be dismissed since there was never any reasonable reliance on the value or size of the properties that appeared on the applications; and finally 4) As a matter of law it is impossible to have a fraud claim against the Trumps and their Organization when no party to the contract ever said they were harmed in any way by the inflated values and sizes of the Trump assets.

The other reason for this letter to the Court is to let you know that it is Ms. James who is a total fraud masquerading as "the people's lawyer" when she is actually as corrupt and political as can be. Indeed, my evidence objectively proves that at the exact same time Ms. James is trying to destroy the Trump's and their Organization she is engaging in two different horrific crimes against me.

The first crime and fraud scheme by Ms. James against me is the fact that at the same exact time she is trying to destroy New York City developer Donald Trump, his children, and his Organization, Ms. James has been actively making sure that New York City developer Jeffery Katz and his organization Sherwood Equities get away with stealing the $70-90 million in development rights that were contractually appurtenant to my former 12th Floor and Roof Unit Apartment in a commercial co-op named 450 West 31st Street Owners Corp.

Ms. James's first fraud scheme was to participate in the illegal scheme whereby my offering plan contract that is filed with her office and final higher Appellate Division, First Department decision from February 11, 2010 are being completely ignored, and the unlawful replaced with a final lower court Supreme Court June 15, 2014 decision that is fraudulently being represented as the true and governing contract.

The fact the crime took place is shown below.

The Seventh Paragraph Footnote to the Schedule of Units of the Amended Offering Plan reads as follows:

> "Seventh Paragraph - NEW- The 12th Floor and Roof Unit Shall have, in addition to the utilization of the roof, the right to construct or extend structures on the roof or above the same, to the extent that may from time to time be permitted under applicable law."

The Appellate Division, First Department, February 11, 2010 Decision ended with the following words.

5

Pursuant to paragraph 7, that plaintiffs have the right to construct or extend structures upon the roof or above the same to the extent that may from time to time be permitted under applicable law, unanimously affirmed, without costs.

Justice Kornreich's Supreme Court July 15, 2014 Decision rewrites the above to read:

It has already been adjudged that while the owners of the unit *may* have the right to erect additional structures on the roof, that right does not entitle them to use any floor area in doing so (Prior Action, decision and order, Mar 13, 2009 at *2 & *4-*5 ["Nothing herein shall be construed as holding that plaintiffs have the right to use all or any part of the TDRs in connection with such construction or extension"] *Brady v 450 W. 31st St. Owner's Corp.*, 70 AD3d 469, 470 [1st Dept 2010] [holding that the offering plan "reserves for plaintiffs the right.... to construct or extend structures on the roof that may be built without the use of the building's development rights."]

Every word from the offering plan contract and higher court determination was taken out unlawfully and replaced by Judge Kornreich. Under the Appellate Division decision, I have the right to the utilization of the premise's 70-90 million in development rights. Under Judge Kornreich's rewording, I have nothing at all. New York State law is very clear that an unambiguous contract cannot be rewritten by the courts:

"When parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms." *W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 10 [1990]. And "Courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." "In the absence of any ambiguity, we look solely to the language used by the parties to discern the contract's meaning." *Vermont Teddy Bear v. 538 Madison Realty Co.*, 308 AD2d 33 (2004).

The amended Offering Plan that has been sitting in Ms. James office since 1980 is attached as Exhibit 3.

It is an ongoing criminal act that Ms. James is not addressing the fact that my Offering Plan and Appellate Division decision have been rewritten by the lower court. That is because Ms. James knows that my contract and higher court decision govern over the lower court decision. Ms. James also knows that filing injunctions have been placed against me in State and Federal Court with the hope that I never get justice for this criminal act.

6

## II.

The second crime and fraud scheme that Ms. James is colluding in against me that is going on right now is the fraud scheme to make sure that Judge Judy Sheindlin's step-son Gregory Sheindlin gets away with the crime of forcing the sale of my family business and destroyed my livelihood on September 5, 2018 by creating a collection action of over $1.7 million dollars by fraudulently representing "through implication only" that there was a state court jury finding on a June 26, 2015 Jury interrogatory sheet that the personal guarantees I signed with IGS Realty were enforceable.  Mr. Sheindlin knew there was no such finding my the jury , and he criminally misrepresented that such a finding had been handed down by the jury.

