**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO.:  9:22-cv-81780-MIDDLEBROOKS/MATHEWMAN**

DONALD J. TRUMP,

      Plaintiff,

v.

LETITIA JAMES,

      Defendant.

_____/

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S EMERGENCY**
**MOTION FOR TEMPORARY INJUNCTION**

BILZIN SUMBERG BAENA PRICE
& AXELROD LLP
*Attorneys for Defendant*
1450 Brickell Ave., Suite 2300
Miami, Florida 33131

Melissa Pallett-Vasquez
  Florida Bar No. 715816
Jeffrey Snyder
  Florida Bar No. 21281
Robert Turken
  Florida Bar No. 306355

LETITIA JAMES
  *Attorney General*
  *State of New York*
28 Liberty Street
New York, NY  10005

Andrew S. Amer
  admitted *pro hac vice*
Colleen K. Faherty
  admitted *pro hac vice*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

PROCEDURAL BACKGROUND.............................................................................................2

    A.  OAG'S INVESTIGATION AND THE NEW YORK  SUBPOENA ACTION .......... 2

    B.  MR. TRUMP'S FEDERAL NEW YORK ACTION .................................................. 4

    C.  OAG'S NEW YORK ENFORCEMENT ACTION .................................................... 6

    D.  MR. TRUMP'S FLORIDA ACTION........................................................................ 7

STANDARD OF REVIEW.......................................................................................................8

ARGUMENT ...........................................................................................................................9

    I.     PLAINTIFF HAS NO SUBSTANTIAL LIKELIHOOD OF SUCCESS
           ON THE MERITS FOR MULTIPLE, INDEPENDENT REASONS ................. 9

         A. The Court Lacks Personal Jurisdiction Over AG James ................................. 9

         B. This Action Is Barred By New York's Interstate Sovereign Immunity ........ 12

         C. This Action Is Barred By Issue And Claim Preclusion................................. 14

         D. This Action Is Barred Under The *Rooker-Feldman* Doctrine ...................... 17

    II.    THERE IS NO IRREPARABLE HARM............................................................. 18

    III.  THE EQUITIES AND PUBLIC INTEREST WEIGH IN OAG'S
           FAVOR............................................................................................................. 19

CONCLUSION ......................................................................................................................20

TABLE OF AUTHORITIES

**Cases**

*Alden v. Maine*, 527 U.S. 706 (1999) ........................................................................ 12

*All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535 (11th Cir.1989) ................................................................................................................ 8

*Allen v. McCurry*, 449 U.S. 90 (1980) ...................................................................... 16

*Am. Civil Liberties Union of Fla., Inc. v. Miami–Dade Cnty. Sch. Bd.*, 557 F.3d 1177 (11th Cir. 2009) ...................................................................................................... 8

*Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486 (11th Cir.1985) .................. 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 9

*Attwood v. Clemons*, 818 F. App'x 863 (11th Cir. 2020) .................................... 13, 14

*Carr v. City of Florence, Ala.*, 916 F.2d 1521 (11th Cir. 1990) ............................ 13, 14

*Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343 (2d Cir. 1995) .............. 16

*Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018) ................................. 18

*Dale v. Moore*, 121 F.3d 624 (11th Cir.1997) ....................................................... 17, 18

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) .......................................... 19

*Ex parte Young*, 209 U.S. 123 (1908) ........................................................................ 14

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005) ................. 17

*Franchise Tax Board of Ca. v. Hyatt*, __ U.S. __, 139 S. Ct. 1485 (2019) ................. 12

*Georgia Muslim Voter Project v. Kemp*, 918 F.3d 1262 (11th Cir. 2019) .................. 18

*Gonzalez v. Governor of Georgia*, 978 F.3d 1266 (11th Cir. 2020) ........................ 8, 19

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) .................... 9

*Hanson v. Denckla*, 357 U.S. 235 (1958) .................................................................. 11

*Horne v. Potter*, 392 F. App'x 800 (11th Cir. 2010) .................................................... 6

*In re New York (Walsh),* 256 U.S. 490 (1921) ........................................................... 13

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ...................................... 10

*Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306 (11th Cir. 2006) ............................................ 14

*Lapides v. Board of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613 (2002) ................................ 12

*Lewis v. Clarke*, —— U.S. ——, 137 S. Ct. 1285 (2017) .............................................................. 13

*Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339 (11th Cir. 2013) .................................. 10

*MC Tr. v. De Mishaan*, 273 So. 3d 1065 (Mem) (Fla. 3d DCA 2019) ........................................ 9

*Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75 (1984) ........................... 14, 15

*Mirka United, Inc. v. Cuomo*, No. 06-cv-14292, 2007 WL 4225487 (S.D.N.Y. Nov. 27, 2007) ....................................................................................................................................... 19

*Noble House, LLC v. Underwriters at Lloyd's, London*, No. 20-62080-CIV, 2021 WL 896219 (S.D. Fla. Mar. 3, 2021) .................................................................................................. 10

*O'Brien v. City of Syracuse*, 54 N.Y.2d 353 (1981) ................................................................. 16

*Page v. Hicks*, 773 F. App'x 514 (11th Cir. 2019) ..................................................................... 12

*Palmer v. Braun*, 287 F.3d 1325 (11th Cir.2002) ....................................................................... 8

*Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343 (1999) ............................................. 15, 16

*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984) ................................ 13, 14

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987) ....................................................................... 17

*People by James v. Donald J. Trump,* No. 452562/2022 (Sup. Ct. N.Y. Cnty. Nov. 3, 2022) ........................................................................................................................................ 6, 7

*People by James v. Trump Org., Inc.*, 205 A.D.3d 625 (1st Dep't 2022), *appeal dismissed*, 38 N.Y.3d 1053 (2022) ......................................................................................... 4, 15

*People by James v. Trump Org., Inc.*, 38 N.Y.3d 1053 (2022) ...................................................... 4

*Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, No. 18-cv-81606, 2019 WL 3890368 (S.D. Fla. June 27, 2019) ......................................................... 18

*Posner v. Essex Ins. Co.*, 178 F.3d 1209 (11th Cir. 1999) ......................................................... 10

*PTI, Inc. v. Philip Morris Inc.*, 100 F. Supp. 2d 1179 (C.D. Cal. 2000) .................................... 12

*Rehberg v. Paulk*, 611 F.3d 828 (11th Cir. 2010), *aff'd*, 566 U.S. 356 (2012) ......................... 10

*Ryzhov v. Mayorkas*, No. 21-CV-23596, 2022 WL 10869910 (S.D. Fla. Oct. 3, 2022) ............... 6

*San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323 (2005)........................ 15

*Schultz v. Alabama*, 42 F.4th 1298 (11th Cir. 2022)....................................................... 14

*Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623 (11th Cir. 1996) .......................................... 10

*Siegel v. LePore*, 234 F.3d 1163 (11th Cir. 2000) ............................................................. 8, 17, 18

