UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Docket No. 9:22-CV-81780-DMM-WM

PRESIDENT DONALD J. TRUMP,

    Plaintiff,

v.

LETITIA JAMES, individually,

    Defendant.

                                             /

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
TO EMERGENCY MOTION FOR TEMPORARY INJUNCTION**

Plaintiff, President DONALD J. TRUMP ("Plaintiff"), by and through his undersigned counsel, replies to Defendant's Opposition to Emergency Motion for Injunction (Doc. 9) (the "Opposition"), and would show:

## PRELIMINARY STATEMENT

Plaintiff's narrowly-crafted request for preliminary injunctive relief to prevent James from seeking, obtaining or disclosing highly-sensitive private (and attorney-client privileged) estate planning documents *pendent lite* should be granted. James made no effort in her response to explain why she would have any need to pry into the terms of Plaintiff's revocable trust or how she would be harmed in any way by this Court limiting her ability to do so unless and until a compelling need arises. To the contrary, James suggests that redacted copies of such documents might be relevant to another lawsuit she filed in New York, leaving the Court to only imagine what part or parts of such documents she would ever need to see or why.

Despite James' effort to characterize this action as a discovery dispute in a New York action, the Trust Documents have never been the subject of a subpoena, discovery request, or order in that action or any other. James made no effort to prove otherwise in her response. Instead, the email communications attached to the Amended Complaint show an effort to use those investigations as a pretext for obtaining this information disconnected from any pertinent legal process. The New York order she attaches to her response does not order the production of Trust Documents to James or the Monitor and explicitly limits the production of

information to non-privileged documents relating to certain specified topics, belying James' assertion that her seeking these documents is part of the New York case.

Turning to James' response, the Amended Complaint will not only survive all four grounds James claims support its dismissal but it is highly likely to succeed, particularly as it relates to Plaintiff's privacy rights in his revocable trust. Plaintiff alleges a longstanding, vengeful targeting of Plaintiff and "anyone in his orbit" by a public official under color of state law due to disagreement with Plaintiff's protected political activity. These attacks are targeted at Plaintiff (a Florida resident), his three adult children (all Florida residents), and Plaintiff's businesses (several of which are in Florida). As demonstrated below, this is more than sufficient to establish long-arm jurisdiction and minimum contacts with the State of Florida for this Court to have personal jurisdiction over Defendant.

James' remaining arguments for dismissal all rely on her attempt to re-cast the Amended Complaint as an official capacity suit brought against the New York Office of the Attorney General ("OAG") rather than an individual capacity claim against James for her unconstitutional behavior. James attempts to characterize Plaintiff's claim as challenging the "Investigation" (Opp., p. 2) or the "NY Enforcement Action" (Opp., p. 6), however, it encompasses a far broader, sustained campaign by James to abuse office for personal gain at the expense of Plaintiff which was conceived and announced before James' election to state office (or the congressional testimony of since-disgraced Michael Cohen to which she points as the beginning of the facts in this case) and continues to this day. See generally, Am.

3

Compl. ¶¶ 66-72. James has simply not given the well pled allegations of the Amended Complaint their due.

## ARGUMENT

I. **Plaintiff Has a Substantial Likelihood of Success on the Merits**

   *A. This Court has Personal Jurisdiction over Defendant.*

The Court's review of a motion to dismiss for lack of personal jurisdiction follows a familiar two-step process. First, the Court reviews the allegations of the complaint to determine whether the plaintiff pleaded "a prima facie case for personal jurisdiction by presenting sufficient evidence to withstand a directed verdict motion." *Thomas v. Brown*, 504 Fed. Appx. 845, 847 (11th Cir. 2013) (citing *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006)). Once this is met, "[t]he defendant then must raise, through affidavits, documents or testimony a meritorious challenge to personal jurisdiction." *Id.* Because James failed to offer any affidavits or relevant documents on personal jurisdiction at this point, the Court's analysis turns solely on whether Plaintiff has pleaded "a prima facie case" of personal jurisdiction. Plaintiff has alleged two theories: (1) the Florida Trust Code Long-Arm Statute; and (2) the Florida General Long-Arm Statute.

