**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO.: 9:22-cv-81780-MIDDLEBROOKS/MATHEWMAN**

DONALD J. TRUMP,

      Plaintiff,

v.

LETITIA JAMES,

      Defendant.

_____/

**DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT AND**
**INCORPORATED MEMORANDUM OF LAW**

| | |
|---|---|
| BILZIN SUMBERG BAENA PRICE & AXELROD LLP | LETITIA JAMES |
| *Attorneys for Defendant* | *Attorney General* |
| 1450 Brickell Ave., Suite 2300 | *State of New York* |
| Miami, Florida 33131 | 28 Liberty Street |
| | New York, NY 10005 |
| Melissa Pallett-Vasquez | |
|  Florida Bar No. 715816 | Andrew S. Amer |
| Jeffrey Snyder |  admitted *pro hac vice* |
|  Florida Bar No. 21281 | Colleen K. Faherty |
| Robert Turken |  admitted *pro hac vice* |
|  Florida Bar No. 306355 | |

Defendant Letitia James, the Attorney General of New York ("AG James"), pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) and Local Rule 7.1, moves to the dismiss with prejudice the Amended Complaint ("AC") filed by Plaintiff Donald J. Trump.[1]

## PRELIMINARY STATEMENT

Mr. Trump commenced this action to interfere with the New York State Supreme Court's exercise of jurisdiction in two ongoing proceedings where he stands accused of fraud and illegality in the conduct of his New York-based businesses in violation of New York law. This action is Mr. Trump's second improper attempt to collaterally attack and end-run around rulings that have been issued by the presiding judge in the New York proceedings, Justice Arthur Engoron.

Mr. Trump's first attempt was an action he commenced in December 2021 in the United States District Court for the Northern District of New York shortly after he was subpoenaed by the New York State Office of the Attorney General ("OAG") to provide sworn testimony as part of OAG's fraud investigation. That federal lawsuit sought declaratory and injunctive relief to halt OAG's investigation based on many of the same constitutional arguments Mr. Trump raises in count one of the AC—and based on the same series of public comments by AG James that Mr. Trump claims evidence political animus. The federal court dismissed the action on two alternative grounds, holding that a final order issued by Justice Engoron barred Mr. Trump's claims under the doctrine of *res judicata* and that *Younger* abstention required deference to the New York proceedings. *Trump v. James*, No. 21-cv-1352, 2022 WL 1718951 (N.D.N.Y. May 27, 2022).

This second attempt to evade the New York proceedings and Justice Engoron's authority should meet the same fate for many, independent reasons.

First, AG James has no contacts with Florida, much less the minimum contacts required to satisfy the Due Process Clause. As alleged in the AC, AG James resides and works in New York, and all of her conduct that serves as the predicate for Mr. Trump's three causes of action occurred in New York, aimed at a business headquartered and operating in New York.

Second, even if the Court did not lack personal jurisdiction over AG James, the Court

---

[1] Mr. Trump commenced this action on November 2, 2022, by filing a complaint for declaratory and injunctive relief in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida. Mr. Trump filed the AC on November 15, 2022, in the same court, and AG James removed the action to this Court on November 16, 2022 [D.E. 1].

should still dismiss this action for lack of subject matter jurisdiction in deference to the New York proceedings under doctrines established by the Supreme Court decisions in *Rooker-Feldman* and *Younger.* The *Rooker-Feldman* doctrine applies because Mr. Trump is a "state-court loser" seeking to collaterally attack in this Court final, appealable orders entered by Justice Engoron. And *Younger* applies because there is a pending civil enforcement proceeding in New York that satisfies the exceptional circumstances test under *Sprint* for abstention.

Third, Mr. Trump's claims are barred by issue and claim preclusion. The premise of Mr. Trump's suit is that OAG's investigation and pursuit of the New York proceedings is unlawful and violates his constitutional rights based on public statements made by AG James. But this contention is precluded by a final order issued by Justice Engoron upholding the investigation as legally and factually sound and not attributable to animus, which was unanimously affirmed on appeal by the New York Appellate Division. The federal judge in New York made the same findings. Similarly, Mr. Trump's causes of action are barred by *res judicata* because these claims were, or could have been, raised in the New York proceedings. Because Mr. Trump had a full and fair opportunity to litigate all of his claims in New York, he is precluded from doing so here.

Finally, interstate sovereign immunity bars Mr. Trump's action because New York is the real party in interest and he fails to articulate in the AC any actual prospective injunctive relief on his federal law claim that would fall within the *Ex parte Young* exception to sovereign immunity. And relatedly, his claim for money damages is barred by absolute prosecutorial immunity.

Simply put, this case should be dismissed, with prejudice.

## PROCEDURAL BACKGROUND

### A.  OAG's Investigation and the New York Subpoena Action

OAG opened an investigation into Mr. Trump and his New York-based business operations in March 2019 ( "Investigation"), after Michael Cohen, a former senior executive of the Trump Organization and Special Counsel to Mr. Trump, produced to Congress copies of Mr. Trump's financial statements for a number of years and testified that these financial statements inflated the values of Mr. Trump's assets to obtain favorable terms for loans and insurance coverage, while the Trump Organization also deflated the value of the same assets to reduce real estate taxes. *See The People of the State of New York v. The Trump Org.*, No. 451685/2020, 2022 WL 489625, at *2, 5 (Sup. Ct. N.Y. Cnty. Feb. 17, 2022), *aff'd*, 205 A.D.3d 625 (1st Dep't 2022), *appeal dismissed*, 38

N.Y.3d 1053 (2022).[2]

On August 24, 2020, OAG commenced a special proceeding in the New York Supreme Court, New York County, styled *People v. The Trump Org.*, Index No. 451685/2020 ("NY Subpoena Action"), to address subpoena enforcement issues arising during the course of the Investigation. *Id*. at *1-2. Justice Arthur Engoron was randomly assigned to preside over the case. *Id*. One enforcement issue presented to Justice Engoron involved a December 1, 2021 subpoena OAG served on Mr. Trump requiring him to produce responsive documents and provide deposition testimony. *Id*. Mr. Trump moved to quash the subpoena, arguing among other things that the Investigation was purportedly predicated on improper animus towards him and amounted to selective prosecution in violation of his constitutional rights. *Id*. at *4-5. As support for these assertions, he relied on many of the same public comments by AG James cited in the AC in this action. *Compare id*. at *4 *with* AC ¶¶ 25-73. OAG cross-moved to compel compliance with the subpoena, and in a decision and order dated February 17, 2022 (the "February 2022 Order"), Justice Engoron denied the motion to quash and granted OAG's cross-motion to compel. 2022 WL 489625, at *1.