It needs to be noted in this letter that it was Judge Barry Ostrager who committed the fraud with Sheindlin of pretending there was a jury finding that the personal guarantees were enforceable.

Mr. Sheindlin's fraudulent implied representation that the jury ruled that the personal guarantees were enforceable was admitted to be totally false by Mr. Sheindlin himself at his May 4, 2021 Deposition.  The Court can hear Sheindlin's deposition on YouTube.

At the May 4, 2021 deposition, Sheindlin and his attorney admitted the following:

> **(p. 41-42)** MR. SUSSMAN: Hold on.  We both can't speak at the same time.  The gentleman has explained to you exactly what he did.  It's also in the document. The document speaks for itself.  It says nothing about a personal guarantee. That's admitted.  We can stipulate to that so we don't have to worry about that.

It was also admitted that Brady's defenses were not even on the three question Jury interrogatory Sheets either:

> **(p. 86-87)** MR. SUSSMAN: Here's what we can do.  Why don't we stipulate to the fact that the jury interrogatory says what it says, meaning that a number of your defenses as you put them in your answer, your verified answer, are not specifically stated or set forth on the jury interrogatory sheet.  That's what we can all agree on.

The record proves Mr. Sheindlin himself fraudulently wrote and created the collection action signed by the County Clerk's Office on May 31, 2017. The admissions at Sheindlin's May 4, 2021 Deposition prove Sheindlin did not simply "enforce" a judgment that already existed against Brady as personal guarantor but instead fraudulently misrepresented the Jury findings using the following fraudulent words and nothing else:

> The jury rendered a verdict on June 26, 2015, in favor of Plaintiff, against the defendant, in the sum of $541,758.62. (*IGS Realty v. James H. Brady*, Case No. 603561/2009 (NYS), *Judgment*, May 31, 2017).

Despite knowing all of these facts, Ms. James has refused to do anything about this crime but has instead colluded with Mr. Sheindlin and Judge Ostrager to cover up the crime of stealing over $1.7 million from me and my family on September 5, 2018.

Ms. James knows Judge Barry Ostrager was involved in this fraud scheme with Gregory Sheindlin. Judge Ostrager wrote the three-question jury interrogatory sheet and he knew they said nothing about personal guarantees or my defenses. Ms. James knew the jury could not have ruled the personal guarantees were enforceable as the question was not even on the jury sheet.

Exhibit 4 is a letter in the case of *Brady v. Ostrager* (19-cv-07122) which shows New York State Attorney General James complete corruption and commitment to the crimes against me that are listed above. The August 15, 2019 letter shows James attacking me with false claims. The docket sheet proves that Judge Schofield could not adopt the reasons stated in the letter to dismiss my Complaint, so in order to help Ms. James get away with the crime, Judge Schofield needed to make up her own false reasons 5 days later on August 20, 2019.

Schofield dismissed the case on the false, trumped up excuse that the claims were barred by judicial immunity and the Rooker-Feldman Doctrine. If those reasons were true, the Attorney General would have given those reasons in her August 15, 2019 letter.

In conclusion, none of the required elements for a fraud claim against the Trump's and their Organization are even discussed by Ms. James or this Court. The fact is that it is not just that you will be causing irreversible harm to Donald Trump, his family and his organization when I proved in this letter that none of the elements for a fraud exist. No one was ever defrauded.

Under the constitution the Trump family and Organization certainly have a right to a prosecutor who is not herself currently engaging in criminal conduct. This Court must immediately address the merits of my claim that Ms. James is engaging in criminal conduct. If my assertions are true, the cases against the Trump's must be dismissed, and Ms. James must be prevented from continuing to engage in such destructive, unlawful conduct, which no other prosecutor has ever asserted against the Trump's in the forty-five plus years in which Mr. Trump and his family have been engaging with banks and lenders as a New York City developer.