*Silver v. Glinkenhouse*, No. 06-cv-81025, 2007 WL 9701847 (S.D. Fla. Jan. 31, 2007)............. 10

*Simmons v. Trans Express Inc.*, 37 N.Y.3d 107 (2021)....................................................... 16

*State v. Great Lakes Mins., LLC*, 597 S.W.3d 169 (Ky. 2019) .................................... 13

*Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008)......................................... 11, 12

*Stroud v. McIntosh*, 722 F.3d 1294 (11th Cir. 2013).................................................... 12

*The People of the State of New York v. The Trump Organization, Inc.*, No. 451685/2020, 2022 WL 489625 (Sup. Ct. N.Y. Cnty. Feb. 17, 2022), *aff'd*, 205 A.D.3d 625 (1st Dep't 2022), *appeal dismissed*, 38 N.Y.3d 1053 (2022) ......................................... 3, 5, 15

*Trump v. James*, No. 21-cv-1352, 2022 WL 1718951 (N.D.N.Y. May 27, 2022)......... 4, 5, 16, 17

*Trump v. U.S.*, No. 22-13005, 2022 WL 17352069 (11th Cir. Dec. 1, 2022) ....................... 10, 18

*Tuna Fam. Mgmt Inc. v. All Tr. Mgmt. Inc.*, No. 20-cv-14017, 2021 WL 4775076 (S.D. Fla. Oct. 13, 2021) .................................................................. 19

*United Techs. Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009)................................... 10

*Virginia Off. for Prot. & Advoc. v. Stewart,* 563 U.S. 247 (2011) ............................. 14

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) ................................................. 19

*Welch v. Laney*, 57 F.3d 1004 (11th Cir. 1995)........................................................ 13

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)........................ 19

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)............................... 11

*Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244 (11th Cir. 2016) .......................... 19

**Statutes**

FLA. STAT. § 48.193(1)(a)(2) ................................................................................. 9, 10

FLA. STAT. § 736.0202 ........................................................................................... 9

**Rules**

Fed. R. Civ. P. 4(k)(1)(A) ................................................................................................................ 9

## PRELIMINARY STATEMENT

There is no emergency requiring the Court to grant the extraordinary relief of a temporary injunction. Instead, there is a just a disgruntled litigant, Donald J. Trump, who impermissibly seeks to evade the jurisdiction of a New York state court that is presiding over an enforcement action alleging pervasive fraud and illegality by him and others in the conduct of his New York-based business and has issued a number of rulings that he considers unfavorable.

In this attempted end-run around the jurisdiction of the New York state court, Mr. Trump seeks by "emergency motion" to interfere with the discovery process in the New York state court proceedings by obtaining an injunction from this Court to preclude Defendant Attorney General ("AG") James from "requesting, demanding, obtaining, possessing, or disclosing a copy of the 2020 and 2022 amendments to" his revocable trust, *see* Motion for Temporary Injunction ("Motion") at 1 (D.E. 1-1 at 113), which owns all of the assets that are valued in Mr. Trump's financial disclosures that are the subject of the fraud allegations at the center of the New York enforcement action. Mr. Trump's Motion should be denied because he fails to satisfy any of the well-established criteria for obtaining preliminary injunctive relief – a substantial likelihood of success on the merits, a showing of irreparable harm, and a balance of the equities and public interest tipping in his favor.

Mr. Trump has no substantial likelihood of success on the merits because there are at least four independent grounds for dismissing this action. First, the Court has no personal jurisdiction over AG James because the actions of the Office of the Attorney General ("OAG") in pursuing the New York state court proceedings (which form the predicate for the claims in this action) do not meet the requirements for the exercise of personal jurisdiction under Florida law, and additionally do not establish the necessary minimum contacts with Florida to satisfy the Due Process Clause. Second, because Mr. Trump's requested relief is against OAG and not AG James individually, the action is barred by New York's interstate sovereign immunity, which is independent of Eleventh Amendment immunity and remains preserved notwithstanding removal of the action to this Court. Third, the issues and claims asserted in the Amended Complaint are precluded by final orders issued in the New York state court proceedings and an action Mr. Trump filed against AG James in the Northern District of New York to enjoin OAG's state court proceedings; Mr. Trump had a full and fair opportunity to litigate in both New York forums all of the issues and claims asserted here. And fourth, the Court should decline to exercise jurisdiction under the *Rooker-Feldman*

doctrine because Mr. Trump improperly seeks here to collaterally attack orders issued by the New York state court where he was the losing party.

Mr. Trump also fails to demonstrate that he will suffer any irreparable harm if there is no preliminary injunction. As a threshold matter, Mr. Trump's claim of irreparable harm rests entirely on his baseless allegation in his Amended Complaint that if his trust documents were obtained by AG James in the New York proceedings, she would "widely publish" them. Amended Complaint ("Am. Compl.") (D.E. 1-1 at 56) at ¶ 112. Such a conclusory allegation is legally insufficient to support a motion for a preliminary injunction and belied by the documentary record. Moreover, Mr. Trump fails to acknowledge that appropriate reasonable redactions are available to him in order to mitigate against any purported, albeit speculative, harm related to his estate planning information. In fact, the last word on the subject from Mr. Trump's lawyer indicated her intent to produce the material subject to such redactions, Am. Compl. at Exh. A (September 16, 2022 email from Alina Habba, Esq.), which should put to rest his concerns about any hypothetical disclosure of his estate planning information. OAG still awaits production of the redacted trust documents as of the date of filing this opposition, and Mr. Trump cannot claim any irreparable harm from having to produce the trust documents to OAG in redacted form as promised by his counsel.

Finally, the balance of the equities and public interest tip sharply in favor of OAG, which has uncovered considerable evidence of fraudulent and misleading conduct engaged in by Mr. Trump and his affiliates in the conduct of his New York-based business. Indeed, the New York state court recently confirmed that OAG is likely to succeed on the merits of its enforcement action based on this evidence in its decision granting OAG preliminary injunctive relief. In light of that "likelihood of success" finding, the public interest is far better served by denying the extraordinary relief sought here that would interfere with the ongoing discovery process in OAG's enforcement action pending in New York state court.

## PROCEDURAL BACKGROUND

### A.     OAG's Investigation and the New York Subpoena Action

OAG opened an investigation into Mr. Trump and his New York-based business operations in March 2019 (the "Investigation"), after Michael Cohen, a former senior executive of the Trump Organization and Special Counsel to Mr. Trump, produced to Congress copies of Mr. Trump's financial statements for a number of years and testified that these financial statements inflated the values of Mr. Trump's assets to obtain favorable terms for loans and insurance coverage, while the

2

Trump Organization also deflated the value of the same assets to reduce real estate taxes. *See The People of the State of New York v. The Trump Organization, Inc.*, No. 451685/2020, 2022 WL 489625, at *2, 5 (Sup. Ct. N.Y. Cnty. Feb. 17, 2022), *aff'd*, 205 A.D.3d 625 (1st Dep't 2022), *appeal dismissed*, 38 N.Y.3d 1053 (2022).