   1. Personal Jurisdiction for Trust Claims

The Florida Trust Code provides the courts of Florida have "personal jurisdiction" over "[a]ny trustee, trust beneficiary, ***or other person, whether or not a citizen or resident of this state, who personally or through an agent***" performs one of the enumerated acts listed in the statute. § 736.0202(2)(a), Fla. Stat.

(emphasis added). For claims arising under Florida's Trust Code, a trust-specific long-arm statute applies. *Abromats v. Abromats*, 16-CV-60653, 2016 WL 4366480, at *3—4 (S.D. Fla. Aug. 16, 2016). Similar to the instant case, in *Abromats*, the plaintiff satisfied the trust-specific long-arm statute by pleading "a prima facie case" of personal jurisdiction over a Wyoming resident pursuant to the "long-arm statute related to trusts" by alleging: (1) the situs of the trust was in Florida; and (2) defendant accepted a distribution from the trust (one of the statutory long-arm actions, § 736.0202(2)(a)(8)). *Id*. This Court found that those allegations were sufficient "to make out a prima facie case of jurisdiction." *Id*. at *4.

In the instant case, Plaintiff has alleged that James is attempting to "exercise[] a delegation of powers or duties from the trustee of a trust having its principal place of administration in this state." § 736.0202(2)(a)(4). Plaintiff has alleged that James is seeking to exercise control over the trust by virtue of her attempts to exercise control over the *res* of the trust, its trustee, and even the right of Plaintiff to revoke or modify it. Plaintiff alleged that James was seeking to "substantially interfere with the ability of the trustee" to control the trust, including by "supplanting, controlling, or monitoring the trustee and attempting to exercise or restrain the exercise of powers" belonging to the trust. Pl's. Am. Compl. ¶¶ 18, 88, 90, 92, 93, 94, 95, 96, 147, and Exhibit A. These allegations are sufficient to shift the burden to James to submit evidence challenging the allegations of the Complaint, which James chose not to do.

The one case cited by James is unhelpful to this analysis since it contains no facts or analysis to explain its reasoning. In conclusory fashion, the opinion affirms a

dismissal for lack of jurisdiction since the plaintiff did not produce sufficient evidence to meet the requirements of Florida's long-arm statute or the minimum contacts required by Due Process. *MC Tr. v. De Mishaan*, 273 So. 3d 1065 (Fla. 3d DCA 2019). Even if this opinion entered into the analysis, it is dissimilar since Plaintiff has pleaded sufficient facts to support personal jurisdiction and James has not submitted any evidence in opposition.

2. Personal Jurisdiction for Constitutional Claims

Plaintiff's remaining claims are reviewed under Florida's general long-arm statute (§ 48.193(1)(a)(2)). James agrees, for purposes of the long-arm statute, a defendant is subject to personal jurisdiction in Florida based on a tortious act performed outside the state provided the action "causes injury in Florida." D.E. 9, p. 16 (citing *Louis Vuitton Malletier, S.A., v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013). This Court has recognized "[t]elephonic, electronic, or written communication into the state may permit the exercise of jurisdiction under [Florida's long-arm statute], provided that the tort alleged arises from such communications." *Chevaldina v. Ctr. for Individual Rights*, 20-24690-CV, 2021 WL 8776795, at *5 (S.D. Fla. Dec. 15, 2021) (citing *Wendt v. Horowitz*, 822 So. 2d 1252, 1253 (Fla. 2002)). The touchstone of the analysis is whether the actions of the defendant, regardless of their location, cause injury to a plaintiff in Florida. *VAS Aero Servs., LLC v. Arroyo*, 868 F. Supp. 2d 1374, 1380 (S.D. Fla. 2012) (finding personal jurisdiction over a Washington defendant under § 48.193(1)(a)(2) based on allegations of misappropriating files from plaintiff, a Delaware corporation with its principal place of business in Florida).