In the February 2022 Order, the court rejected all of Mr. Trump's arguments, finding that OAG's Investigation had "uncover[ed] copious evidence of possible financial fraud" by the Trump Organization, giving OAG the "clear right" to question Mr. Trump under oath. *Id*. at *6. The court also found that "the impetus for the investigation was not personal animus" or alleged "campaign promises, but was sworn congressional testimony by former Trump associate Michael Cohen" that the Trump Organization was "'cooking the books.'" *Id*. at *5. Based on the court's own review of "thousands of documents responsive to OAG's prior subpoenas," the court confirmed that OAG had a "sufficient basis for continuing its investigation," which further undermined any claim that the "ongoing investigation is based on personal animus." *Id*. at *4. The court also noted in rejecting Mr. Trump's selective prosecution claim the lack of "any evidence that the law was not applied [by OAG] to others similarly situated." *Id*. at *5. On appeal, the New York Appellate Division,

---

[2] A court may take judicial notice of decisions in related cases for the "purpose of recognizing the judicial act that the order represents or the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (cleaned up).

First Department, unanimously affirmed. *People by James v. Trump Org., Inc*., 205 A.D.3d 625, 625 (1st Dep't 2022), *appeal dismissed*, 38 N.Y.3d 1053 (2022). The appellate court concluded that the "political campaign and other public statements" by AG James did not support a claim that OAG was improperly using civil subpoenas to undermine Mr. Trump's rights. *Id*. at 626. The appellate court also determined that OAG's Investigation was "lawfully initiated at its outset and well founded" and that Mr. Trump had not shown that any "similarly implicated" businesses or executives were treated differently. *Id*. at 627.

### B. Mr. Trump's Federal New York Action

In December 2021, Mr. Trump and the Trump Organization LLC filed a federal lawsuit pursuant to 42 U.S.C. § 1983 against AG James in her official capacity in the United States District Court for the Northern District of New York. *See Trump v. James*, No. 21-cv-1352, 2022 WL 1718951, at *1 (N.D.N.Y. May 27, 2022) ("NDNY Action"). The lawsuit was filed nearly three years after OAG commenced its Investigation and more than a year after OAG commenced the NY Subpoena Action, but just weeks after OAG served its subpoena on Mr. Trump. By then, OAG had obtained through subpoenas more than 900,000 documents, interviewed dozens of witnesses (including many senior officers of the Trump Organization), and litigated numerous subpoena-compliance issues before Justice Engoron in the NY Subpoena Action.

The NDNY Action sought declaratory and injunctive relief halting or limiting OAG's Investigation. *Id.* The complaint raised four nominally separate but overlapping claims, alleging that: (i) OAG launched the Investigation in bad faith, in violation of the Fourteenth Amendment's Due Process Clause: (ii) the Investigation was intended to retaliate against Mr. Trump for his political speech, in violation of the First Amendment; (iii) the document subpoenas to Mr. Trump and the Trump Organization were overbroad, unduly burdensome, and sought irrelevant material, in violation of the Fourth Amendment; and (iv) OAG's subpoenas constituted abuse of process. *Id*. at *4. In support of each of these claims, Mr. Trump and the Trump Organization relied on many of the same public comments by AG James cited in Mr. Trump's motion to quash filed in the NY Subpoena Action and referenced in the AC in this action. *Compare id*. at *1-4 *with* February 2022 Order, 2022 WL 489625, at *1 *with* AC ¶¶ 25-73.

Shortly after commencing the NDNY Action, Mr. Trump and the Trump Organization filed a motion for a preliminary injunction to enjoin OAG's Investigation or disqualify AG James from involvement in the Investigation. 2022 WL 1718951, at *1. OAG opposed the motion and cross-

moved to dismiss the complaint under Rule 12(b)(1) based on abstention and under Rule 12(b)(6) based on preclusion and failure to allege a plausible claim for relief. *See id*. at \*8. By decision and order dated May 27, 2022 ("May 2022 Order"), the court granted the motion to dismiss and denied the motion for a preliminary injunction as moot. *Id*. at \*20. In dismissing the complaint, the district court held that *res judicata* barred the action based on the preclusive effect of Justice Engoron's February 2022 Order. *Id*. at \*19. The court observed that Mr. Trump and the Trump Organization already had raised or "could have raised the claims and requested the relief they seek in the federal action" in the NY Subpoena Action, which it held arose from the same series of transactions—OAG's Investigation into the Trump Organization—and involved the same or related facts. *Id*. at \*19. The court also concluded that dismissal was warranted under *Younger* abstention, finding that the NY Subpoena Action was a pending civil proceeding involving certain orders uniquely in furtherance of the state court's ability to perform its judicial functions – namely, a prior ruling by Justice Engoron holding Mr. Trump in civil contempt. *Id*. at \*10-14. The court explained that enjoining OAG's Investigation "would have the practical effect of interfering with the contempt ruling in the New York proceeding" and would risk negating that order. *Id*. at \*11. Mr. Trump and the Trump Organization appealed the May 2022 Order, which is currently *sub judice*.