I am available by email at Bradyny@gmail.com or my cell phone number 201-923-5511 if I am needed for further information

Sincerely,

9

# EXHIBIT
# 1

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: PART 52/72
---------------------------------------------------------x
IGS REALTY CO., L.P.,

                    Petitioner,

          - against -

JAMES CATERING, INC.,

                 Respondent.
---------------------------------------------------------x
IGS REALTY CO., L.P.,

                    Petitioner,

          - against -

WEST SIDE LOFT AT 37TH ST., INC.,

                 Respondent.
---------------------------------------------------------x
IGS REALTY CO., L.P.,

                    Petitioner,

          - against -

LOFT ELEVEN INCORPORATED,

                 Respondent.
---------------------------------------------------------x
Arthur F. Engoron, Judge

Index Number: 55601/2009

Motion Calendar Number: 26

Submission Date: 11/5/10

Decision and Order

Index Number: 55602/2009

Motion Calendar Number: 26

Submission Date: 11/5/10

Decision and Order

Index Number: 55603/2009

Motion Calendar Number: 26

Submission Date: 11/5/10

Decision and Order

In compliance with CPLR 2219(a), this Court states that the following papers, numbered 1 to 3, were used on this motion by respondents to vacate default judgments in all three cases:

                                                                            Papers Numbered:

Moving Papers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Opposition Papers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Reply Papers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Upon the foregoing papers, the instant motion is denied.

The moving papers are long, but this opinion will be relatively short. In 2009 petitioner commenced the instant eviction proceedings against respondents, which operate event spaces. In September of that year, on the eve of trial, and almost a year prior to the submission of the application for the instant order to show cause, petitioner and its counsel allegedly convinced respondents' counsel to seek to withdraw from representing respondents. A judge "unfairly" allowed the withdrawal; respondents' principal was "unfairly" convinced that he had no defense; and respondents "unfairly" surrendered the spaces and defaulted in these proceedings.

Respondents attempted, in three separate instances, to retain new attorneys, but, allegedly, none of them would "step up to the plate." Respondents' principal allegedly became despondent and sick, and could do nothing for a while. From January through May the parties allegedly negotiated, but the file contains scant, if any, detail. In May, in a Supreme Court action for damages that respondents commenced against petitioner, the judge denied petitioner's motion for summary judgment. Some three months later, respondents made the instant motion.

The motion is denied for two independent reasons. First, it was brought about 10 months too late, and the law is clear that a party seeking to vacate a default must do so with reasonable alacrity. That clearly was not done here. Respondents' argument that the Supreme Court decision in May constitutes a "new fact" is simply wrong. If anything, that decision highlights the fact that the dispute between the parties belongs in Supreme Court as a damage action, not in Civil Court as a possessory proceeding, possession having been surrendered a year ago. Furthermore, respondents waited far too long after the Supreme Court decision, too. Second, respondents have no reasonable excuse for their default. "I could not find a replacement attorney in time to take the case" simply is not a reasonable excuse, especially in a summary proceeding. Indeed, respondents seem, in part, to be seeking to be reargue the decision to relieve their counsel, which is "law of the case." Finally, the surrender and default were not the result of coercion or duress, which, rightly, are difficult claims to sustain.

Thus, the instant motion is denied in its entirety.

Dated: _____November 29, 2010_____.

_____
Arthur F. Engoron, J.C.C.

Civil Court
of the
City of New York

DEC - 6 2010

ENTERED
NEW YORK COUNTY

# EXHIBIT
# 2

2012 NY Slip Op 06843

**IGS REALTY CO., L.P., Petitioner-Respondent,**
**v.**
**JAMES CATERING, INC., DOING BUSINESS AS LOFT ELEVEN, ETC.,**
**Respondent-Appellant.**
**IGS REALTY, CO., L.P., Petitioner-Respondent,**
**v.**
**LOFT WEST SIDE AT 37th STREET, INC., ETC., Respondent-Appellant.**
**IGS REALTY, CO., L.P., Petitioner-Respondent,**
**v.**
**LOFT ELEVEN INC., Respondent-Appellant.**
**WEST SIDE LOFT, INC., ET AL., Plaintiffs-Appellants,**
**v.**
**IGS REALTY CO., ET AL., Defendants-Respondents.**
**IGS REALTY, INC., L.P., ETC., Plaintiff-Respondent,**
**v.**
**JAMES H. BRADY, Defendant-Appellant.**

8263-570674/11, 8263A, 8262, 600740/09, 8261, 603561/09.

**Appellate Division of the Supreme Court of New York, First Department.**

Decided October 11, 2012.