On August 24, 2020, OAG commenced a special proceeding in the New York Supreme Court, New York County, styled *People v. The Trump Organization*, Index No. 451685/2020 ("NY Subpoena Action"), to address subpoena enforcement issues arising during the course of the Investigation. *Id*. at *1-2. Justice Arthur Engoron was randomly assigned to preside over the case. *Id*. One enforcement issue presented to Justice Engoron involved a December 1, 2021 subpoena OAG served on Mr. Trump requiring him to produce responsive documents and provide deposition testimony. *Id*. Mr. Trump moved to quash the subpoena, arguing among other things that the Investigation was purportedly predicated on improper animus towards him and amounted to selective prosecution in violation of his constitutional rights. *Id*. at *4-5. As support for these assertions, he relied on many of the same public comments by AG James cited in the Amended Complaint in this action. *Compare id*. at *4 *with* Am. Compl. ¶¶ 25-73. OAG cross-moved to compel compliance with the subpoena, and in a decision and order dated February 17, 2022 (the "February 2022 Order"), Justice Engoron denied the motion to quash and granted OAG's cross-motion to compel. 2022 WL 489625, at *1.

In the February 2022 Order, the court rejected all of Mr. Trump's arguments, finding that OAG's Investigation had "uncover[ed] copious evidence of possible financial fraud" by the Trump Organization, giving OAG the "clear right" to question Mr. Trump under oath. *Id*. at *6. The court also found that "the impetus for the investigation was not personal animus" or alleged "campaign promises, but was sworn congressional testimony by former Trump associate Michael Cohen" that the Trump Organization was "'cooking the books.'" *Id*. at *5. Based on the court's own review of "thousands of documents responsive to OAG's prior subpoenas," the court confirmed that OAG had a "sufficient basis for continuing its investigation," which further undermined any claim that the "ongoing investigation is based on personal animus." *Id*. at *4. The court also noted in rejecting Mr. Trump's selective prosecution claim the lack of "any evidence that the law was not applied [by OAG] to others similarly situated." *Id*. at *5.

Mr. Trump appealed the February 2022 Order to the New York Appellate Division, First Department, which unanimously affirmed. *People by James v. Trump Org., Inc*., 205 A.D.3d 625,

625 (1st Dep't 2022), *appeal dismissed*, 38 N.Y.3d 1053 (2022). The appellate court concluded that the "political campaign and other public statements" by AG James did not support a claim that OAG was improperly using civil subpoenas to undermine Mr. Trump's rights. *Id*. at 626. The appellate court also determined that OAG's Investigation—which followed the "public testimony of a senior corporate insider" Michael Cohen that the Trump Organization "had issued fraudulent financial statements"—was "lawfully initiated at its outset and well founded." *Id*. And the court noted that OAG had reviewed "significant volumes of evidence" before subpoenaing Mr. Trump, who had not shown that any "similarly implicated" businesses or executives were treated differently. *Id*. at 627. Mr. Trump's appeal to the New York Court of Appeals, New York's highest court, was dismissed. *People by James v. Trump Org., Inc*., 38 N.Y.3d 1053 (2022).

Based on information collected during the Investigation, OAG determined that Mr. Trump is the beneficial owner of the collection of entities he styles the "Trump Organization," which includes the parent company The Trump Organization, Inc., a New York-based corporation. Until May 2016, Mr. Trump was the sole owner of The Trump Organization, Inc. As of at least 2017, The Trump Organization, Inc. has been wholly owned by DJT Holdings Managing Member LLC (a Delaware corporation), which in turn is owned by the "Donald J. Trump Revocable Trust" dated April 7, 2014 (the "Revocable Trust"). Mr. Trump is the donor and the sole beneficiary of the Revocable Trust, which was originally created and was operating under the laws of New York until sometime prior to December 2021 when it apparently became a Florida trust.

### B.      Mr. Trump's Federal New York Action

In December 2021, the Trump Organization LLC and Mr. Trump filed a federal lawsuit pursuant to 42 U.S.C. § 1983 against AG James in her official capacity in the United States District Court for the Northern District of New York styled *Trump v. James*, No. 21 Civ. 1352 (the "NDNY Action"). *See Trump v. James*, No. 21-cv-1352, 2022 WL 1718951, at *1 (N.D.N.Y. May 27, 2022). The lawsuit was filed nearly three years after OAG commenced its Investigation and more than a year after OAG commenced the NY Subpoena Action, but just weeks after OAG served its subpoena on Mr. Trump. By then, OAG had obtained through subpoenas more than 900,000 documents, interviewed dozens of witnesses (including many senior officers of the Trump Organization), and litigated numerous subpoena-compliance issues before Justice Engoron in the NY Subpoena Action.

The NDNY Action sought declaratory relief and an injunction halting or limiting OAG's Investigation. *Id.* The complaint raised four nominally separate but overlapping claims, alleging that: (i) OAG launched the Investigation in bad faith, in violation of the Fourteenth Amendment's Due Process Clause: (ii) the Investigation was intended to retaliate against Mr. Trump's political speech, in violation of the First Amendment; (iii) the document subpoenas to Mr. Trump and the Trump Organization were overbroad, unduly burdensome, and sought irrelevant material, in violation of the Fourth Amendment; and (iv) OAG's subpoenas constituted abuse of process. *Id.* at *4. In support of each of these claims, Mr. Trump and the Trump Organization relied on many of the same public comments by AG James cited in Mr. Trump's motion to quash filed in the NY Subpoena Action and referenced in the Amended Complaint in this action. *Compare id.* at *1-4 *with* February 2021 Order, 2022 WL 489625, at *1 *with* Am. Compl. ¶¶ 25-73.

Shortly after commencing the NDNY Action, Mr. Trump and the Trump Organization filed a motion for a preliminary injunction to enjoin OAG's Investigation or disqualify AG James from involvement in the Investigation. 2022 WL 1718951, at *1. OAG opposed the motion and cross-moved to dismiss the complaint under Rule 12(b)(1) based on abstention and under Rule 12(b)(6) based on preclusion and failure to allege a plausible claim for relief. *See Id.* at *8. By decision and order dated May 27, 2022 ("May 2022 Order"), the court granted the motion to dismiss and denied the motion for a preliminary injunction as moot. *Id.* at *20. In dismissing the complaint, the district court held that *res judicata* barred the action based on the preclusive effect of Justice Engoron's February 2022 Order. *Id.* at *19. The court observed that Mr. Trump and the Trump Organization already had raised or "could have raised the claims and requested the relief they seek in the federal action" in the NY Subpoena Action, which it held arose from the same series of transactions—OAG's Investigation into the Trump Organization—and involved the same or related facts. *Id.* at *19. The court also concluded that dismissal was warranted under *Younger* abstention, finding that the NY Subpoena Action was a pending civil proceedings involving certain orders uniquely in furtherance of the state court's ability to perform its judicial functions – namely, a prior ruling by Justice Engoron holding Mr. Trump in civil contempt. *Id.* at *10-14. The court explained that enjoining OAG's Investigation "would have the practical effect of interfering with the contempt ruling in the New York proceeding" and would risk negating that order. *Id.* at *11. Mr. Trump and the Trump Organization appealed the May 2022 Order, which is currently *sub judice*.