Plaintiff has alleged the injuries were suffered in Florida, including the chilling of his First Amendment freedoms by James targeting him and issuing statements about him intended to deter his expression and invade his privacy. Pl's. Am. Compl. ¶¶ 19, 22. Plaintiff has alleged the actions taken by James, in retaliation for conduct protected First Amendment activity, were directed to him and explicitly were to include him, his children (Florida residents), and his business holdings (including those in Florida). Pl's. Am. Compl. ¶¶ 51, 54, 58, 74, 76, 86, and 87—90. And Plaintiff has alleged the harm caused by the tort – the invasion of his constitutional rights – occurred in Florida. ¶¶ 108, 109, 114, 116, 117, 124, 131—34, and 139—41.

### 3. James has Sufficient Florida Contacts to Satisfy Due Process

Due Process requires the plaintiff show sufficient contacts with the forum state such that the defendant "has fair warning it may be subject to suit there." *Del Valle v. Trivago GMBH*, ---F.4th--- Case No.: 20-12407, 2022 WL 17101160, at *5 (11th Cir. Nov. 22, 2022). Since Plaintiff has alleged specific jurisdiction over James, Plaintiff must plead facts to show: (1) his claims "arise out of or relate to" James' contacts with Florida; and (2) James "purposefully availed" herself of the privilege of conducting activities in Florida. *Id.* Once those facts are plead, James must "make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (internal quotations omitted).

This first prong simply requires a showing that the claim arises, at least in part, out of contacts between the defendant and the forum state. *Id.* As to the second prong – purposeful availment – "a nonresident defendant's single tortious act can

establish purposeful availment without regard to whether the defendant had any other contacts with the forum state." This is regarded as the "effect test." *Id.* (internal citations omitted). A plaintiff traveling under this theory must show an intentional tort, aimed at the forum state, that "caused harm [] the defendant should have anticipated would be suffered in the forum state." *Id.*

Here, Plaintiff alleged that James has committed an intentional act and targeted him and issued statements and process directed to him, a Florida resident, here in Florida. Pl's. Am. Compl. ¶¶ 19, 22. Plaintiff has alleged that these intentional actions directed towards Plaintiff, his children, and his business interests in the state of Florida were sufficient to put James on notice that the harm she was causing would be suffered in Florida. Finally, James has not presented any evidence or argued meaningfully that she would suffer "a burden" by litigating in Florida. Thus, she has waived this argument for failing to present any evidence to satisfy her burden. *Del Valle,* 2022 WL 17101160, at *7.

### B. Defendant's Other Arguments for Dismissal Fail

#### 1. <u>Sovereign Immunity Does Not Bar This Action</u>

The Amended Complaint alleges claims against James personally, not the State of New York; sovereign immunity simply does not apply. It is well established that "sovereign immunity 'does not erect a barrier against suits to impose individual and personal liability.'" *Lewis v. Clarke*, 137 S.Ct. 1285, 1291, 197 L.Ed.2d 631 (2017) (citing *Hafer v. Melo,* 502 U.S. 21, 30-31, 112 S.Ct. 358 (1991)). Individual capacity suits "seek to impose personal liability upon a government official for actions he takes

8

under the color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). An individual capacity suit targets the individual behavior of an individual as she carries out her state duties. *See Attwood v. Clemons*, 818 Fed.Appx. 863, 871 (11th Cir. 2020) (Grant, J., concurring) (rejecting public official's argument that claim should be characterized as an official capacity claim). In an official capacity suit a defendant's successor in office could be substituted and the relief sought would remain the same.

Plaintiff alleges that James was and is pursuing her own personal vendetta against Plaintiff. She was not carrying out policy of the State of New York but was instead relentlessly undertaking a retaliatory and unconstitutional agenda conceived by her before becoming AG and subsequently made the basis of her tenure in office. The Amended Complaint does not challenge the State of New York's authority to adopt or enforce Executive Law 63(12), or any other of its laws — it simply alleges that James has unlawfully wielded power given to her, which, in part, includes use of Executive Law 63(12) in ways never conceived or before employed based on unconstitutional animus. "An individual capacity suit targets the individual behavior of an official . . . as [s]he carries out [her] state duties. And a successful suit may result in an award of monetary damages, declarative relief, or injunctive relief to correct the constitutional violation. *Attwood*, 818 F. App'x at 871–72. In short, this is an individual capacity suit.