### C. OAG's New York Enforcement Action

Based on the findings of the Investigation, on September 21, 2022, OAG commenced an enforcement action pursuant to New York Executive Law § 63(12) ("NY Enforcement Action"). In the NY Enforcement Action, OAG alleges that Mr. Trump, other individuals affiliated with his New York-based business, and various Trump Organization entities engaged in repeated and persistent fraud and illegality by inflating asset values on Mr. Trump's annual statements of financial condition ("Statements") covering at least the years 2011 through 2021 and presenting those Statements to lenders and insurers licensed in New York to obtain favorable loan and insurance terms they would otherwise not have been entitled to receive. *See People by James v. Donald J. Trump,* No. 452562/2022 (Sup. Ct. N.Y. Cnty. Nov. 3, 2022), slip op. at 1-2, available at https://ag.ny.gov/sites/default/files/ecf_-_decision_on_pi.pdf (last visited on Dec. 16, 2022).[3]

---

[3] A district court may take judicial notice of public records that are "not subject to reasonable dispute" because they are "'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'" *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (quoting Fed. R. Evid. 201(b)). This includes "information readily available on the websites

On October 13, 2022, based on certain actions taken by Mr. Trump and the Trump Organization—including the formation of a new corporate entity in Delaware named "The Trump Organization LLC" and the registration of that entity as a foreign corporation in New York the same day that OAG filed the NY Enforcement Action—OAG filed a motion for a preliminary injunction to maintain the status quo and obtain a court-appointed independent monitor to oversee the Trump Organization's future transfer of assets and financial disclosures, including any continued use of the Statements to meet loan covenants and to obtain new loans and insurance coverage. *Id*. at 1-2.

By Decision and Order dated November 3, 2022 ( "PI Order"), Justice Engoron granted OAG's motion, finding that the evidence presented by OAG was "more than sufficient to demonstrate OAG's likelihood of success on the merits" and "the balancing of the equities tips, strongly, if not completely, in favor of granting a preliminary injunction, particularly to ensure that defendants do not dissipate their assets or transfer them out of this jurisdiction." *Id*. at 9. Additionally, the court ordered the appointment of an independent monitor, finding it "the most prudent and narrowly tailored mechanism to ensure there is no further fraud or illegality . . . pending the final disposition" of the action. *Id*. at 10. And the court ordered Mr. Trump and the other defendants to produce to the monitor, among other things, a "full and accurate description of the structure and liquid and illiquid holdings and assets of the Trump Organization, its subsidiaries, and all other affiliates." *Id*. On November 14, 2022, Justice Engoron appointed the Honorable Barbara Jones, a retired federal judge and the consensus candidate of all parties, to serve as the monitor, and on November 17, 2022, he ordered that defendants provide the corporate structure documents to the monitor by no later than November 30, 2022. *See* Supplemental Decision + Order on Motion (NYSCEF No. 193) and Supplemental Monitorship Order (NYSCEF No. 194) ("Supp. Monitor Order"), copies of which are attached at Exhibit 1. Mr. Trump and the other defendants have appealed the PI Order to the New York Appellate Division, First Department.

More recently, on November 21, 2022, Mr. Trump filed a motion to dismiss the NY Enforcement Action, raising the same equal protection/selective enforcement argument he raised in the NY Subpoena Action and NDNY Action based on the same public comments by AG James

---

of government agencies" because "such information [is] not subject to reasonable dispute and [i]s capable of accurate and ready determination." *Ryzhov v. Mayorkas*, No. 21-CV-23596, 2022 WL 10869910, at *2 (S.D. Fla. Oct. 3, 2022).

cited in those actions and again in the AC. *See* Affirmation of Alina Habba, Esq. (NYSCEF No. 196) at ¶¶ 3-29 and Memorandum of Law in Support of Motion to Dismiss (NYSCEF No. 197) at pp. 13-21, copies of which are attached as Exhibits 2 and 3, respectively.[4]

### D. Mr. Trump's Florida Action

In the AC, Mr. Trump asserts three causes of action. In "Count I" he alleges that AG James's conduct "in commencing and continuing" the NY Subpoena Action and NY Enforcement Action (collectively, "NY Proceedings"), seeking discovery of documents relating to the "Donald J. Trump Revocable Trust" dated April 7, 2014 ("Revocable Trust") (which he alleges is "reasonable to conclude" AG James would "widely publish"), and making referrals to other law enforcement agencies based on her findings from the Investigation violate his rights under the First and Fourteenth Amendments of the U.S. Constitution, including freedom of speech and association, privacy, due process, equal protection, and privileges and immunities. AC ¶¶ 112-14. On this count he seeks compensatory and punitive damages along with unspecified "declaratory and injunctive relief." *Id.* at p. 31 (Wherefore clause). In "Count II" and "Count III" Mr. Trump alleges that AG James's discovery of his Revocable Trust documents and public disclosure of those documents (presumed based on AG James's "past conduct") would violate his rights to privacy and property (Count II) and his rights as grantor and beneficiary of the Revocable Trust (Count III) protected by Florida law. AC ¶¶ 136-37, 139, 147. On these counts he seeks an injunction restraining AG James and "all other persons in active concert or participation with her . . . from requesting, demanding, obtaining, possessing, or disclosing a copy of his" Revocable Trust documents or restraining his "ability to amend, modify or revoke the Trust" and a declaration that AG James "has no authority to supplant or control the powers of the trustee" of his trust. AC at pp. 35-36 (Wherefore clauses).

**STANDARD OF REVIEW**

Rule 12(b)(1) attacks on subject matter jurisdiction may be facial or factual., 572 F.3d at 1279. Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint,

---

[4] Where, as here, the defendant makes a factual challenge to subject matter jurisdiction under Rule 12(b)(1), *see, infra*, Point II, the Court may "consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).

7

and the district court takes the allegations as true in deciding whether to grant the motion. *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n. 5 (11th Cir. 2003) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990)). Factual attacks, in contrast, allow courts "to consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael*, 572 F.3d at 1279. Here, AG James presents a factual challenge to the Court's jurisdiction based on abstention in reliance on the parties' litigation in New York (*see, infra*, Point II) and a facial challenge to the Court's jurisdiction based on sovereign and prosecutorial immunity (*see, infra*, Points IV and V). In either circumstance, the burden for establishing federal subject matter jurisdiction rests with the party bringing the claim. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005); *Vasquez Monroy v. Dep't of Homeland Sec.*, 396 F. Supp. 3d 1206, 1208 (S.D. Fla. 2019).

When a defendant files a properly supported motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff is required to oppose the motion with competent evidence in order to defeat the motion. S*ee, e.g., Hartoy Inc. v. Thompson*, No. 02-cv-80454, 2003 WL 21468079, at *1 (S.D. Fla. Jan. 29, 2003).