Law Offices of Edward Alper, New York (Edward Alper of counsel), for **James Catering, Inc.,** West Side Loft, Inc., and Loft Eleven Inc., appellants.

Robert J. Adinolfi, New York, for **James** H. Brady, appellant.

Bryan Cave LLP, New York (Daniel P. Waxman of counsel), for respondents.

Before: Andrias, J.P., Friedman, Moskowitz, Freedman, JJ.

Although tenants' argument that IGS Realty never served the default judgments with notice of entry is not preserved for appellate review (*see e.g. Ta-Chotani v Doubleclick, Inc., 276 AD2d 313* [1st Dept 2000]), it is irrelevant since the motion to vacate was timely. Assuming the clock began ticking on the date of entry stamped on the judgments, tenants' motion was made within one year (*see* CPLR 5015[a][1]). Further, tenants established both a reasonable excuse for their failure to appear with counsel on October 13, 2009 and a meritorious defense to IGS Realty's nonpayment proceedings.

As a result of tenants' inability to obtain substitute counsel within 13 days of prior counsel being relieved by the court, tenants and Brady, their principal, have been deprived of their day in court

in four cases: the Civil Court proceedings brought by the IGS Realty, the Supreme Court actions between tenants and IGS Realty, and the Supreme Court action between IGS Realty and Brady. Given the disputed issues of fact in these cases, they should be resolved by trial, not default. (*see Ackerson v Stragmaglia*, 176 AD2d 602, 604 [1st Dept 1991]). Since we are granting the motion to vacate the Civil Court judgments, they no longer have res judicata effect (*see e.g. Trisingh Enters. v Kessler*, 249 AD2d 45, 46 [1st Dept 1998]). Thus, the Supreme Court order and judgment, which were based on res judicata, must be reversed.

Tenants' cross motion for leave to amend the complaint in index no. 650463/09 should have been granted. The motion court erred in finding that tenants failed to furnish a proposed amended complaint. Furthermore, the proposed fraud claim was sufficiently specific (*see Pludeman v Northern Leasing Sys., Inc.*, 10 NY3d 486, 491 [2008]).

Brady's contention that he is entitled to summary judgment in IGS Realty's action on his guarantees is unavailing. He failed to preserve his claim that the guarantees are unenforceable as unconscionable and there are issues of fact as to whether IGS Realty failed to perform its obligations to tenants.

THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

# EXHIBIT

# 3

SECOND AMENDMENT TO OFFERING

PLAN TO CONVERT TO COOPERATIVE OWNERSHIP

PREMISES AT:
450 West 31st Street
New York, New York

The following amendments are hereby made in order to clarify and modify certain provisions of the original Offering Plan in the above-titled conversion:

## COVER PAGE

[Lines 16-23]
NAME AND ADDRESS
  OF SPONSOR:

       31st Street Realty Associates
       c/o Bachner, Tally & Mantell
       850 Third Avenue
       New York, New York 10022

NAME AND ADDRESS
  OF SELLING AGENT:

       31st Street Realty Associates
       c/o Bachner, Tally & Mantell
       New York, New York 10022

## INTRODUCTION

[Sixth Paragraph]  The Subscription Agreement (hereinafter referred to as "Subscription Agreement," "Purchase Agreement" or "Agreement"), may be found on page 101.

[Thirteenth Paragraph]  Sponsor will not sell any units for the following uses:

(1) Medical or drug treatment centers; (2) heavy stamping, pressing or vibrating equipment; (3) storage of explosive or corrosive chemicals; (4) commercial animal breeding; (5) wholesale food processing.

## DESCRIPTION OF PROPERTY

[First Paragraph]  Fee title to the land and building was acquired on November 30, 1979.  The aforesaid land and building were subsequently leased to the Tenant Corporation on May 30, 1980.  The building is in an M1-5 manufacturing zone.

[Fourth Paragraph]  Upon closing of title with the co-operative corporation, the following contracts will exist and be binding upon the co-operative corporation:

    B.  Ready Alarm - 11/1/80 - 10/31/81  -  Sprinkler Alarm

## Footnotes

[First Paragraph]   The gross footages set forth herein are approximate and there will be no adjustments in the purchase price if the square footage varies less than 5%.   If the actual square footage of the unit is less than the square footage set forth above by more than 5%, then in that event, a proportionate adjustment will be made in the purchase price based upon the percentage difference in the two amounts.   The preceding sentence is limited, however, by the Lessor's right to exclude from the unit whatever square footage is necessary for the installation of new water, waste, electrical and ventilation risers.