### C.     OAG's New York Enforcement Action

Based on the findings of the Investigation, on September 21, 2022, OAG commenced an enforcement action pursuant to New York Executive Law § 63(12) ("NY Enforcement Action") alleging that Mr. Trump, other individuals affiliated with his New York-based business, and various Trump Organization entities engaged in repeated and persistent fraud and illegality by inflating asset values on Mr. Trump's annual statements of financial condition ("Statements") covering at least the years 2011 through 2021 and presenting those Statements to lenders and insurers licensed in New York to obtain favorable loan and insurance terms they would otherwise not have been entitled to receive. *See People by James v. Donald J. Trump,* No. 452562/2022 (Sup. Ct. N.Y. Cnty. Nov. 3, 2022), slip op. at 1-2 ("November 2022 Order"), available at https://ag.ny.gov/sites/default/files/ecf_-_decision_on_pi.pdf.[1]

On October 13, 2022, based on certain actions taken by Mr. Trump and the Trump Organization—including the formation of a new corporate entity in Delaware named "The Trump Organization LLC" and the registration of that entity as a foreign corporation in New York the same day that OAG filed the NY Enforcement Action—OAG filed a motion for a preliminary injunction to maintain the status quo and obtain a court-appointed independent monitor to oversee the Trump Organization's future transfer of assets and financial disclosures, including any continued use of the Statements to meet loan covenants and to obtain new loans and insurance coverage. *Id.* at 1-2. By Decision and Order dated November 3, 2022 (the "PI Order"), Justice Engoron granted OAG's motion, finding that the evidence presented by OAG was "more than sufficient to demonstrate OAG's likelihood of success on the merits" and "the balancing of the equities tips, strongly, if not completely, in favor of granting a preliminary injunction, particularly to ensure that defendants do not dissipate their assets or transfer them out of this jurisdiction." *Id.* at 9. Additionally, the court ordered the appointment of an independent monitor, finding it 'the most prudent and narrowly tailored mechanism to ensure there is no further fraud or illegality . . .

---

[1] A district court may take judicial notice of public records that are "not subject to reasonable dispute" because they are "'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'" *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (quoting Fed. R. Evid. 201(b)). This includes "information readily available on the websites of government agencies" because "such information [is] not subject to reasonable dispute and [i]s capable of accurate and ready determination." *Ryzhov v. Mayorkas*, No. 21-CV-23596, 2022 WL 10869910, at *2 (S.D. Fla. Oct. 3, 2022).

pending the final disposition" of the action, and ordered Mr. Trump and the other defendants to produce to the monitor, among other things, a "full and accurate description of the structure and liquid and illiquid holdings and assets of the Trump Organization, its subsidiaries, and all other affiliates." *Id.* at 10. On November 14, 2022, Justice Engoron appointed the Honorable Barbara Jones, a retired federal judge and the consensus candidate of all parties, to serve as monitor, and on November 17, 2022, he ordered that defendants provide the corporate structure documents to the monitor by no later than November 30, 2022. *See* Supplemental Decision + Order on Motion (NYSCEF No. 193) and Supplemental Monitorship Order (NYSCEF No. 194) ("Supp. Monitor Order"), copies of which are attached as Composite Exhibit 1.

Mr. Trump and the other defendants appealed the PI Order to the New York Appellate Division, First Department, and simultaneously moved before the appellate court for a stay pending appeal and an interim stay pending a decision on the stay motion. The First Department denied the request for an interim stay on November 9, 2022, and the defendants withdrew their motion for a stay pending appeal on December 1, 2022 (although they are continuing to pursue their appeal of the PI Order on the merits).

**D.     Mr. Trump's Florida Action**

Mr. Trump filed this action in Florida state court on November 2, 2022, just prior to argument on OAG's preliminary injunction motion in the NY Enforcement Action. Then on November 15, 2022, less than two weeks after Justice Engoron granted OAG's preliminary injunction motion and ordered the appointment of an independent monitor, Mr. Trump filed his Amended Complaint along with his Motion, and OAG removed the action to this Court.

In the Amended Complaint, Mr. Trump asserts three causes of action. In "Count I" he alleges that AG James's conduct "in commencing and continuing" the NY Subpoena Action and NY Enforcement Action (collectively, the "NY Proceedings"), seeking discovery of his Revocable Trust documents (which he alleges is "reasonable to conclude" AG James would "widely publish"), and making referrals to other law enforcement agencies based on her findings from the Investigation violate his rights under the First and Fourteenth Amendments of the U.S. Constitution, including freedom of speech and association, privacy, due process, equal protection, and privileges and immunities. Am. Compl. ¶¶ 112-14. On this count he seeks compensatory and punitive damages along with unspecified declaratory and injunctive relief. *Id.* at p. 31 (Wherefore clause). In "Count II" and "Count III" Mr. Trump alleges that AG James's discovery of his

Revocable Trust documents and public disclosure of those documents (presumed based on AG James's "past conduct") would violate his rights to privacy and property (Count II) and his rights as grantor and beneficiary of the Revocable Trust (Count III) protected by Florida law. Am. Compl. ¶¶ 136-37, 139, 147. On these counts he seeks an injunction restraining AG James and "all other persons in active concert or participation with her . . . from requesting, demanding, obtaining, possessing, or disclosing a copy of his" Revocable Trust documents or restraining his "ability to amend, modify or revoke the Trust" and a declaration that AG James "has no authority to supplant or control the powers of the trustee" of his trust. Am. Compl. at pp. 35-36 (Wherefore clauses).

In his Motion, Mr. Trump seeks an order temporarily enjoining AG James and "any other persons in active concert or participation with her . . . from requesting, demanding, obtaining, possessing, or disclosing the 2020 or 2022 amendments" to his Revocable Trust. Motion at 1.

## STANDARD OF REVIEW

The decision of whether to grant or deny a preliminary injunction is within the sound discretion of the district court. *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir.2002). A district court may grant a preliminary injunction only upon a showing by the moving party that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Am. Civil Liberties Union of Fla., Inc. v. Miami–Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)). The third and fourth factors merge where, as here, the government is the opposing party. *Gonzalez v. Governor of Georgia*, 978 F.3d 1266, 1271 (11th Cir. 2020).