### 2. The Remaining Arguments for Dismissal Fail

For the same reason, James' arguments for dismissal based on (1) issue and claim preclusion, and (2) the *Rooker-Feldman* doctrine fail. It is true that Plaintiff

9

filed an action against James *in her official capacity* in the Northern District of New York and that the district court abstained from hearing it, which decision is currently being reviewed by the Second Circuit. It is also true that Plaintiff was sued in the New York "enforcement" action by James *in her official capacity*. It is equally true that had James not been reelected in November, both pieces of litigation would have continued against her successor in office since the State of New York is the real party in interest in both actions. In contrast, Plaintiff here seeks relief against James *in her individual capacity* for unconstitutional behavior which violates the Constitution. James is not a party to either of the New York actions to which she points; application of issue preclusion and *Rooker-Feldman* abstention have no application here.

## II. Irreparable Harm, Equities, and Public Interest All Weigh in Plaintiff's Favor

For reasons argued in the Motion, the privacy interests implicated would result in irreparable harm if the injunctive relief is not granted. *See Plante v. Gonzalez*, 575 F.2d 1119, 1136 (5th Cir. 1978); *Friedman v. Heart Inst. of Port St. Lucie*, 863 So.2d 189, 194 (Fla. 2003). This is true whether the Trust Documents are obtained only by James or "widely disseminated." James argues that it is speculative that she would widely disseminate these documents if obtained. However, as alleged in the Amended Complaint and widely available in the public domain, James has held public press conferences announcing criminal referrals of Plaintiff and his family to the United States Attorney for the Southern District of New York and the Manhattan District Attorneys' office.[1] She has publicly disclosed detailed financial information about

---

[1] It should not be lost on the Court that certain partisans have been allowed to join

Plaintiff, his trust, his children, and his businesses. Finally, documents obtained by James would likely become public record in the State of New York and subject to public release by public officials. *See New York's Freedom of Public Information Law (FOIL)*, Article 6, Sections 84-90 of the Public Officers Law (requiring documents in the possession of an agency to be released upon request).[2]

This case presents the question whether 42 U.S.C. 1983 prohibits a state attorney general of one political party from abusing the vast power of State government in order to persecute a prominent member of an opposing political party for winning an election, serving in public office, and engaging in expressive activity with which the state attorney general vehemently disagrees.[3] The balance of equities and public interest clearly favor the narrowly crafted, harm-free restraint requested by Plaintiff to maintain the *status quo* during this litigation.

The preliminary injunction should be granted as requested.

---

the Manhattan DA's office, without compensation, for the sole purpose of prosecuting Plaintiff on allegations referred there by the AG. At least two left when the district attorney refused to proceed but more have arrived. The fact that James and others have attempted to have Plaintiff prosecuted in highly Democratic forums is itself constitutionally suspect.

[2] NY's FOIL exempts from disclosure information that would be an unwarranted invasion of personal privacy but the only applicable exemption is for "information of a personal nature when disclosure would result in economic or personal hardship to the subject party and such information is not relevant to the work of the agency requesting or maintaining it," NYS Public Officers Law, Article 6, Section 89(2)(b)(iv), an issue which the AG would have to litigate in New York, calling into question why it would ever obtain the document in the first instance.

[3] It is no different than a *Bivens* claim against FBI and IRS officials who targeted the founder of the Tea Party. *See Zherka v. Ryan*, 52 F. Supp. 3d 571 (S.D. N.Y. 2014).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Court's CM/ECF system this 14th day of December, 2022, which will electronically serve all registered electronic filing users. See Local Rule 5.1(e).

**WEBER, CRABB & WEIN, P.A.**

*/s/ Timothy W. Weber*
Timothy W. Weber, Esq.
FBN: 86789
timothy.weber@webercrabb.com
lisa.willis@webercrabb.com
Jeremy D. Bailie, Esq.
FBN: 118558
jeremy.bailie@webercrabb.com
carol.sweeney@webercrabb.com
R. Quincy Bird, Esq.
FBN: 105746
Quincy.Bird@webercrabb.com
honey.rechtin@webercrabb.com
5453 Central Avenue
St. Petersburg, Florida 33710
(t): 727-828-9919
(f): 727-828-9924
*Attorneys for President Donald J. Trump*