To survive a motion to dismiss under Rule 12(b)(6), the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (cleaned up); *see also Piescik v. CVS Pharmacy, Inc.*, 576 F. Supp. 3d 1125, 1131 (S.D. Fla. 2021). A court must construe the complaint in the light most favorable to the plaintiff and assume the truth of the plaintiff's factual allegations. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise [the plaintiff's] right to relief above the speculative level." *Id*.; *see generally Piescik*, 576 F. Supp. 3d at 1131. While "[a] court's review on a motion to dismiss is [generally] 'limited to the four corners of the complaint,'" the court may also consider "any documents referred to in the complaint which

are central to the claims." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citation omitted). "[W]hen exhibits attached to a complaint 'contradict the general and conclusory allegations of the pleading, the exhibits govern.'" *Gill as Next Friend of K.G.R. v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019) (internal citation omitted); *see also Piescik*, 576 F. Supp. 3d at 1131–32.

When a court is faced with a motion to dismiss raising jurisdictional issues and for failure to state a claim under Rule 12(b)(6), the court should "consider the jurisdictional issue first" because disposition of a Rule 12(b)(6) motion is an exercise of jurisdiction. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999); *see also Dutrow v. New York State Gaming Commission*, No. 13-cv-996, 2014 WL 11370355, at *3 (E.D.N.Y. July 29, 2014), *aff'd*, 607 Fed. App'x 56 (2d Cir. 2015).

## ARGUMENT

### I.  THE COURT LACKS PERSONAL JURISDICTION OVER THE NEW YORK ATTORNEY GENERAL

A federal court has personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Accordingly, personal jurisdiction in this District may be established under Florida law. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Mr. Trump alleges two bases for the exercise of personal jurisdiction over AG James under Florida law: (i) Florida Statute § 736.0202 ("Trust Code"), *see* AC ¶ 18; and (ii) Florida Statute § 48.193(1)(a)(2) ("Long-Arm Statute"), *see* AC ¶ 19. Neither statute provides a basis for the Court's exercise of personal jurisdiction over AG James.

### A.  AG James Is Not Exercising Powers Delegated To The Trustee Of The Revocable Trust

Mr. Trump relies on a provision of the Trust Code stating that a person "submits to the jurisdiction of the courts of" Florida by "[a]ccept[ing] or exercis[ing] a delegation of powers or duties from the trustee of a trust having its principal place of administration in" Florida. § 736.0202(a)(4), Fla. Stat.; AC ¶ 18. Because the delegating trustee may be absolved of liability, this long-arm provision aims to assure that a trust beneficiary will have some means of redress in Florida for the agent's breaches. *See id.* § 736.0807(2)-(3), Fla. Stat.. Mr. Trump's reliance on this provision is unavailing as he fails to allege that AG James has accepted or exercised a delegation of powers or duties delegated to the trustee of the Revocable Trust. Instead, Mr. Trump alleges that AG James seeks certain relief in the NY Proceedings that he contends would amount to "oversight

9

and control" of the Revocable Trust "threatening to substantially interfere with the ability of the trustee . . . to carry out its provisions and discharge his duties in accordance with Florida law." AC ¶ 88. But this conclusory allegation is entitled to no weight, *Iqbal*, 556 U.S. at 678, and in any event taking official action that may incidentally implicate a trust does not amount to accepting or exercising a delegation of powers or duties from the trustee under Section 736.0202(a)(4), Florida Statutes. *See MC Tr. v. De Mishaan*, 273 So. 3d 1065 (Mem) (Fla. 3d DCA 2019) (affirming dismissal for lack of personal jurisdiction under Trust Code in suit against *non-resident trustee* because plaintiff "failed to meet his burden of establishing that [defendant] had the requisite minimum contacts with the State of Florida or that the alleged actionable tort was committed in Florida").

### B.  Mr. Trump Fails To Allege Facts Sufficient To Exercise Long-Arm Jurisdiction

Mr. Trump relies on the specific jurisdiction provision of the Long-Arm Statute subjecting a nonresident defendant to personal jurisdiction in Florida "for any cause of action arising from . . . [c]ommitting a tortious act within [Florida]." § 48.193(1)(a)(2), Fla. Stat.; AC ¶¶ 19-20.[5] A nonresident defendant commits "a tortious act within [Florida]" when she commits an act outside the state that causes injury within Florida. *See Louis Vuitton*, 736 F.3d at 1353; *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215-17 (11th Cir. 1999) (collecting cases). "A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton*, 736 F.3d at 1350 (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).

The AC fails to allege facts sufficient to establish any tortious acts by AG James outside Florida causing injury to Mr. Trump within Florida. Mr. Trump's claims appear to be based entirely on actions taken by AG James in New York in connection with the Investigation and NY Proceedings, but Mr. Trump's being civilly investigated and sued for fraud is not tortious conduct by OAG, nor is OAG's obtaining trust-related information pursuant to that lawsuit actionable

---

[5] Mr. Trump understandably does not allege that AG James is subject to general jurisdiction in Florida under the Long-Arm Statute – which requires "substantial and not isolated activity within" Florida, "whether or not the claim arises from that activity," §48.193(2). *See Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1352 (11th Cir. 2013) (discussing general and specific personal jurisdiction under the Long-Arm Statute); *Noble House, LLC v. Underwriters at Lloyd's, London*, No. 20-62080-CIV, 2021 WL 896219, at *5 (S.D. Fla. Mar. 3, 2021) (same).

"injury" to Mr. Trump. *See generally Rehberg v. Paulk*, 611 F.3d 828, 850-51 (11th Cir. 2010), *aff'd*, 566 U.S. 356 (2012) (holding there is no clearly established right to be free from an investigation, even if retaliatory); *cf. Trump v. U.S.*, No. 22-13005, 2022 WL 17352069, at *7 (11th Cir. Dec. 1, 2022) (holding there is no irreparable harm from prosecutors reading unprivileged sensitive documents lawfully obtained). Thus, Mr. Trump fails "to make out a prima facie case of jurisdiction" under the Long-Arm Statute. *United Techs. Corp.*, 556 F.3d at 1274.