[Sixth Paragraph - New]   The Boiler Room shall, in addition to the square footage set forth herein, include that portion of the existing parking lot for a distance of approximately twenty-five (25) feet extending from the boiler building.   The Boiler Room may be extended within such area and appropriate fences erected.

[Seventh Paragraph - New]   The 12th floor and roof unit shall have, in addition to the utilization of the roof, the right to construct or extend structures upon the roof or above the same to the extent that may from time to time be permitted under applicable law.

## CHANGES IN PRICES, LAYOUT & SIZE OF UNITS

[First Paragraph]   In order to meet possible varying demand for number and type of Units, or to meet particular requirements of prospective purchasers, or for any other reasons, the Sponsor reserves the right at any time and from time to time before and after declaring the Plan effective without the consent of the Board of Directors or other tenant-shareholders to: (i) change the layout of the Units; (ii) change the number of Units by sub-dividing one or more Units into separate units or combining separate Units into one or more Units and (iii) change the size of Units by sub-dividing or combining Units as aforesaid or by altering the boundary walls of Units or otherwise.   If the size of a Unit is changed either as a result of any said subdivision, combination, alteration of boundary walls or otherwise, the number of shares allocated to such Unit may be increased or decreased accordingly. No such reallocation of shares, however, will increase or decrease the total number of shares allocated to all Units in the Building, nor shall any shares be reallocated unless an independent quali-fied real estate consultant is of the opinion that the aforesaid reasonable relationship is preserved (as determined on the date the change is made).   Any reallocation of shares will vary the estimated monthly maintenance charges for the Unit or Units affected thereby from the amounts in the "Schedule of Units"; however, such a change shall not affect the proportion or amount of maintenance charges to be paid by purchasers of Units which are not the subject of such change.   Any change in the size,

layout or number   Units or in the number .   shares allocated thereto may be made without amendment to the Plan; provided, however, that (i) any change in the size or layout of a Unit shall be disclosed to the purchaser thereof by a notice affixed to the inside cover of this Plan, (ii) the Department of Law of the State of New York has received a copy of such notice, and (iii) a copy of such notice shall thereafter be affixed to the inside cover of each Plan presented to any party who had not received a Plan prior to the aforesaid changes.

[Fifth Paragraph]   A purchaser will not be excused from purchasing his Unit if the dimensions of his Unit vary from the plans set forth herein by less than five percent and will not have any claim against the Sponsor, except that any diminution in the square footage resulting from the installation of new water, waste, electrical and ventilation risers shall not affect the purchaser's obligation to purchase his Unit.  All such work shall be performed by the Tenant-Shareholders Corporation at the expense of the Tenant-Shareholders, which expense shall, in turn, be borne by the Lessees proportionately.

## PROCEDURE TO PURCHASE

[First Paragraph]  Any person who desires to purchase shares of the Cooperative and the attendant right to a Proprietary Lease will be required to execute a Subscription Agreement in the form that has been appended hereto at page 101.  An executed Subscription Agreement would be furnished to the Sponsor together with a check representing the down payment which check would be drawn to the order of Bachner, Tally & Mantell as Escrow Agents for 31st Street Realty Associates.

## OPTION TO PURCHASE

Lessee has an option to purchase the land and building for the sum of $1.00 at any time during the term of the Ground Lease.

## SUMMARY OF PROPRIETARY LEASE

[Paragraph Four - New]   The Proprietary Lease may vary from Tenant to Tenant based upon the use to which the Unit is put.

## UNSOLD SHARES

[Third Paragraph]   Sponsor shall have the right to change the layout, size and number of Units as provided in the Section entitled "Changes in Prices, Layout & Size of Units" herein.

## IDENTITY OF THE PARTIES

[First Paragraph]  Sponsor is a partnership formed in the State of New York for the purpose of purchasing the property at 450 West 31st Street, New York, New York, and for the purpose of presenting this offering.  The principal assets of the partnership are the fee title to the land and building and ownership of all of the shares of capital stock of the Tenant Corporation.