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Am. Civil Liberties Union*, 557 F.3d at 1198 (quoting *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir.1989)). "Failure to show any of the four factors is fatal, and the most common failure is not showing a substantial likelihood of success on the merits." *Id.*

**ARGUMENT**

I.  **PLAINTIFF HAS NO SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS FOR MULTIPLE, INDEPENDENT REASONS**

A.      **The Court Lacks Personal Jurisdiction Over AG James**

A federal court has personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Accordingly, personal jurisdiction in this District may be established under Florida law. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Mr. Trump alleges two bases for the exercise of personal jurisdiction over AG James under Florida law: (i) Florida Statute § 736.0202 ("Trust Code"), *see* Am. Compl. ¶ 18; and (ii) Florida Statute § 48.193(1)(a)(2) ("Long-Arm Statute"), *see* Am. Compl. ¶ 19. Neither statute provides a basis for the Court's exercise of personal jurisdiction over AG James.

First, Mr. Trump relies on a provision of the Trust Code stating that a person "submits to the jurisdiction of the courts of" Florida by "[a]ccept[ing] or exercis[ing] a delegation of powers or duties from the trustee of a trust having its principal place of administration in" Florida. FLA. STAT. § 736.0202(a)(4); Am. Compl. ¶ 18. Mr. Trump's reliance on this provision is unavailing as he fails to allege that AG James has made any attempt to accept or exercise a delegation of powers or duties delegated to the trustee of the Revocable Trust. Instead, Mr. Trump alleges that AG James seeks certain relief in the NY Proceedings that he contends would amount to "oversight and control" of the Revocable Trust "threatening to substantially interfere with the ability of the trustee . . . to carry out its provisions and discharge his duties in accordance with Florida law." Am. Compl. ¶ 88. But this is a conclusory allegation that is entitled to no weight, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and in any event does not amount to accepting or exercising a delegation of powers or duties delegated to the trustee as required under Fla. Stat. § 736.0202(a)(4) to subject a party to the jurisdiction of a Florida court. *See MC Tr. v. De Mishaan*, 273 So. 3d 1065 (Mem) (Fla. 3d DCA 2019) (affirming dismissal for lack of personal jurisdiction under Trust Code in suit against *non-resident trustee* because plaintiff "failed to meet his burden of establishing that [defendant] had the requisite minimum contacts with the State of Florida or that the alleged actionable tort was committed in Florida").

Second, Mr. Trump relies on the specific jurisdiction provision of the Long-Arm Statute subjecting a nonresident defendant to personal jurisdiction in Florida "for any cause of action arising from . . . [c]ommitting a tortious act within [Florida]." FLA. STAT. § 48.193(1)(a)(2); Am.

Compl. ¶¶ 19-20.[2] A nonresident defendant commits "a tortious act within [Florida]" when she commits an act outside the state that causes injury within Florida. *See Louis Vuitton*, 736 F.3d at 1353; *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215-17 (11th Cir. 1999) (collecting cases). "A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton*, 736 F.3d at 1350 (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).

The Amended Complaint fails to allege facts sufficient to establish any tortious acts by AG James outside Florida causing injury to Mr. Trump within Florida. Mr. Trump's claims appear to be based entirely on actions taken by AG James in New York in connection with the Investigation and NY Proceedings, but he fails to articulate how such actions have caused him any injury at all, much less injury in Florida; Mr. Trump being investigated and sued for fraud and OAG receiving trust documents in discovery is not "injury." *See Rehberg v. Paulk*, 611 F.3d 828, 850-51 (11th Cir. 2010), *aff'd*, 566 U.S. 356 (2012) (holding there is no clearly established right to be free from an investigation, even if retaliatory); *cf. Trump v. U.S.*, No. 22-13005, 2022 WL 17352069, at *7 (11th Cir. Dec. 1, 2022) (holding there is no irreparable harm from prosecutors reading unprivileged sensitive documents lawfully obtained). Thus, Mr. Trump fails "to make out a prima facie case of jurisdiction" under the Long-Arm Statute. *United Techs. Corp.*, 556 F.3d at 1274.

But even if the exercise of personal jurisdiction over AG James would be permitted under Florida law (which is not the case), there are insufficient minimum contacts between AG James and Florida to satisfy the Due Process Clause of the Fourteenth Amendment. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996); *Silver v. Glinkenhouse*, No. 06-cv-81025, 2007 WL 9701847, at *2 (S.D. Fla. Jan. 31, 2007). A court's jurisdiction over a defendant satisfies due process when there are "minimum contacts," *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), between the defendant and the forum "such that [s]he should reasonably anticipate

---

[2] Mr. Trump understandably does not allege that AG James is subject to general jurisdiction in Florida under the Long-Arm Statute – which requires "substantial and not isolated activity within [Florida] . . . whether or not the claim arises from that activity," §48.193(2). *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (discussing general and specific personal jurisdiction under the Long-Arm Statute); *Noble House, LLC v. Underwriters at Lloyd's, London*, No. 20-62080-CIV, 2021 WL 896219, at *5 (S.D. Fla. Mar. 3, 2021) (same).

being haled into court there," *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Such minimum contacts must show that "the defendant purposefully avail[ed] [her]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Here, Mr. Trump alleges no contact by AG James with Florida, and the NY Proceedings focus on fraud and illegality in Mr. Trump's financial statements presented in New York to lenders and insurers licensed in New York. All of the actions by AG James alleged in the Amended Complaint as the bases for Mr. Trump's three causes of action relate to conduct undertaken by AG James and OAG in the NY Proceedings in New York – pursuing the Investigation, seeking to enforce subpoenas in the NY Subpoena Action, commencing the NY Enforcement Action, and seeking discovery of the Revocable Trust documents in the NY Proceedings. Nor does it matter under a minimum contacts analysis that Mr. Trump unilaterally decided to change his residency to Florida and amend the situs of his Revocable Trust from New York to Florida after the Investigation was well underway. Simply put, nothing about AG James's pursuit of an investigation and enforcement action in her role as New York's Attorney General, authorized by New York law, and occurring entirely within New York and focusing on fraud and illegality committed in New York as part of business transactions with lenders and insurers in New York creates any contact between her and Florida "such that [she] should reasonably anticipate being haled into court" in this District, *World–Wide Volkswagen*, 444 U.S. at 297, or supports a finding that she "purposefully avail[ed] [herself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson*, 357 U.S. at 253.

Finally, considerations of federalism and state sovereignty — implicated here because AG James is, despite Mr. Trump's characterization otherwise, being sued in her official capacity, *see, infra*, at 13-14 — provide further bases for finding that the exercise of personal jurisdiction over AG James would be unreasonable under the Due Process Clause. "Federalism and state sovereignty are an essential part of the constraints that due process imposes upon personal jurisdiction," and they prevent a federal district court from exercising personal jurisdiction "over a nonresident state official." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 488 (5th Cir. 2008). "The sovereignty of each State . . . implie[s] a limitation on the sovereignty of all of its sister States—a limitation express or implicit in both the original scheme of the Constitution and the Fourteenth Amendment." *World–Wide Volkswagen,* 444 U.S. at 293. "The effect of holding that

11

a federal district court in [Florida] had personal jurisdiction over a nonresident state official would create an avenue for challenging the validity of one state's laws in courts located in another state. This practice would greatly diminish the independence of the states." *Stroman*, 513 F.3d at 488; *see also PTI, Inc. v. Philip Morris Inc*., 100 F. Supp. 2d 1179, 1189 n.8 (C.D. Cal. 2000) (requiring one state to submit to the long-arm jurisdiction of another state "constitutes an extreme impingement on state sovereignty").