### C.   In Any Event, Plaintiff Fails To Allege Minimum Contacts Sufficient To Satisfy Due Process

But even if the exercise of personal jurisdiction over AG James would be permitted under Florida law (which is not the case), there are insufficient minimum contacts between AG James and Florida to satisfy the Due Process Clause of the Fourteenth Amendment. *See Sculptchair, Inc. v. Century Arts, Ltd*., 94 F.3d 623, 626 (11th Cir. 1996); *Silver v. Glinkenhouse*, No. 06-cv-81025, 2007 WL 9701847, at *2 (S.D. Fla. Jan. 31, 2007). A court's jurisdiction over a defendant satisfies due process when there are "minimum contacts," *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), between the defendant and the forum "such that [s]he should reasonably anticipate being haled into court there," *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Such minimum contacts must show that "the defendant purposefully avail[ed] [her]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Here, Mr. Trump alleges no contact by AG James with Florida, and the NY Proceedings focus on fraud and illegality in Mr. Trump's financial statements presented in New York to lenders and insurers licensed in New York. All of the actions by AG James alleged in the AC as the bases for Mr. Trump's three causes of action relate to conduct undertaken by AG James and OAG in the NY Proceedings in New York – pursuing the Investigation (AC ¶¶ 64, 72), seeking to enforce subpoenas in the NY Subpoena Action (*id*. ¶¶ 74-75), commencing the NY Enforcement Action (*id*. ¶ 86), and seeking discovery of the Revocable Trust documents in the NY Proceedings (*id*. ¶¶ 87-88, 97). Nor does it matter under a minimum contacts analysis that Mr. Trump unilaterally decided to change his residency to Florida and amend the situs of his Revocable Trust from New York to Florida after the Investigation was well underway (*id*. ¶¶ 3, 12). Simply put, nothing about AG James's pursuit of an investigation and enforcement action in her role as New York's Attorney General, authorized by New York law, and occurring entirely within New York and focusing on fraud and illegality committed in New York as part of business

11

transactions with lenders and insurers in New York, creates any contact between her and Florida "such that [she] should reasonably anticipate being haled into court" in this District, *World–Wide Volkswagen*, 444 U.S. at 297, or supports a finding that she "purposefully avail[ed] [herself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson*, 357 U.S. at 253.

Finally, considerations of federalism and state sovereignty — implicated here because AG James is, despite Mr. Trump's characterization otherwise, being sued in her official capacity, *see, infra*, at 18-19 — underscore that the exercise of personal jurisdiction over AG James would be unreasonable under the Due Process Clause. "Federalism and state sovereignty are an essential part of the constraints that due process imposes upon personal jurisdiction," and they severely limit a federal district court from exercising personal jurisdiction "over a nonresident state official." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 488 (5th Cir. 2008). Each State's sovereignty "implie[s] a limitation on the sovereignty of all of its sister States—a limitation express or implicit in both the original scheme of the Constitution and the Fourteenth Amendment." *World–Wide Volkswagen,* 444 U.S. at 293. "The effect of holding that a federal district court in [Florida] had personal jurisdiction over a nonresident state official would create an avenue for challenging the validity of one state's laws in courts located in another state. This practice would greatly diminish the independence of the states." *Stroman*, 513 F.3d at 488; *see also PTI, Inc. v. Philip Morris Inc.*, 100 F. Supp. 2d 1179, 1189 n.8 (C.D. Cal. 2000) (requiring one state to submit to the long-arm jurisdiction of another state "constitutes an extreme impingement on state sovereignty").

## II. THE COURT SHOULD REFRAIN FROM EXERCISING SUBJECT MATTER JURISDICTION UNDER *ROOKER-FELDMAN* AND *YOUNGER*

The Court should dismiss this action in deference to the NY Enforcement Action under well-established doctrines circumscribing a federal court's jurisdiction to interfere in ongoing state court proceedings.

### A. This Action Is Barred Under The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 281 (2005); *Siegel*, 234 F.3d at 1172. The doctrine extends to claims that are "inextricably intertwined" with a state court judgment. *Dale v.*

*Moore*, 121 F.3d 624, 626 (11th Cir.1997). A federal claim is inextricably intertwined with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring).

Here, Mr. Trump is a state-court loser subject to the *Rooker-Feldman* doctrine because this action, by expressly seeking compensatory and punitive damages for AG James's "conduct in commencing and continuing" the NY Proceedings, AC ¶ 113, and otherwise seeking to enjoin OAG from pursuing discovery of trust-related documents in the NY Proceedings, invites the Court to reject multiple orders issued by Justice Engoron: (i) the February 2022 Order upholding the bona fides of OAG's Investigation, rejecting Mr. Trump's selective prosecution claim, and compelling Mr. Trump to comply with OAG's subpoena; (ii) the PI Order granting preliminary injunctive relief to maintain the status quo and require Mr. Trump to produce to the monitor documentation providing a "full and accurate description of the structure and liquid and illiquid holdings and assets of the Trump Organization, its subsidiaries, and all other affiliates," PI Order at 10; and (iii) the orders appointing the monitor and detailing the monitor's duties, Supp. Monitor Order (Exhibit 1). Effectively, Mr. Trump is asking this Court to override Justice Engoron's rulings that Mr. Trump contends will injure him by making him defend against a civil enforcement proceeding and potentially disclose business-oriented information that he would rather shield from view. The exclusive means to challenge these prior state determinations would be to pursue appeals within the New York state court system (which Mr. Trump is doing)—not to seek relief from a federal district court sitting over a thousand miles away. At minimum, Mr. Trump's claims here are "inextricably intertwined" with the prior state court determinations. *Dale*, 121 F.3d at 626.

### B. *Younger* Abstention Applies

The *Younger* abstention doctrine "'requires a federal court to abstain where a plaintiff's federal claims could be adjudicated in a pending state judicial proceeding.'"[6] *Tokyo Gwinnett, LLC v. Gwinnett Cnty., Georgia*, 940 F.3d 1254, 1267 (11th Cir. 2019) (quoting *Deakins v. Monaghan,*

---

[6] Although *Younger* abstention applies only to claims for declaratory and injunctive relief, *Old Republic Union Ins. Co. v. Tillis Trucking Co.*, 124 F.3d 1258, 1261 (11th Cir. 1997)), Mr. Trump's claims for money damages in count one do not preclude applying *Younger* abstention here because those claims are clearly barred by New York's sovereign immunity and AG James's absolute prosecutorial immunity. *See, infra*, at Points IV and V.