3

## DOCUMENTS ON FILE

In accordance with Section 353-e(9) of the General Business Law, copies of this Offering Statement-Plan of Cooperative Organization and all exhibits or documents referred to herein shall be available for inspection by prospective purchasers and by any purchaser who shall have purchased securities offered by this Plan or shall have participated in the offering of such securities, at the office of Sponsor's attorneys, Bachner, Tally & Mantell, 850 Third Avenue, New York, New York, and shall remain available for such inspection for a period of six years.

## ATTORNEYS FOR SPONSOR

Sponsor has retained the law firm of Bachner, Tally & Mantell, 850 Third Avenue, New York, New York, as counsel. (The law firm of Baskin & Sears, 1350 Avenue of the Americas, New York, New York drafted the By-Laws, the Articles of Incorporation, Subscription Agreement, the Lease, and all other documents relevant to the formation of the Tenant Corporation.) The Tenant Corporation will be represented at closing by Counsel, consequently the Tenant-Corporation should not consider Bachner, Tally & Mantell to be its independent counsel and prospective purchaser should consult with their own counsel on all matters concerning the Tenant-Corporation.

## GENERAL

[Fourth Paragraph]   This Offering Plan was prepared by the law firm of Baskin & Sears, 1350 Avenue of the Americas, New York, New York, which law firm is no longer counsel to the Sponsor herein.   Sponsor has subsequently retained the law firm of Bachner, Tally & Mantell, 850 Third Avenue, New York, New York, as its Counsel.

## SUBSCRIPTION AGREEMENT

[Paragraph 3A]   Herewith is my check to the order of Bachner, Tally & Mantell as Escrow Agent for 31st Street Realty Associates for the amount of the above stated Down Payment.  I agree that, if and after the Plan becomes effective, as herein provided, I will pay the above stated balance of the said Purchase Price within fifteen days after written notice and demand by Escrow Agent, Sponsor or the Tenant Corporation (which notice shall state that the date of closing title has been specified to be not later than 60 days thereafter), such payment to be by personal certified check or official check drawn on a New York bank to the order of 31st Street Realty Associates, and that I will sign the proprietary lease for said Unit promptly upon presentation to me in the form contained in the Plan.  The Escrow Agent will give me prompt written notice thereof when the Plan either becomes effective or is abandoned.

4

[Paragraph 4A]   The Sponsor will hold all monies received by it through its agents or employees in trust until actually employed in connection with the consummation of the transaction as provided in Section 352-h of the General Business Law.   All such monies will be deposited in a non-interest bearing account with Bank Leumi Trust Company of New York and will be held in the Escrow Account referred to above.   The funds so deposited will be disbursed only at the closing and only for the purposes of the consummation of this Plan or returned to me as herein provided.

[Signature Line]      Bachner, Tally & Mantell, as Escrow Agent

The Offering Plan for the premises at 450 West 31st Street is effective.

5



**UNITED STATES POSTAL SERVICE.**

Retail

PRESS FIRMLY TO SEAL

**PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRE**

**P**

**US POSTAGE PAID**

**$13.55**

Origin: 08736
11/23/22
3347700829-10

**PRIORITY MAIL®**

0 Lb 7.00 Oz

**RDC 04**

EXPECTED DELIVERY DAY:   11/28/22

**C028**

SHIP
TO:
701 CLEMATIS ST
RM 257
WEST PALM BEACH FL 33401-5113

**USPS SIGNATURE® TRACKING #**



9510 8138 3956 2327 6297 84

**FLA**
**ONE RA**

**TRACKED • INSURED**



PS00001000014

EP14F May 2020

PRESS I

PRIORITY®
MAIL

■ Expecte
■ Most do
■ USPS T
■ Limited
■ When u

*Insurance c
Domestic M
** See Inter

trictions apply).*
al destinations.
uired.
ns see the
ations of coverage.

dule free Package Pickup,
scan the QR code.





PRESS FIRMLY TO SEAL

**FROM:**

JAMES BRADY
2422 Apple Ridge Ci
MANASQUAN NJ
    08736

**TO:**

Hon Judge Donald M
PAul Rogers Federal Buildi
701 Clematis Str
    Room 257
West Palm bech Flo
    33401