Because there is no personal jurisdiction over AG James, Mr. Trump has no substantial likelihood of success on the merits and the Court has no jurisdiction to enter the requested temporary injunction.

### B.      This Action Is Barred By New York's Interstate Sovereign Immunity

A state's "sovereign immunity is a historically rooted principle embedded in the text and structure of the Constitution" that bars private suits against a state in the courts of other states. *See Franchise Tax Board of Ca. v. Hyatt*, __ U.S. __, 139 S. Ct. 1485, 1492, 1499 (2019). This "interstate sovereign immunity [] preserved in the constitutional design," *id*. at 1496, derives from the centuries-old view that no sovereign may "be sued without its consent," which was "universal in the States when the Constitution was drafted and ratified." *Alden v. Maine*, 527 U.S. 706, 715–16 (1999). As the Supreme Court announced in *Hyatt*, "States retain their [interstate] sovereign immunity from private suits brought in the courts of other States." 139 S. Ct. at 1492. The *Hyatt* Court rested its decision on the recognition that the Constitution "'preserve[s] the States' traditional immunity from private suits,'" which "'neither derives from, nor is limited by, the terms of the Eleventh Amendment.'" *Id*. at 1496 (quoting *Alden*, 527 U.S. at 723-24).

While a state waives its Eleventh Amendment immunity from suit upon removing a case to federal court, *Lapides v. Board of Regents of the Univ. Sys. of Ga*., 535 U.S. 613, 618 (2002), it does *not* "waive[] any defense it would have enjoyed in state court," including interstate sovereign immunity independent of the Eleventh Amendment, *Stroud v. McIntosh*, 722 F.3d 1294, 1302 (11th Cir. 2013) (quoted in *Page v. Hicks*, 773 F. App'x 514, 518 (11th Cir. 2019)). Accordingly, notwithstanding the removal of this case to federal court, New York retains its interstate sovereign immunity, which serves as a bar to a court's exercise of subject matter jurisdiction over all types of official capacity claims against a state official, regardless of whether the claims seek damages or injunctive or declaratory relief. *See Hyatt*, 139 S. Ct. at 1496 ("The sovereign immunity of the States, we have said, neither derives from, nor is limited by, the terms of the Eleventh Amendment.

12

Consistent with this understanding of state sovereign immunity, this Court has held that the Constitution bars suits against nonconsenting States in a wide range of cases."); *State v. Great Lakes Mins., LLC*, 597 S.W.3d 169, 172 (Ky. 2019) ("The U.S. Supreme Court in [*Hyatt*] made no distinction between claims seeking monetary damages and claims seeking other types of relief.").

Sovereign immunity applies here because the action seeks relief against AG James in her official capacity, and so is a suit against New York State as the "real, substantial party in interest." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101 (1984); *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990). Mr. Trump cannot overcome New York's interstate sovereign immunity from suit by characterizing the action in the caption of the Amended Complaint as being against AG James "individually," Am. Compl. at p. 1, because the "complaint itself, not the caption, controls the identification of the parties and the capacity in which they are sued," *Welch v. Laney*, 57 F.3d 1004, 1010 (11th Cir. 1995). "[C]ourts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit." *Lewis v. Clarke*, ──── U.S. ────, 137 S. Ct. 1285, 1290 (2017). In making this assessment, courts must determine in the first instance whether the remedy sought is against the sovereign rather than the named defendant herself. *See In re New York (Walsh),* 256 U.S. 490, 500–502 (1921); *see also Lewis*, 137 S. Ct. at 1291 ("In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself."). A court must "analyze the complaint to determine whether the requested relief operates against *the office the individual holds*—or rather, against the individual [her]self." *Attwood v. Clemons*, 818 F. App'x 863, 872 (11th Cir. 2020) (emphasis added).

Here, the relief sought is against OAG, not AG James herself. In count one of the Amended Complaint, Mr. Trump alleges AG James's "conduct in commencing and continuing the [NY Proceedings], making numerous referrals to other agencies" based on OAG's findings, and using "her authority and deployment of state power" have purportedly violated his constitutional rights. Am. Compl. ¶¶ 113, 116. Based on this alleged conduct, Mr. Trump seeks compensatory damages "potentially as high as $250,000,000 in confiscation from the [NY Enforcement Action]," legal fees and costs in defending against the NY Proceedings, and other damages to be proven at trial. *Id*. ¶ 120. In counts two and three, Mr. Trump's allegations of purported state law violations focus on OAG's conduct in the NY Proceedings, and more specifically OAG's efforts to obtain in

discovery documents related to his Revocable Trust and to have Justice Engoron appoint an independent monitor in the NY Enforcement Action. *Id.* ¶¶ 136, 147. Based on this alleged conduct, Mr. Trump seeks to restrain AG James and OAG attorneys from seeking or obtaining through discovery in the NY Proceedings the Revocable Trust documents or seeking any relief in the NY Proceedings that would purportedly interfere with his rights or the rights of the trustee with respect to the Revocable Trust. *Id.* at p. 35-37 ("Wherefore" clauses). All of this relief is against the office that AG James holds, not against her individually, *Attwood*, 818 F. App'x at 872, and therefore this is an official capacity suit where New York is the real, substantial party in interest, *Pennhurst,* 465 U.S. at 101, and *Carr v.*, 916 F.2d at 1524 (citing *Pennhurst*).

Finally, even if the exception to Eleventh Amendment immunity recognized in *Ex parte Young*, 209 U.S. 123 (1908), were extended to apply to interstate sovereign immunity, it would not change the outcome; the exception applies only to federal law claims seeking prospective injunctive relief, *see Virginia Off. for Prot. & Advoc. v. Stewart,* 563 U.S. 247, 255 (2011), and *Schultz v. Alabama*, 42 F.4th 1298, 1314 (11th Cir. 2022), and therefore would not apply to Mr. Trump's second and third counts based exclusively on state law or his claim for money damages in his first count, and his claim for prospective injunctive relief in his first count is otherwise not viable because the Court lacks personal jurisdiction, and the claim is otherwise barred by issue and claim preclusion and the *Rooker-Feldman* doctrine for the reasons set forth below.