484 U.S. 193, 202 (1988)). *Younger* abstention applies only in three "exceptional circumstances": (1) "ongoing state criminal prosecutions," (2) "certain civil enforcement proceedings" akin to criminal proceedings, and (3) "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (cleaned up). When one of those circumstances exists, a court must consider the factors set out in *Middlesex County Ethics Committee v. Garden State Bar Ass'n ("Middlesex")*, 457 U.S. 423 (1982), to determine whether abstention is warranted. The three Middlesex factors are whether: (1) there is an "ongoing" state-court proceeding at the time of the federal action; (2) the state proceeding implicates an important state interest; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims. *Id*. at 432; *see also For Your Eyes Alone, Inc. v. City of Columbus,* 281 F.3d 1209, 1217 (11th Cir. 2002).

This case fits the second *Sprint* category because the ongoing NY Enforcement Action is a state civil enforcement proceeding, begun after an investigation on the filing of formal charges, to sanction the federal plaintiff for a "wrongful act." *Sprint*, 571 U.S. at 79; *see also Watson v. Fla. Jud. Qualifications Comm'n*, 618 F. App'x 487, 490 (11th Cir. 2015). In particular, the NY Enforcement Action seeks disgorgement, other penalties, and injunctive relief against Mr. Trump for his alleged fraudulent and illegal conduct in violation of New York Executive Law § 63(12). PI Order at 1-2. Here, Mr. Trump's express attack on the NY Enforcement Action (AC ¶ 113) triggers *Younger* abstention. *See Ohio Civil Rights Comm'n v. Dayton Christian Pub. Schools, Inc.*, 477 U.S. 619 (1986) (abstaining where case involved state-initiated administrative proceedings to enforce state civil rights laws); *Trainor v. Hernandez*, 431 U.S. 434, 444 (1977) (abstaining where underlying civil proceeding was "brought by the State in its sovereign capacity" to recover payments defendants had allegedly obtained by fraud); *Huffman v. Pursue, Ltd*., 420 U.S. 592, 598 (1975) (abstaining where state proceeding was initiated to enforce civil obscenity laws).

Moreover, all three *Middlesex* factors weigh in favor of abstention. As to the first factor, the NY Enforcement Action was ongoing at the time this case was commenced. AC ¶ 86. As to the second factor, the NY Enforcement Action implicates New York's important interest in enforcing a law aimed at protecting the public from fraud and illegality in the conduct of business within its borders. *See Fairfield Cmty. Clean Up Crew Inc v. Hale*, 735 F. App'x 602, 606 (11th

14

Cir. 2018) (holding civil-enforcement proceeding implicates important state interests for purposes of the second *Middlesex* factor because it is "necessary for the vindication" of Alabama's policies on illegal gambling); *Bullard v. Gonzalez*, No. 15-cv-60038, 2015 WL 13831711, at *5 (S.D. Fla. Aug. 31, 2015) ("[T]his § 1983 action will implicate important state interests, namely, the state's ability to prosecute violations of its laws."). Finally, as to the third *Middlesex* factor, the NY Enforcement Action affords Mr. Trump an adequate opportunity for judicial review of his federal constitutional claims because the "New York Supreme Court has jurisdiction to entertain federal constitutional claims." May 2022 Order, 2022 WL 1718951, at *11. Indeed, Mr. Trump has already raised an equal protection claim in his recently filed motion to dismiss the NY Enforcement Action. *See, supra*, at 6-7.[7]

### III.    THIS ACTION IS BARRED BY ISSUE AND CLAIM PRECLUSION

Pursuant to 28 U.S.C. § 1738, the federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 81 (1984); *see also Amey, Inc. v. Gulf Abstract & Title, Inc*., 758 F.2d 1486, 1509 (11th Cir.1985) (cleaned up) (cited in *Kizzire v. Baptist Health Sys., Inc*., 441 F.3d 1306, 1308 (11th Cir. 2006)). Here, the doctrines of issue and claim preclusion under New York law bar this action based on the prior orders in the NY Proceedings.

Under issue preclusion, or collateral estoppel, "issues actually decided in valid state-court judgments may well deprive plaintiffs of the 'right' to have their federal claims relitigated in federal court*." San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 342 (2005). That is so because adverse findings "are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered." *Migra*, 465 U.S. at 83. New York will bar relitigation of an issue that "is identical to an issue which

---

[7] Mr. Trump's failure to raise all of his constitutional claims asserted here in the NY Enforcement Action is not determinative. *See Juidice v. Vail*, 430 U.S. 327, 337 (1977) ("Appellees need be accorded only an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings, and their failure to avail themselves of such opportunities does not mean that the state procedures were inadequate.") (cleaned up).

was raised, necessarily decided and material in the first action," if "the plaintiff had a full and fair opportunity to litigate the issue." *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 350 (1999).

Collateral estoppel applies here because all of Mr. Trump's claims depend on two key issues—each of which was fully litigated and necessarily decided not just once, but twice – in the NY Subpoena Action and again in the NDNY Action. First, Mr. Trump's claims are based on the contention that OAG's Investigation has an improper purpose of "intimidating and harassing" Mr. Trump and the Trump Organization based on "personal and political animus." AC ¶¶ 2, 72. Second, and relatedly, his claims are premised on the theory that OAG's Investigation and pursuit of the NY Subpoena Action are an "unlawful abuse of [AG James's] authority and deployment of state power" to discriminate against him in violation of his constitutional rights. *Id.* ¶116. Mr. Trump raised and litigated these same issues in the NY Subpoena Action on his motion to quash, arguing among other things that the Investigation was purportedly predicated on improper animus towards him and amounted to selective prosecution in violation of his constitutional rights. February 2022 Order, 2022 WL 489625, at *4-5. These arguments in the NY Subpoena Action rested almost entirely on the same public comments by AG James cited in the AC in this action. *Compare id.* at *4 *with* AC ¶¶ 25-73. Justice Engoron rejected these arguments, finding that "the impetus for the investigation was not personal animus" and confirming that OAG had a "sufficient basis for continuing its investigation." February 2022 Order, 2022 WL 489625, at *4-5. On appeal from the February 2022 Order, the appellate court similarly concluded that the "political campaign and other public statements" by AG James did not support a claim that OAG was improperly using civil subpoenas to undermine Mr. Trump's rights and that OAG's Investigation was "lawfully initiated at its outset and well founded." *Trump*, 205 A.D.3d at 626.