## C.      This Action Is Barred By Issue And Claim Preclusion

Mr. Trump's action fails to state a claim because it is barred by the preclusive effect of a prior final orders in the NY Subpoena Action and the NDNY Action. Pursuant to 28 U.S.C. § 1738, the federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 81 (1984); *see also Amey, Inc. v. Gulf Abstract & Title, Inc*., 758 F.2d 1486, 1509 (11th Cir.1985) (cleaned up) (cited in *Kizzire v. Baptist Health Sys., Inc*., 441 F.3d 1306, 1308 (11th Cir. 2006)). Here, the doctrines of claim and issue preclusion under New York law apply to bar this action.

Because Mr. Trump's claims are predicated on AG James's public statements and supposed animus against him in commencing and pursuing the NY Proceedings, they are barred by issue preclusion, or collateral estoppel. Under collateral estoppel, "issues actually decided in valid state-court judgments may well deprive plaintiffs of the 'right' to have their federal claims

14

relitigated in federal court." *San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 342 (2005). That is so because adverse findings "are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered." *Migra*, 465 U.S. at 83. New York will bar relitigation of an issue that "is identical to an issue which was raised, necessarily decided and material in the first action," if "the plaintiff had a full and fair opportunity to litigate the issue." *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 350 (1999).

Collateral estoppel applies here because all of Mr. Trump's claims depend on two key issues—each of which was fully litigated and necessarily decided twice, once in the NY Subpoena Action and again in the NDNY Action. First, Mr. Trump's claims are based on the contention that OAG's Investigation has an improper purpose of "intimidating and harassing" Mr. Trump and the Trump Organization based on "personal and political animus." Am. Compl. ¶¶ 2, 72. Second, and relatedly, his claims are premised on the theory that OAG's Investigation and pursuit of the NY Subpoena Action are an "unlawful abuse of [AG James's] authority and deployment of state power" to discriminate against him in violation of his constitutional rights. *Id*. ¶116. Mr. Trump raised and litigated these same issues in the NY Subpoena Action on his motion to quash, arguing among other things that the Investigation was purportedly predicated on improper animus towards him and amounted to selective prosecution in violation of his constitutional rights. February 2022 Order, 2022 WL 489625, at *4-5. These arguments in the NY Subpoena Action rested almost entirely on the same public comments by AG James cited in the Amended Complaint in this action. *Compare id*. at *4 *with* Am. Compl. ¶¶ 25-73. Justice Engoron rejected these arguments, finding that "the impetus for the investigation was not personal animus" and confirming that OAG had a "sufficient basis for continuing its investigation." February 2022 Order, 2022 WL 489625, at *4-5. On appeal from the February 2022 Order, the appellate court similarly concluded that the "political campaign and other public statements" by AG James did not support a claim that OAG was improperly using civil subpoenas to undermine Mr. Trump's rights and that OAG's Investigation was "lawfully initiated at its outset and well founded." *People v. Trump*, 205 A.D.3d at 626.

Mr. Trump attempted to relitigate these same issues for a second time in the NDNY Action, asserting in his complaint there that AG James commenced the Investigation in bad faith and an abuse of power to retaliate against Mr. Trump in violation of his constitutional rights. *See, supra*,

15

at 5. More specifically, in opposing AG James's motion to dismiss the NDNY Action on *Younger* abstention grounds, Mr. Trump argued that the bad faith exception to *Younger* abstention applies because OAG's Investigation lacked a legitimate basis when commenced and "was brought for a retaliatory, harassing, or other improper purpose." *Trump v. James*, No. 21-cv-1352, 2022 WL 1718951, at *12 (N.D.N.Y. May 27, 2022). In rejecting Mr. Trump's argument, the court found that the statements by AG James – which are largely the same statements by AG James referenced in the Amended Complaint (*compare id*. at *1-4 *with* Am. Compl. ¶¶ 25-73) – did not establish "that the [NY Subpoena Action] was commenced for the purpose of retaliation" and had a "legitimate factual predicate," namely, the congressional testimony of Michael Cohen. 2022 WL 1718951, at *13. As noted by the court, "[w]hile [AG James's] public statements make clear that she disagrees vehemently with Mr. Trump's political views, [Mr. Trump does] not identify what protected speech or conduct [AG James] allegedly retaliated against [him] for or demonstrate any causal connection between any such protected activity and the decision to commence" the NY Subpoena Action. *Id*. Finally, the court found that Mr. Trump "submitted no evidence that the [NY Subpoena Action] has been conducted in such a way as to constitute harassment." *Id*.

Mr. Trump cannot plausibly contend that he lacked a fair opportunity to litigate these issues having chosen to raise the same arguments and rely on the same evidence in both the NY Subpoena Action and the NDNY Action he now seeks to raise here. A party cannot base an action on "virtually a verbatim repetition" of allegations from prior proceedings that resulted in adverse rulings on "dispositive factual and legal issues." *Parker*, 93 N.Y.2d at 350; *see also Allen v. McCurry*, 449 U.S. 90, 104 (1980).

Claim preclusion, or *res judicata*, also applies to bar this action. Under New York law, the doctrine of *res judicata* applies where: (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action. *See Allen*, 449 U.S. at 94; *Chase Manhattan Bank, N.A. v. Celotex Corp*., 56 F.3d 343, 345–46 (2d Cir. 1995). Under New York's transactional approach to *res judicata*, "'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy'" from the prior action. *Simmons v. Trans Express Inc*., 37 N.Y.3d 107, 111 (2021) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981)).

As already held by Judge Sannes when dismissing Mr. Trump's NDNY Action, all three elements are satisfied here based on Justice Engoron's February 2022 Order. *Trump v. James*, 2022 WL 1718951, at \*16-19. First, the February 22 Order, which denied Mr. Trump's motion to quash OAG's subpoena and granted OAG's cross-motion to compel compliance, is a final judgment on the merits which brought the parties' claims regarding compliance with the subpoena to a final conclusion. *Id*. at \*17. Second, there is an identity of parties because the February 2022 Order decided Mr. Trump's motion. *Id*. Third, Mr. Trump had a full and fair opportunity to litigate in the NY Subpoena Action the propriety of OAG's Investigation and OAG's document demands. *Id*. at \*18-19. Just as the court in the NDNY Action applied the doctrine of *res judicata* to preclude Mr. Trump from interfering in the NY Proceedings, so to should this Court.

>        **D.      This Action Is Barred Under The *Rooker-Feldman* Doctrine**

The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 281 (2005); *Siegel*, 234 F.3d at 1172. The doctrine extends to claims that are "inextricably intertwined" with a state court judgment. *Dale v. Moore*, 121 F.3d 624, 626 (11th Cir.1997). A federal claim is inextricably intertwined with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Pennzoil Co. v. Texaco, Inc*., 481 U.S. 1, 25 (1987) (Marshall, J., concurring).