Mr. Trump attempted to relitigate these same issues for a second time in the NDNY Action, arguing in opposition to AG James's motion to dismiss the NDNY Action that the "bad faith" exception to *Younger* abstention applied because OAG's Investigation lacked a legitimate basis when commenced and "was brought for a retaliatory, harassing, or other improper purpose." May 2022 Order, 2022 WL 1718951, at *12. In rejecting Mr. Trump's argument, the court found that the statements by AG James – which are largely the same statements by AG James referenced in the AC (*compare id.* at *1-4 *with* AC ¶¶ 25-73) – did not establish that OAG targeted Mr. Trump "for the purpose of retaliation" and that OAG's inquiry had a "legitimate factual predicate,"

namely, the congressional testimony of Michael Cohen. May 2022 Order, 2022 WL 1718951, at *13. As noted by the court, while AG James's "public statements make clear that she disagrees vehemently with Mr. Trump's political views," Mr. Trump did "not identify what protected speech or conduct [AG James] allegedly retaliated against [him] for or demonstrate any causal connection between any such protected activity and the decision to commence" the NY Subpoena Action. *Id*. Finally, the court found that Mr. Trump "submitted no evidence" that that proceeding had "been conducted in such a way as to constitute harassment." *Id*.

Mr. Trump cannot plausibly contend that he lacked a fair opportunity to litigate these issues, having chosen to raise the same arguments and rely on the same evidence in both the NY Subpoena Action and the NDNY Action that he now seeks to raise and rely on here. A party cannot base an action on "virtually a verbatim repetition" of allegations from prior proceedings that resulted in adverse rulings on "dispositive factual and legal issues." *Parker*, 93 N.Y.2d at 350; *see also Allen v. McCurry*, 449 U.S. 90, 104 (1980).

Claim preclusion, or *res judicata*, also applies to bar this action. Under New York law, the doctrine of *res judicata* applies where: (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action. *See Allen*, 449 U.S. at 94; *Chase Manhattan Bank, N.A. v. Celotex Corp*., 56 F.3d 343, 345–46 (2d Cir. 1995). Under New York's transactional approach to *res judicata*, "'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy'" from the prior action. *Simmons v. Trans Express Inc*., 37 N.Y.3d 107, 111 (2021) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981)).

As already held by Judge Sannes when dismissing Mr. Trump's NDNY Action, all three elements are satisfied here based on Justice Engoron's February 2022 Order. *Trump v. James*, 2022 WL 1718951, at *16-19. First, the February 22 Order, which denied Mr. Trump's motion to quash OAG's subpoena and granted OAG's cross-motion to compel compliance, is a final judgment on the merits which brought the parties' claims regarding compliance with the subpoena to a final conclusion. *Id*. at *17. Second, there is an identity of parties because the February 2022 Order decided Mr. Trump's motion. *Id*. Third, Mr. Trump had a full and fair opportunity to litigate in the NY Subpoena Action the propriety of OAG's Investigation and OAG's document demands.

*Id.* at *18-19. Just as the court in the NDNY Action applied the doctrine of *res judicata* to preclude Mr. Trump from interfering in the NY Proceedings, so too should this Court.

## IV.    INTERSTATE SOVEREIGN IMMUNITY BARS THIS ACTION

A state's "sovereign immunity is a historically rooted principle embedded in the text and structure of the Constitution" that bars private suits against a state in the courts of other states. *See Franchise Tax Board of Ca. v. Hyatt*, 139 S. Ct. 1485, 1492, 1499 (2019). "[P]reserved in the constitutional design," *id.* at 1496, this interstate sovereign immunity derives from the centuries-old view that no sovereign may "be sued without its consent," which was "universal in the States when the Constitution was drafted and ratified." *Alden v. Maine*, 527 U.S. 706, 715-16 (1999). As the Supreme Court announced in *Hyatt*, "States retain their [interstate] sovereign immunity from private suits brought in the courts of other States." 139 S. Ct. at 1492. While a State waives its Eleventh Amendment immunity from suit upon removing a case to federal court, *Lapides v. Board of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002), removal does *not* "waive[] any defense it would have enjoyed in state court," including interstate sovereign immunity independent of the Eleventh Amendment, *Stroud v. McIntosh*, 722 F.3d 1294, 1302 (11th Cir. 2013) (quoted in *Page v. Hicks*, 773 F. App'x 514, 518 (11th Cir. 2019)). Accordingly, notwithstanding the removal of this case to federal court, New York retains its interstate sovereign immunity, which serves as a bar to a court's exercise of subject matter jurisdiction over all types of official capacity claims against a state official, regardless of whether the claims seek damages or injunctive or declaratory relief. *See Hyatt*, 139 S. Ct. at 1498 ("[A] State's assertion of compulsory judicial process over another State involves a direct conflict between sovereigns. The Constitution implicitly strips States of any power they once had to refuse each other sovereign immunity, just as it denies them the power to resolve border disputes by political means.").

Mr. Trump cannot overcome New York's interstate sovereign immunity from suit by characterizing the action in the caption of the AC as being against AG James "individually," AC at p.1, because the "complaint itself, not the caption, controls the identification of the parties and the capacity in which they are sued," *Welch v. Laney*, 57 F.3d 1004, 1010 (11th Cir. 1995). "[C]ourts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit." *Lewis v. Clarke*, 137 S. Ct. 1285, 1290 (2017); *see also Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990). In making this assessment, courts must "analyze the complaint to determine whether the requested relief operates against *the office*

*the individual holds*—or rather, against the individual [her]self." *Attwood v. Clemons*, 818 F. App'x 863, 872 (11th Cir. 2020) (emphasis added).