Here, Mr. Trump is a state-court loser subject to the *Rooker-Feldman* doctrine because this action, by expressly seeking compensatory and punitive damages for AG James's "conduct in commencing and continuing" the NY Proceedings, Am. Compl. ¶ 113, and otherwise seeking to enjoin OAG from pursuing discovery of trust-related documents in the NY Proceedings, invites the Court to reject multiple orders issued by Justice Engoron: (i) the February 2022 Order upholding the bona fides of OAG's Investigation, rejecting Mr. Trump's selective prosecution claim, and compelling Mr. Trump to comply with OAG's subpoena; (ii) the PI Order granting preliminary injunctive relief to maintain the status quo and require Mr. Trump to produce to the monitor documentation providing a "full and accurate description of the structure and liquid and illiquid holdings and assets of the Trump Organization, its subsidiaries, and all other affiliates," November 2022 Order at 10; and (iii) the orders appointing the monitor and detailing the monitor's duties, Supp. Monitor Order (Exhibit 1). Effectively, Mr. Trump is asking this Court to override

Justice Engoron's rulings that Mr. Trump claims will injure him by making him defend against a civil enforcement proceeding and, as relevant to this motion, disclose business-oriented information that he would rather shield from view. The exclusive means to challenge these prior state determinations would be to appeal within the New York state court system—not to seek a preliminary injunction from a federal district court sitting over a thousand miles away. At minimum, Mr. Trump's claims here are "inextricably intertwined" with the prior state court determinations. *Dale*, 121 F.3d at 626.

## II.     THERE IS NO IRREPARABLE HARM

"[E]ven if [a party] establish[es] a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel*, 234 F.3d at 1176 (quoted in *Georgia Muslim Voter Project v. Kemp*, 918 F.3d 1262, 1267 (11th Cir. 2019)). That is because "[a] showing of irreparable injury is the sine qua non of injunctive relief." *Id*. (cleaned up). "[T]he asserted irreparable injury must be neither remote nor speculative, but actual and imminent." *Id*. (cleaned up); *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, No. 18-cv-81606, 2019 WL 3890368, at *2 (S.D. Fla. June 27, 2019) (same).

Mr. Trump fails to establish he will suffer any injury in the absence of the requested temporary injunction, much less injury that is irreparable. That is because his counsel advised she would be producing the trust documents to OAG in redacted form, "without disclosing estate planning information." Am. Compl., Exh. A at 2 (September 16, 2022 email from Alina Habba, Esq.). Although counsel has not yet produced the redacted trust documents as promised, Mr. Trump has not asserted any basis to presume that OAG will object to his counsel's production of a set of the trust documents redacted to protect just the estate planning information – the only information he contends will result in constitutional harm to him if publicly disclosed. Similarly, there is no factual basis to suggest that any trust documents to be produced to OAG in the NY Proceedings in whatever form they take will be "widely publish[ed]," Am. Compl. ¶ 112. *See Trump*, 2022 WL 17352069, at *7 ("The district court's unsupported conclusion that government possession of seized evidence creates an 'unquantifiable' risk of public disclosure is not enough to show that Plaintiff faces irreparable harm."); *cf. Citizens United v. Schneiderman*, 882 F.3d 374, 385 (2d Cir. 2018) (rejecting as "not well pled" a conclusory allegation that there is the possibility that the NY Attorney General might publicize donors' identities). Indeed, the defendants in the

NY Proceedings have already made a partial production of the Revocable Trust documents to OAG, *see* Am. Compl. at Exh. A (September 8, 2022 email from Colleen Faherty, Esq. describing excerpted trust documents received), and Mr. Trump does not (and cannot) allege that OAG has "widely publish[ed]" any of that material.

Finally, "a preliminary injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (cleaned up). Therefore, "a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *Id*. (quoted in *Tuna Fam. Mgmt Inc. v. All Tr. Mgmt. Inc.*, No. 20-cv-14017, 2021 WL 4775076, at *4 (S.D. Fla. Oct. 13, 2021)). Here, OAG requested on September 1, 2022 that Mr. Trump produce as soon as possible "the documents establishing" his Revocable Trust, noting that these are "basic, foundational documents" because the trust "holds all of the assets valued in the [Statements] and its Trustees are responsible for presentation of the [S]tatements from 2016 forward." *See* Am. Compl., Exh. A at 5 (September 1, 2022 email from Colleen Faherty, Esq.). Yet Mr. Trump waited over two and a half months, until November 15, 2022, to file his Motion. This delay "militates against a finding of irreparable harm." *Wreal*, 840 F.3d at 1248.

## III.    THE EQUITIES AND PUBLIC INTEREST WEIGH IN OAG'S FAVOR

Preliminary injunctive relief may be awarded only if the "public interest would not be disserved" by the issuance of a preliminary injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)); *see also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.") (quoting *Weinberger v. Romer-Barcelo*, 456 U.S. 305, 312 (1982)).

The equities and public interest, which merge because the government is the opposing party, *Gonzalez*, 978 F.3d at 1271, weigh strongly in favor of having AG James and OAG continue pursuing the NY Proceedings that are focused on preventing further fraud and misrepresentation by Mr. Trump and his company in financial disclosures provided to financial institutions doing business in New York. *See* November 2022 Order, slip op. at 9 (finding that the evidence presented by OAG in support of its preliminary injunction motion was "more than sufficient to demonstrate OAG's likelihood of success on the merits"); *Mirka United, Inc. v. Cuomo*, No. 06-cv-14292, 2007 WL 4225487, at *4 (S.D.N.Y. Nov. 27, 2007) (holding New York has an important interest in

"investigating and preventing fraudulent conduct"). In contrast, Mr. Trump's argument that the public would be better served by the Court's interference with the NY Proceedings rests entirely on rank speculation that he will be compelled to provide an unredacted set of his trust documents to OAG (contrary to his counsel's stated intentions) and that OAG will widely publish the documents when obtained, neither of which has any evidentiary support.

## CONCLUSION

For all of the foregoing reasons, the Court should deny Plaintiff's Motion in its entirety, along with any other relief the Court deems necessary and appropriate.

Dated:        December 7, 2022

LETITIA JAMES
Attorney General of the State of New York

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
Tel: (305) 374-7580

By:   _Melissa Pallett-Vasquez_
       Melissa Pallett-Vasquez
       Fla. Bar No. 715816
       Robert W. Turken
       Fla. Bar No. 306355
       Jeffrey Snyder
       Fla. Bar No. 21281
       mpallett@bilzin.com
       rturken@bilzin.com
       jsnyder@bilzin.com
       stapanes@bilzin.com
       vlopez@bilzin.com
       eservice@bilzin.com

Andrew S. Amer (admitted *pro hac vice*)
  Special Counsel
Colleen K. Faherty (admitted *pro hac vice*)
  Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-6127/6046
andrew.amer@ag.ny.gov
colleen.faherty@ag.ny.gov

*Attorneys for Defendant Letitia James*

20

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a copy of the foregoing was served this 7th day of

December, 2022 upon all counsel of record via CM/ECF.

 /s/*Melissa Pallett-Vasquez*       
Melissa Pallett-Vasquez