Here, the relief sought is against OAG, not AG James herself. In count one of the AC, Mr. Trump alleges AG James's "conduct in commencing and continuing the [NY Proceedings], making numerous referrals to other agencies" based on OAG's findings, and using "her authority and deployment of state power" have purportedly violated his constitutional rights. AC ¶¶ 113, 116. Based on this alleged conduct, Mr. Trump seeks compensatory damages "potentially as high as $250,000,000 in confiscation from the [NY Enforcement Action]," legal fees and costs in defending against the NY Proceedings, and other damages to be proven at trial. *Id*. ¶ 120. In counts two and three, Mr. Trump's allegations of purported state law violations focus on OAG's conduct in the NY Proceedings, and more specifically OAG's efforts to obtain in discovery documents related to his Revocable Trust and to have Justice Engoron appoint an independent monitor in the NY Enforcement Action. *Id*. ¶¶ 136, 147. Based on this alleged conduct, Mr. Trump seeks to restrain AG James and OAG attorneys from seeking or obtaining through discovery in the NY Proceedings the Revocable Trust documents or seeking any relief in the NY Proceedings that would purportedly interfere with his rights or the rights of the trustee with respect to the Revocable Trust. *Id*. at p. 35-37 ("Wherefore" clauses). All of this relief is against the office that AG James holds, not against her individually, *Attwood*, 818 F. App'x at 872, and therefore New York is the real, substantial party in interest, *Pennhurst,* 465 U.S. at 101, and *Carr*, 916 F.2d at 1524.

Moreover, even if the exception to Eleventh Amendment immunity recognized in *Ex parte Young*, 209 U.S. 123 (1908), were extended to apply to interstate sovereign immunity, it would not change the outcome here. Such an exception applies only to federal claims seeking prospective injunctive relief, *see Virginia Off. for Prot. & Advoc. v. Stewart,* 563 U.S. 247, 255 (2011), not to state claims or federal "claims for retroactive relief or damages," *Edelman v. Jordan*, 415 U.S. 651, 664-67 (1974); *see also Schultz v. Alabama*, 42 F.4th 1298, 1314 (11th Cir. 2022). Accordingly, the exception does not apply to Mr. Trump's second and third counts, which are based exclusively on state law, or his claim for money damages in his first count, which is also barred by absolute prosecutorial immunity (*see, infra*, at Point V).

Nor does the exception apply to Mr. Trump's request in his first count for unspecified "declaratory and injunctive relief." AC p.31 ("Wherefore" clause). Nowhere in this count does Mr. Trump specify the nature of the federal "injunctive relief" he seeks. Supposed aftereffects from

past acts by AG James do "not make the relief any less retrospective," *Florida Ass'n of Rehab. Facilities, Inc. v. Dep't of Health and Rehab. Servs.,* 225 F.3d 1208, 1221 (11th Cir. 2000). And insofar as Mr. Trump seeks an injunction on the NY Enforcement Action, or one based on AG James's past public comments, those claims are independently barred by the *Rooker-Feldman* and *Younger* doctrines and claim and issue preclusion, as previously demonstrated.

## V.   PROSECUTORIAL IMMUNITY BARS CLAIMS FOR MONEY DAMAGES

At the very least, Mr. Trump's claims for money damages are barred by absolute prosecutorial immunity, which prosecutors enjoy for acts within the scope of their official duties, including actions "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *see also Rehberg*, 611 F.3d at 837–38. Absolute immunity applies to prosecutors in both civil and criminal cases. *Rehberg*, 611 F.3d at 837; *see also Allen v. Thompson*, 815 F.2d 1433, 1434 (11th Cir. 1987); *Ballesteros v. Brown*, No. 1:20-cv-22016, 2021 WL 848866, at *2 (S.D. Fla. Mar. 5, 2021) (citing *Rehberg* and *Allen*). This absolute immunity applies without regard to whether a prosecutor allegedly possessed any retaliatory animus or lacked probable cause to initiate a proceeding. *Rehberg*, 611 F.3d at 849; *Kivisto v. Soifer*, No. 13-cv-21894, 2013 WL 5534234, at *2 (S.D. Fla. Oct. 7, 2013), *aff'd*, 587 F. App'x 522 (11th Cir. 2014).

Mr. Trump's claims for "compensatory damages up to $250,000,000" and punitive damages (AC ¶ 9) are specifically based on AG James's alleged conduct in commencing and continuing the NY Proceedings, seeking information in those proceedings relating to the Revocable Trust, and making referrals to other law enforcement agencies based on the findings from the Investigation. *See, supra*, at 7. All of this alleged conduct falls squarely within the discretion and traditional functions of a prosecutor, so absolute prosecutorial immunity bars Mr. Trump's claims for damages. *See Rehberg*, 611 F.3d at 837–38; *Taylor v. Castillo*, No. 22-cv-14118, 2022 WL 1443239, at *3 (S.D. Fla. May 6, 2022) (citing *Rehberg*); *Rindley v. Gallagher*, 890 F. Supp. 1540, 1556 (S.D. Fla. 1995) (holding prosecutor's pursuit of a further investigation of certain complaints filed against plaintiff fell within her prosecutorial duties as "[p]rosecutors must be able to investigate, or direct others to investigate, the merits of a particular case.").

## CONCLUSION

For all of the foregoing reasons, the Court should grant the Defendant's motion to dismiss the AC in its entirety, with prejudice, along with any other relief the Court deems necessary and appropriate.

Dated:    December 16, 2022

LETITIA JAMES
Attorney General of the State of New York

**BILZIN SUMBERG BAENA PRICE &
AXELROD LLP**
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
Tel: (305) 374-7580
Fax: (305) 374-7593

By:    *Melissa Pallett-Vasquez*
        Melissa Pallett-Vasquez
        Fla. Bar No. 715816
        Jeffrey Snyder
        Fla. Bar No. 21281
        Robert Turken
        Fla. Bar No. 306355
        mpallett@bilzin.com
        rturken@bilzin.com
        jsnyder@bilzin.com
        stapanes@bilzin.com
        vlopez@bilzin.com
        eservice@bilzin.com

Andrew S. Amer (admitted *pro hac vice*)
  Special Counsel
Colleen K. Faherty (admitted *pro hac vice*)
  Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-6127/6046
andrew.amer@ag.ny.gov
colleen.faherty@ag.ny.gov

*Attorneys for Defendant Letitia James*

21

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served this 16th day of

December, 2022 upon all counsel of record via CM/ECF.

　　　　　　　　　　　　　　 /s/*Melissa Pallett-Vasquez*　　　　
　　　　　　　　　　　　　　　 Melissa Pallett-Vasquez