# EXHIBIT 3

Case 9:22-cv-81780-DMM   Document 11-3   Entered on FLSD Docket 12/16/2022   Page 2 of 32

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, Attorney General of the State of New York, <br><br> Plaintiff, <br><br> vs. <br><br> DONALD J. TRUMP, DONALD TRUMP, JR., ERIC TRUMP, IVANKA TRUMP, ALLEN WEISSELBERG, JEFFREY MCCONNEY, THE DONALD J. TRUMP REVOCABLE TRUST, THE TRUMP ORGANIZATION, INC., TRUMP ORGANIZATION LLC, DJT HOLDINGS LLC, DJT HOLDINGS MANAGING MEMBER, TRUMP ENDEAVOR 12 LLC, 401 NORTH WABASH VENTURE LLC, TRUMP OLD POST OFFICE LLC, 40 WALL STREET LLC, and SEVEN SPRINGS LLC, <br><br> Defendants. | Index No.: 452564/2022 |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OF DEFENDANTS, THE TRUMP ORGANIZATION, INC., TRUMP ORGANIZATION LLC, AND DONALD J. TRUMP

ALINA HABBA
MICHAEL T. MADAIO
**HABBA MADAIO & ASSOCIATES LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
-and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Phone: (908) 869-1188
Email: ahabba@habbalaw.com

Case 9:22-cv-81780-DMM   Document 11-3   Entered on FLSD Docket 12/16/2022   Page 3 of 32

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS .......................................................................................... 3

ARGUMENT ............................................................................................................... 3

   I.   THE NYAG LACKS STANDING TO BRING THIS ACTION ....................... 3

        *A.*  The NYAG Must Demonstrate That It Has Standing Under the *Parens*

           *Patriae* Doctrine ........................................................................ 3

        B.  The NYAG Cannot Establish *Parens Patriae* Standing ......................... 5

             i.  The Complaint Does Not Identify a Quasi-Sovereign Interest .................. 6

             ii.  The Subject Matter of this Action Does Not Affect a Substantial

                Segment of the State's Population ............................................. 8

             iii.  The NYAG Seeks to Vindicate the Rights of Private Parties Who Have

                Their Own Adequate Remedy at Law ....................................... 9

   II.  THE NYAG IS WITHOUT LEGAL CAPACITY TO BRING THE SUIT ................... 11

   III.  THE NYAG HAS VIOLATED THE DEFENDANTS' CONSTITUTIONAL RIGHT

       TO EQUAL PROTECTION OF THE LAWS ................................................. 13

        A.  The NYAG is Selectively Enforcing Executive Law § 63(12) Against

           Defendants .......................................................................... 14

             i.  Defendants Have Been Singled Out and Subject to Selective Treatment

                by the NYAG ..................................................................... 15

             ii.  The NYAG's Selective Treatment of Defendants is a Byproduct of AG

                James's Personal and Political Animus Towards Them ................ 17

        B.  The NYAG is Improperly Targeting Defendants as a "Class of One" ................ 20

   IV.  PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS ....... 21

   V.  PLAINTIFF'S FRAUD CLAIMS ARE BARRED BY DOCUMENTARY

       EVIDENCE AND FAIL TO STATE A CLAIM ........................................... 21

   CONCLUSION .......................................................................................... 23

i

Case 9:22-cv-81780-DMM   Document 11-3   Entered on FLSD Docket 12/16/2022   Page 4 of 32

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                               <u>Page(s)</u>

*303 West 42nd v. Klein*,

      46 N.Y.2d 686, 694 (N.Y. 1979) ....................................................................14

*Alfred L. Snapp & Son. v. Puerto Rico*,

      458 U.S. 592, 607 (1982).......................................................................4, 5, 6

*AYDM Assocs. v. Town of Pamelia*,

      205 F. Supp. 3d 252, 265 (N.D.N.Y. 2016) ...........................................14, 15

*Bizzaro v. Miranda*,

      394 F.3d 82, 86 (2d Cir. 2005)........................................................................18

*Bower Assoc. v. Town of Pleasant Val.*,

      2 N.Y.3d 617, 631 (2004 ......................................................................15, 18

*Caprer v. Nussbaum*,

      36 A.D.3d, 176, 182 (2006). ............................................................................3

*City of Cleburne v. Cleburne*,

      473 U.S. 432, 439 (1985)................................................................................14

*Community Bd. 7 v. Schaffer*,

      84 N.Y.2d 148, 155 (1994). ...........................................................................11

*Gerschel v. Christensen*,

      128 A.D.3d 455 (1st Dep't 2015). ..................................................................21

*Gladstone Realtors v. Village of Bellwood*,

      441 U.S. 91, 100 (1979)................................................................................4, 5

ii

*Guggenheimer v. Ginzburg,*

    43 N.Y.2d 268, 273 (1977). ......................................................................................2, 8

*Harlen Associates v. Village of Mineola,*

    273 F.3d 494, 499 (2d Cir. 2001)...................................................................................14

*HSH Nordbank v. UBS,*

    95 A.D.3d 185 (1st Dep't 2012) ....................................................................................22

*Hu v. City of New York,*

    927 F.3d 81, 91 (2d Cir. 2019)................................................................................15, 21

*In re Cardizem CD Antitrust Litig.,*

    218 F.R.D. 508, 521 (E.D. Mich. 2003) ..........................................................................5

*In re Lorazepam & Clorazepate Antitrust Litig.,*

    205 F.R.D. 369, 386 (D.D.C. 2002 .................................................................................5

*In re World Trade Ctr.,*

    30 N.Y.3d 377, 384 (2017). ...........................................................................................11

*Marshall v. Jericho,*

    446 U.S. 238, 249-250 (1980), ......................................................................................19

*Matter of Regina Metro. v. N.Y. State Div.,*

    35 N.Y.3d 332 (2020) ....................................................................................................21

*Natoli v. NYC Partnership Hous.,*

    103 A.D.3d 611 (2d Dep't 2013) ...................................................................................22

*New York v. Amazon.com,*

    550 F.Supp. 122 (S.D.N.Y. 2021) .................................................................................16

*New York ex rel. Schneiderman v. Intel Corp.,*

    CIV. 09-827-LPS, 2011 WL 6100446, at *6 (D. Del. Dec. 7, 2011) .................................5

iii

*NRP Holdings v. City of Buffalo,*

    916 F.3d 177 (2d Cir. 2019)......................................................................20

*People v. 11 Cornwel,*

    695 F.2d 34, 40 (2d Cir. 1982)..................................................................11

*People v. Abram,*

    178 Misc.2d 120, 125 (N.Y. City Ct. 1998). ...........................................18

*People v. Coventry First,*

    52 A.D.3d 345 (1st Dep't 2008) ...............................................................16

*People v. Credit Suisse Securities, LLC,*

    31 N.Y.3d 622, 654-55 (2018)..............................................................4, 17

*People v. Domino's Pizza,*

    2021 WL 39592, at *1 (Sup. Ct. N.Y. County. 2021) ...........................9, 10

*People v. Grasso,*

    54 A.D.3d 180, 198 (1st Dep't 2008). ...........................................4, 5, 7, 11

*People v. H&R Block, Inc.,*

    847 N.Y.S.2d 903, 907 (Sup. Ct. N.Y. Cnty. 2007) ..................................6

*People v. Ingersoll,*

    *Id.* at 30 ......................................................................................................8

*People v. Litto,*

    8 N.Y.3d 692, 705 (2007) .........................................................................11

*People v. N. Leasing Sys.,*

    133 N.Y.S.3d 389 (Sup. Ct. 2020) ...........................................................16

*People v. Quality King Distribs.,*

    209 A.D.3d 62 (1st Dep't 2022) ...............................................................16

iv

Case 9:22-cv-81780-DMM   Document 11-3   Entered on FLSD Docket 12/16/2022   Page 7 of 32

*People v. Seneci*,

    817 F.2d 1015, 1017 (2d Cir. 1987)........................................................9

*People v. Singer*,

    193 Misc.976, 980 (Sup. Ct. 1949)....................................................6, 7

*Raines v. Byrd*,

    521 U.S. 811, 820 (1997).....................................................................4, 5

*Riverhead v. Real Prop. Servs.*,

    5 N.Y.3d 36, 41 (2005). ......................................................................11

*Security Pacific v. Evans*,

    31 A.D.3d 278, 279 (1st Dep't 2006). ................................................3

*Sioux City Bridge v. Dakota County*,

    260 U.S. 441, 445 (1923)....................................................................14

*Socy. Of Plastics v. Suffolk*,

    77 N.Y.2d 761, 772 (1991) .............................................................4, 11

*Sonne v. Board of Trustees*,

    67 A.D.3d 192, 203-204 (2d Dep't 2009)..........................................18

*South Carolina v. North Carolina*,

    558 U.S. 256, 266 (2010).....................................................................4

*State by Abrams v. N.Y.C. Conciliation & Appeals Bd.*,

    472 N.Y.S.2d 839, 841 (Sup. Ct. 1984)...........................................6, 11

*State v. Gen. Motors Corp.*,

    547 F.Supp. 703 (S.D.N.Y. 1982) .....................................................16

*State v. McLeod*,

    2006 WL 1374014, at *7 .....................................................................9

v

Case 9:22-cv-81780-DMM Document 11-3 Entered on FLSD Docket 12/16/2022 Page 8 of 32

*State of N.J. v State of N.Y.,*

    345 U.S. 369, 372-73 (1953). ................................................................................4

*Village of Willowbrook v. Olech,*

    528 U.S. 562, 564 (2000)...............................................................................20


Rules and Statues

CPLR 1301...................................................................................................................5

CPLR 213(9).........................................................................................................12, 21

CPLR § 3211(3)....................................................................................................13, 23

NYCRR 202.70.17 ......................................................................................................24

N.Y. Executive Law § 63(12)....................................1, 2, 4, 5, 8, 10, 12, 13, 14, 15, 16, 17, 21, 22

U.S. Const. Amend. XIV ............................................................................................14

 N.Y. Const art. I, § 11 ...............................................................................................14

Case 9:22-cv-81780-DMM   Document 11-3   Entered on FLSD Docket 12/16/2022   Page 9 of 32

The defendants, Trump Organization, Inc., Trump Organization LLC and Donald J. Trump, hereby move to dismiss the verified complaint (the "Complaint") filed by the Office of the New York Attorney General (the "NYAG"), expressly incorporate the arguments set forth in the memorandums of law submitted by Allen Weiselberg, Jeffrey McConney, the Donald J. Trump Revocable Trust, DJT Holdings LLC, DJT Holdings Managing Member, Trump Endeavor 12 LLC, 401 North Wabash Venture LLC, Trump Old Post Office LLC , 40 Wall Street LLC, Seven Springs LLC, Eric Trump, Donald Trump Jr., and Ivanka Trump (collectively, all defendants are referred to as the "Defendants"), respectively, and submit this memorandum of law in support.

### PRELIMINARY STATEMENT

This lawsuit is fatally flawed as a matter of law and lacks a legitimate factual basis. More than that, it is the culmination of a pretextual and politically-motivated prosecution which threatens to contravene statutory predicate, indelibly alter the NYAG's enforcement authority, and violate the Defendants' constitutional rights.

Contrary to the NYAG's insistence, private dealings between sophisticated parties are simply not within the purview of its regulatory power, nor does the NYAG have the standing or capacity to intervene in such transactions. As the legislature made clear when passing Executive Law § 63(12), and as the judiciary has since confirmed, the law is meant to serve the *public interest* and to protect vulnerable segments of the population from predatory and deceitful business practices. The NYAG, acting in its *parens patriae* capacity on behalf of the 'People of the State of New York,' purports to allege an ongoing pattern of "fraud" and "illegality" engaged in by the Trump Organization, but noticeably absent from the Complaint is any reference to how the Trump Organization's alleged conduct imperiled, endangered, or otherwise affected the public at large. This omission speaks volumes – it lays bare the NYAG's intent to utilize Exec. Law § 63(12) as

its proverbial 'square peg in a round hole' in the hopes of fulfilling a years-long promise to prosecute the Trump Organization and, more pointedly, Donald J. Trump.

Indeed, Letitia James conceived of this action in her mind's eye long before it was ever filed by the NYAG.  Her promise to "get Trump" was a central theme of her campaign for Attorney General and the destruction of the Trump Organization has been her avowed goal since the moment she took office. Her public statements betray her motive and make it resoundingly clear that she is guided solely by animus, not the pursuit of justice. Her attempt to wield Exec. Law § 63(12) in such an unprecedented manner—to reach the private business dealings of a political opponent—is merely a means of fulfilling her agenda. Thus, by virtue of this selective enforcement of the laws, the Defendants' constitutional rights are being senselessly and unduly violated, at great cost.

The law, however, does not countenance such abuses of power. Like a river that threatens to break the banks and take the village under, the prosecutorial power of the state must be constrained. Exec. Law § 63(12) was never intended to serve as a warrant for the NYAG to interject in private commercial transactions. This is especially true in the context of deals between well represented corporations—each with innumerable resources at their disposal and highly-qualified experts in their employ—which are subject to extensive due diligence processes. These corporate titans are the antithesis of "the ignorant, the unthinking and the credulous" members of the public that Exec. Law § 63(12) is intended to protect. *Guggenheimer v. Ginzburg*, 43 N.Y.2d 268, 273 (1977).

Simply put, by commencing the instant action, the NYAG has overstepped its authority and put its selective treatment of Defendants on full display. The Complaint fails to plead any connection between the predicate conduct and the broader marketplace or to otherwise explain how the public has been harmed. In fact, the NYAG fails to allege *any harm at all*, apart from a

2

Case 9:22-cv-81780-DMM   Document 11-3   Entered on FLSD Docket 12/16/2022   Page 11 of 32

bevy of speculative theories and overwrought academic hypothesis. None of the parties whose rights the NYAG purports to enforce by pursuing this action have ever commenced a legal action against the Trump Organization or, for that matter, any of the defendants. What rights, then, are being vindicated? And who stands to gain from this highly-politicized farse, aside from the politically-compromised Attorney General of the State of New York?

## STATEMENT OF FACTS

The factual and procedural history is recited at length in the Affirmation of Alina Habba (the "Habba Aff."), annexed hereto.

## ARGUMENT

### POINT I

### THE NYAG LACKS STANDING TO BRING THIS ACTION

A party "generally has standing only to assert claims on behalf of himself or herself... [and] one does not, as a general rule, have standing to assert claims on behalf of another." *Caprer v. Nussbaum,* 36 A.D.3d, 176, 182 (2006). Standing is a "threshold determination, resting in part on policy considerations, that a person should be allowed access to the courts to adjudicate the merits of a particular dispute that satisfies the other justiciability criteria." *Id.* "The most critical requirement of standing…is the presence of "injury in fact—an actual legal stake in the matter being adjudicated." *Security Pacific v. Evans*, 31 A.D.3d 278, 279 (1st Dep't 2006).

**A.**    **The NYAG Must Demonstrate That It Has Standing Under the *Parens Patriae* Doctrine**

Since the NYAG purports to bring this suit "on behalf of the People of the State of New York," its standing to maintain this action must be derived from its *parens patriae* authority. Compl. ¶40

 "[W]hen a State is "a party to a suit involving a matter of sovereign interest, it is *parens patriae* and must be deemed to represent all [of] its citizens." *South Carolina v. North Carolina*,

Case 9:22-cv-81780-DMM   Document 11-3   Entered on FLSD Docket 12/16/2022   Page 12 of 32

558 U.S. 256, 266 (2010) (quotations omitted). *Parens patriae* is a "common-law standing doctrine that permits the state to commence an action to protect a public interest, like the safety, health or welfare of its citizens." *People v. Credit Suisse Securities*, 31 N.Y.3d 622, 654-55 (2018) (citing *Alfred L. Snapp & Son. v. Puerto Rico,* 458 U.S. 592, 607 (1982)). The doctrine is "a recognition of the principle that the state, when a party to a suit involving a matter of sovereign interest, 'must be deemed to represent all its citizens.'" *State of N.J. v State of N.Y.*, 345 U.S. 369, 372-73 (1953).

The NYAG may contend that it is not required to establish *parens patriae* standing since it is acting with express statutory authority under Executive Law § 63(12). However, this is simply not the case. While it is true that the Attorney General is a creature of statute, even express statutory authorization from the legislature cannot override the basic legal tenet that a party must have standing to maintain an action. *See, e.g.*, *Socy. Of Plastics v. Suffolk*, 77 N.Y.2d 761, 772 (1991) ("[T]he principle that only proper parties will be allowed to maintain claims is an ancient one, long predating the Federal Constitution."). Indeed, there is "little doubt that a 'court has no inherent power to right a wrong unless thereby the civil, property or personal rights of the plaintiff in the action or the petitioner in the proceeding are affected.'" *Id.* at 773. This holds true with respect to the Attorney General, who, "like all other parties to actions, must show an interest in the subject-matter of the litigation to entitle [her] to prosecute a suit and demand relief." *People v. Grasso*, 54 A.D.3d 180, 198 (1st Dep't 2008). Thus, the "[t]he legislature, consistent with the principles of separation of powers underlying the requirement of standing…cannot grant the right to sue to a plaintiff who does not have standing," including the Attorney General. *Grasso*, 54 A.D.3d at 198 (1st Dep't 2008) (citing *Raines v. Byrd*, 521 U.S. 811, 820 (1997)); *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) ("In no event…may Congress abrogate the Art. III minima:

4

Case 9:22-cv-81780-DMM   Document 11-3   Entered on FLSD Docket 12/16/2022   Page 13 of 32

a plaintiff must always have suffered a distinct and palpable injury to himself" that is likely to be redressed if the requested relief is granted.").

Nonetheless, the question is academic here since Executive Law § 63(12) does not authorize the NYAG to bring suit unless it does so "in the name of the people of the state of New York[.]." Exec. Law § 63(12); *see also* CPLR 1301 ("an action brought in behalf of the people…shall be brought in the name of the state.").  Courts have consistently interpreted this language as providing the NYAG with the "functional equivalent of *parens patriae* authority," *see*, *e.g.*, *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 521 (E.D. Mich. 2003) (stating that Exec. Law § 63(12) grants the NYAG with the "functional equivalent of *parens patriae* authority"); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 386 (D.D.C. 2002) (same); *New York v. Intel Corp.*, CIV. 09-827-LPS, 2011 WL 6100446, at *6 (D. Del. Dec. 7, 2011) (same), a position which has been expressly adopted by the NYAG, *see id.* ("[The Attorney General] submits that courts have determined that [Executive Law 63(12)] constitute[s]…the functional equivalent of *parens patriae* authority."). Thus, even pursuant to the NYAG's grant of authority under Exec. Law 63(12), the doctrine of *parens patriae* governs.

Therefore, in accordance with the traditional precepts of common law standing, as well as the express statutory language of Executive § Law 63(12), the NYAG must demonstrate that it has *parens patriae* standing to proceed with the instant action.

### B.    The NYAG Cannot Establish *Parens Patriae* Standing

To establish *parens patriae* standing, the "State must articulate an interest apart from the interests of particular private parties, *i.e.*, the State must be more than a nominal party…[it] must express a quasi-sovereign interest." *Grasso*, 54 A.D.3d at 198 (citing *Snapp*, 458 U.S. 607). The relevant inquiry is as follows: "[t]o bring a *parens patriae* action to sue in the public interest, the

Attorney General must: (1) identify a quasi-sovereign interest in the public's well-being; (2) that touches a 'substantial segment' of the population; and (3) articulate 'an interest apart from the interests of the particular private parties[.]'" *People v. H&R Block*, 847 N.Y.S.2d 903, 907 (Sup. Ct. N.Y. Cnty. 2007) (citing *Snapp,* 458 U.S. at 607).

Here, the NYAG has failed to plead any of the requisite elements of *parens patriae* standing. The Complaint fails to identify *any* quasi-sovereign interest in the public's well-being, much less one that touches a substantial segment of the population, and neglects to vindicate any right that is separate and apart from the interests of private parties. Therefore, for the reasons set forth below, the NYAG lacks *parens patriae* standing.

### i.  The Complaint Does Not Identify a Quasi-Sovereign Interest

It is axiomatic that the "interest of the state in the proper enforcement and administration of its laws is purely a sovereign one and cannot be the predicate for standing to protect a quasi-sovereign interest." *State by Abrams v. N.Y.C. Conciliation & Appeals Bd.*, 123 Misc.2d 47, 50 (Sup. Ct. 1984) (citing *Snapp,* 458 U.S. at 599).

"A quasi-sovereign interest must be sufficiently concrete to create an actual controversy between the State and the defendant." *Snapp,* 458 U.S. at 602. "The injury complained of cannot be to any purely sovereign or proprietary interest of the state, nor can the state assert the purely private claims of individual citizens." *Abrams*, 123 Misc.2d at 49. In short, "it is ***not sufficient for the people to show that wrong has been done to some one; the wrong must appear to be done to the people, in order to support an action by the people for its redress***." *Singer*, 193 Misc.976, 980 (Sup. Ct. 1949) (emphasis added).

In *People v. Singer*, the Attorney General commenced an action against several directors of a New York membership corporation, alleging, among other things, that the directors were

charging excessive and unreasonable rates to its members. *Singer*, 193 Misc. 976. The Attorney General argued that it had standing "on the premise that the matters alleged in the complaint involve and affect the safety, health, and welfare of the people of the State." *Id.* at 979. The court flatly rejected this argument and dismissed the complaint for lack of standing, finding that "what is complained of by the [Attorney General] are matters in which the State has no public interest or right to intervene [since] they concern the internal affairs and management of the corporation[.]" The court noted that these were *"wrongs to individual citizens and not to the State and are remediable at the suit of the parties injured only"* because "[t]*he people of this State have no general power to invoke the action of the courts of justice, by suits in their name of sovereignty for the redress of civil wrongs, sustained by some citizens at the hands of others*." *Id.* at 979-980 (emphasis added).

Similarly, in *Grasso*, the NYAG commenced an enforcement action against a not-for-profit corporation when, during the course of the action, the corporation was converted into a for-profit entity. In determining that the NYAG lacked *parens patriae* standing, the Appellate Division found that the continuation of the action "would vindicate only the interests of private parties, not any public interest." *Grasso*, 54 A.D.3d at 195. In so finding, the Appellate Division noted that, while "there is a substantial public interest in the management and affairs of a … not-for-profit corporation," there is "**no substantial public interest in most if not all private corporations**." *Id.* at 209 (emphasis added). In other words, due to the corporation's conversion from not-for-profit to for-profit, the action no longer "vindicate[d] [a] public purpose," and the NYAG could not proceed forward. *Id.* at 196.

Here, in that same vein, the NYAG is not seeking to serve any public interest or vindicate any public rights. No harm is alleged to have been sustained by anyone other than Deutsche Bank,

7

Case 9:22-cv-81780-DMM  Document 11-3  Entered on FLSD Docket 12/16/2022  Page 16 of 32

Zurich, or Mazars. The NYAG has not alleged that Defendants' conduct was aimed at the public at large, nor that it affected any segment of the state's population. Instead, the NYAG merely seeks to vindicate the rights of corporate titans who were fully capable of negotiating the complex agreements at the core of the Complaint, as well as exercising their considerable rights thereunder. It is plainly not within the purview of the NYAG to prosecute the claim at bar because the conduct complained of did not have any tendency to harm the public at large or implicate any public interest. Therefore, the NYAG has failed to identify a quasi-sovereign interest.

ii.     **The Subject Matter of this Action Does Not Affect a Substantial Segment of the State's Population**

The alleged activity that the NYAG seeks to enjoin does not touch a 'substantial segment' of New York's population, but, rather, only a handful of private, sophisticated parties.

In *People v. Ingersoll*, the NYAG sued private parties to recover funds that belonged to a county, received by the defendants through fraud. In finding that the NYAG lacked *parens patriae* standing, the Court stated that "[i]t is not in terms averred that the money, in any legal sense or in equity and good conscience, belonged to the [State]…or that the wrong was perpetrated directly against the State or the people of the State, that is, the whole State as a legal entity, and the whole body of the people." *Id*. at 12. The Court further noted that "a [c]orporation with full power to acquire and hold property, create debts, levy taxes, and sue and be sued, with a competent board of governors, is not within the class of incompetence in need of the exercise of this nursing quality of the State government." *Id.* at 30.

Here, similarly, the NYAG is seeking to employ Executive Law § 63(12) in a manner that flies in the face of the "nursing quality" of the statute. *Id.* Exec. Law § 63(12) was designed to protect the public at large, and, more pointedly, the "ignorant, the unthinking and the credulous." *Guggenheimer*, 43 N.Y.2d at 273. It certainly is not intended to protect industry-leading

Case 9:22-cv-81780-DMM   Document 11-3   Entered on FLSD Docket 12/16/2022   Page 17 of 32

conglomerates, such as banks, insurers, and accounting firms, with the vast resources and expertise

to effectively carry out their business. Yet, that is exactly what the NYAG is attempting to do: the

Complaint only purported to enjoin conduct aimed a narrow group of a select few parties, namely

"lenders, employees who worked for those lenders and insurers, and the accounting firm that

compiled the Statements, and personnel of that firm." Compl. at 200. This is simply not a

"substantial segment of the population," nor can any alleged wrongdoing against a limited subset

of sophisticated private parties to complex commercial agreements possibly implicate a public

interest. Thus, the alleged fraudulent activity that the NYAG seeks to enjoin does not touch any

portion of New York's general population, but, rather, only a handful of private parties.

### iii.  The NYAG Seeks to Vindicate the Rights of Private Parties Who Have Their Own Adequate Remedy at Law

New York courts have consistently recognized that the Attorney General lacks *parens patriae* standing where, as here, the "aggrieved individual[s] ha[ve] an adequate remedy at law" because "then the state is merely a nominal party with no real interest of its own." *State v. McLeod*, 2006 WL 1374014, at *7 (Sup. Ct. 2006). "The state cannot merely litigate as a volunteer the personal claims of its competent citizens." *People v. Seneci*, 817 F.2d 1015, 1017 (2d Cir. 1987).

The NYAG attempted to stretch its *parens patriae* authority in a similar manner in *People v. Seneci*, where the relief sought by the Attorney General flowed only to the benefit of certain private corporate and individual parties. *Id*. at 1017. The Second Circuit found that the NYAG lacked *parens patriae* standing, holding that "[w]here the complaint only seeks to recover money damages for injuries suffered by individuals, the award of money damages will not compensate the state for any harm done to its quasi-sovereign interests...the state as *parens patriae* lacks standing to prosecute such a suit." *Id*. at 1017.

Moreover, the recent holding in *People v. Domino's Pizza*, 2021 WL 39592, at *1 (Sup.

9

Case 9:22-cv-81780-DMM   Document 11-3   Entered on FLSD Docket 12/16/2022   Page 18 of 32

Ct. N.Y. County. 2021) is particularly instructive here.  In *Domino's*, the NYAG alleged that the defendants had misled their New York franchisees and sought to hold Defendants liable under Executive Law § 63(12). In dismissing the claim, the court noted that the cause of action fell well outside of the common fact pattern of § 63(12) cases that seek to redress "widespread consumer fraud." *Id*. at *11. In doing so, the court pointed to a series of § 63(12) cases to draw the distinction between the typical types of widespread fraud affecting large segments of the public that the statute was designed to address, as compared to private contract disputes that were at issue in that case. *Id.*

The court in *Domino's* recognized that the "quite different" conduct in question in that case consisted of "bilateral business transactions between Domino's and its individual franchisees, many of whom own multiple franchises." *Id.* at *12.  Moreover, the court found compelling Domino's argument that "***that any disputes…should be in the nature of private contract litigation between Domino's and its franchisees, not a law enforcement action under a statute designed to address public harm flowing from persistent or repeated fraud and deception***." *Id*. at *12. (emphasis added).

The *Domino's* decision perfectly illustrates everything that is wrong with the NYAG's Complaint in this case, where the NYAG is seeking to vindicate the rights of a select few private parties. The Complaint identifies the purported "victims" of the alleged fraud as consisting only of Deutsche Bank, Zurich, and Mazars, entities that have signed extensive agreements with Defendants, are well-represented by counsel, and have the ability to bring an action in their own right. In fact, the NYAG admits as much in the Complaint, acknowledging that "[m]aterial misrepresentations on any loan document, including the Statements [of Financial Condition] or the certifications as to their accuracy, would constitute an event of default under the terms of the loan

10

Case 9:22-cv-81780-DMM    Document 11-3    Entered on FLSD Docket 12/16/2022    Page 19 of 32

agreement." Compl. at 9. Certainly, if Deutsche Bank, Zurich or Mazars had concluded that Defendants had breached any loan covenant (let alone made a material misrepresentation or omission that put a loan at risk), it would have pursued such a claim on its own initiative. Thus, the NYAG simply does not have standing to vindicate the interests these private parties on behalf of the People of the State of New York. *See Abrams*, 123 Misc.2d at 39 ("If the aggrieved individual has an adequate remedy at law, then the state is merely a nominal party with no real interest of its own."); *People v. 11 Cornwel*, 695 F.2d 34, 40 (2d Cir. 1982) (state lacks standing unless it can show "that individuals could not obtain complete relief through a private suit.").

## POINT II
## THE NYAG IS WITHOUT LEGAL CAPACITY TO BRING THIS SUIT

"Although courts often use the terms interchangeably, the concepts of capacity to sue and standing are distinct." *Community Bd. v. Schaffer*, 84 N.Y.2d 148, 155 (1994). While standing is "designed to ensure that the party seeking relief has a sufficiently cognizable stake in the outcome," *Society of Plastics*, 77 N.Y.2d at 772, capacity is "a threshold question involving the authority of a litigant to present a grievance for judicial review," *Riverhead v. Real Prop*, 5 N.Y.3d 36, 41 (2005).

For a governmental entity, the "right to sue, if it exists at all, must be derived from the relevant enabling legislation or some other concrete statutory predicate." *In re World Trade Ctr.*, 30 N.Y.3d 377, 384 (2017). Further, it is well-established that "a private right of action may not be implied from a statute where it is incompatible with the enforcement mechanism chosen by the Legislature." *Grasso*, 11 N.Y.3d at 70. This concern is "heightened" with respect to Attorney General, who is responsible for enforcing statutes "while maintaining the integrity of calculated legislative policy judgments." *Id.* (citations omitted) (cleaned up).

11

Case 9:22-cv-81780-DMM   Document 11-3   Entered on FLSD Docket 12/16/2022   Page 20 of 32

Here, based on the legislative history of Exec. Law § 63(12), and the manner in which it has historically been employed, it is clear that § 63(12) does not authorize the NYAG to commence the instant proceeding.

New York courts have consistently recognized that Exec. Law § 63(12) is designed to protect vulnerable members of the public from predatory acts of fraud, not to regulate the business dealings between private, sophisticated parties. The historical context surrounding the passing of the law further cements this point. As the 1950s ushered in a boom in the purchasing power of consumer families, New York saw an increase in predatory and fraudulent marketing tactics by consumer-facing businesses, prompting then-Attorney General Jacob Javits to urge the Legislature to enact the 1956 bill that later became § 63(12). *State Dept. of Law Mem, Bill Jacket*, L 1956, ch. 592 at 94. In his memorandum supporting the bill, Javits spoke of the need to "to protect consumers against frauds in the sale of articles, appliances and services and against fraudulent practices such as 'bait advertising.'" *Id.* at 92. Javits listed specific instances of successful actions taken by his office to protect consumers from false advertising in the sale of food freezers, storm windows, chinchillas, and door-to-door sale of dishes. *Id.* at 93.

The Better Business Bureau submitted a similar memorandum, stating that the law would be "helpful in combating fraudulent advertising and selling practices on the part of certain corporations which have deceived or defrauded the *consumers* of this state." *Letter from BBB, 4/3/1956, Bill Jacket, L 1956, ch. 592* at 5 (emphasis added). The NYS Department of Law also submitted a memorandum of support stating its support to "strengthen the hand of his office in protecting the public against consumer frauds." *State Dept. of Law Mem, L 1956, ch.* 592 at 92.

As recently as August 2019, when the legislature enacted CPLR 213(9), the legislature's sponsoring memorandum described Executive Law 63(12) as "the cornerstone of the state's

Case 9:22-cv-81780-DMM   Document 11-3   Entered on FLSD Docket 12/16/2022   Page 21 of 32

consumer protection laws," and referred to the NYAG as "a preeminent enforcer of consumer protection and securities law in New York State." Sponsors Memorandum, 2019 S.B. 6536. In describing the law, which prospectively created a new six-year statute of limitations for future § 63(12) claims, the memorandum stated that it would assist the NYAG in "achiev[ing] better results for New York State and its residents." *Id.*

As amply shown by both the legislative history and body of case law, the driving force behind the original enactment of Executive Law § 63(12) was the need to protect vulnerable citizens of the state and the public at large, not sophisticated financial institutions fully capable of discerning for themselves whether and to what extent a particular statement may be reliable. The NYAG's proposed use of Exec. Law 63(12) in the instant matter not only exceeds this legislative intent, it goes far beyond it. Should the NYAG be allowed to employ the Executive Law in this way—unbound in both its use and application—it would vastly surpass the prosecutorial authority that the legislature intended to bestow upon the NYAG and leave it with an unchecked power that it was never intended to wield.

In short, Executive Law § 63(12), considered within the context of its legislative history, does not provide a basis for the NYAG to proceed with this action because the conduct complained of did not have any tendency to harm the public at large. Thus, the NYAG's Complaint must be dismissed pursuant to CPLR § 3211(3).

## POINT III
### THE NYAG HAS VIOLATED THE DEFENDANTS' CONSTITUTIONAL RIGHT TO EQUAL PROTECTION OF THE LAWS

The Equal Protection Clause—which is contained in the Fourteenth Amendment of the United States Constitution and mirrored in Article I, § 11 of the New York State Constitution—

Case 9:22-cv-81780-DMM   Document 11-3   Entered on FLSD Docket 12/16/2022   Page 22 of 32

guarantees that "no state shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV; N.Y. Const art. I, § 11.

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sioux City v. Dakota County*, 260 U.S. 441, 445 (1923). In other words, the Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne,* 473 U.S. 432, 439 (1985).[1]

"Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, [courts] have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Harlen Associates v. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). In this context, a party who is not a member of a constitutionally protected class, "may bring an equal protection claim pursuant to one of two theories: (1) selective enforcement, or (2) 'class of one.'" *AYDM Assocs. v. Town of Pamelia,* 205 F. Supp. 3d 252, 265 (N.D.N.Y. 2016) (quotation omitted). Here, for the reasons outlined below, both theories are viable.

A.    **The NYAG is Selectively Enforcing Executive Law § 63(12) Against Defendants**

"The Equal Protection Clause prohibits the selective enforcement or prosecution by a state official pursuant to a lawful regulation." *Id.* at 265.

---

[1] New York courts have recognized that an equal protection violation warrants the dismissal of an enforcement action "[e]ven though the party raising the unequal protection claim may well have been guilty of violating the law." *303 West 42nd v. Klein*, 46 N.Y.2d 686, 694 (N.Y. 1979)

14

Case 9:22-cv-81780-DMM   Document 11-3   Entered on FLSD Docket 12/16/2022   Page 23 of 32

To prevail on an equal protection claim based on selective enforcement of the law, a defendant must prove that: "'(i) the person, compared with others similarly situated, was selectively treated, and (ii) the selective treatment was motivated by an intention…to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.'" *Hu v. City of N.Y.,* 927 F.3d 81, 91 (2d Cir. 2019). Stated differently, the defendant must prove that he has been "singled out with an "evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances." *Bower Assoc. v. Town of Pleasant Val.*, 2 N.Y.3d 617, 631 (2004) (citations omitted).

### i.  **Defendants Have Been Singled Out and Subject to Selective Treatment by the NYAG**

To satisfy the first prong—the 'uneven hand'—a defendant must "identify comparators whom a prudent person would think roughly equivalent." *AYDM Associates*, 205 F.Supp.3d at 265.

There is no question that, when compared to others similarly situated, Defendants have been singled out and subject to selective treatment by the NYAG. Indeed, as detailed above, with the commencement of the instant action, the NYAG is disavowing its historical use of Exec. Law § 63(12) and attempting to wield it in a novel fashion that is entirely inconsistent with its prior enforcement history against those similarly situated to Defendants, or, for that matter, *any* person or company. The reason for this gross departure is readily apparent – the NYAG's use of Executive Law § 63(12) is not based in the law, legislative intent, or historical use, nor is it borne out of legitimate investigative findings; rather, in commencing the instant action, the NYAG has knowingly advanced claims that are unwarranted under existing law as a means of selectively and maliciously targeting Defendants.

Case 9:22-cv-81780-DMM   Document 11-3   Entered on FLSD Docket 12/16/2022   Page 24 of 32

Indeed, the anomalous nature of this case is proof, in and of itself, that the NYAG has singled out Defendants for disparate treatment. Despite extensive research, Defendants have been unable to locate any New York cases where the NYAG has commenced a claim under Executive Law § 63(12) to intervene in private transaction to enforce the contract rights of sophisticated financial institutions. Although the NYAG may attempt to point to several cases as constituting precedent for this type of claim, there is simply no on-point comparison. *See State v. Gen. Motors*, 547 F.Supp. 703 (S.D.N.Y. 1982) (involving fraudulent practices affecting a vast number of consumers in the automobile industry); *People v. Coventry First*, 52 A.D.3d 345 (1st Dep't 2008) (involving bid-rigging and other anti-competitive schemes that were used to defraud policyholders at large); *New York v. Amazon.com.*, 550 F.Supp. 122 (S.D.N.Y. 2021) (Lawsuit alleging that Amazon failed to protect *thousands* of workers through inadequate disinfection and contract-tracing protocols; the court found standing based on "the government's interest in guaranteeing a marketplace that adheres to standards of fairness, as well [as] ensuring that business transactions in the state *do not injure public health*.") (emphasis added); *People v. N. Leasing Sys.*, 133 N.Y.S.3d 389 (Sup. Ct. 2020) (lawsuit where NYAG submitted "873 affidavits by equipment lessees or their guarantors" to allege that company was engaged in fraudulent leasing strategies.); *People v. Quality King Distribs.*, 209 A.D.3d 62 (1st Dep't 2022) (lawsuit brought on behalf of injured consumers alleging that company gouged prices on disinfectant prices during the Covid-19 pandemic.). Given the stark contrast in how NYAG has historically enforced Executive Law § 63(12), and how it seeks to enforce it against Defendants, it is overwhelmingly apparent that Defendants are being subject to differential treatment.

Another telling takeaway from the NYAG's prior enforcement history is that it has previously advanced the exact *opposite* position than that which it asserts against Defendants

16

Case 9:22-cv-81780-DMM   Document 11-3   Entered on FLSD Docket 12/16/2022   Page 25 of 32

today.  In *People v. Credit Suisse*, the NYAG brought an action against Credit Suisse, alleging that the investment bank had "systematically failed to adequately evaluate [] loans" and misrepresented the quality of the mortgage loans and the due diligence review process to its investors. *See* Complaint, *People v. Credit Suisse Sec.*, New York County, Index No. 451802/2022 (NYSCEF Doc. No. 2 at 2). In its complaint, the NYAG stressed the importance of the due diligence process and emphasized that the lender is "uniquely positioned through the due diligence process to obtain material information regarding the quality of [] loans" and has "unique access to critical information that enable[s] them to root out discernible problems and risks." *Id.* at 13. This position is entirely contradictory to the NYAG's stance as it relates to the instant action, wherein the NYAG has alleged that Deutsche Bank justifiably "relied" upon misleading statements contained in the Statements of Financial Condition, Compl. at 174, despite the fact that, as alleged by the NYAG, President Trump's "desire to keep his net worth high" was "well known publicly," *id.* at 192. The disparity between these two positions simply cannot be reconciled and is further proof that AG James is selectively advancing a baseless case against Defendants that is has never, and would never, assert against similarly situated competitors.

Therefore, the NYAG's anomalous use of Executive Law § 63(12) in the instant action conclusively shows that Defendants are being selectively treated in comparison to their competitors writ large.

      ii.      **The NYAG's Selective Treatment of Defendants is a Byproduct of AG James's Personal and Political Animus Towards Them**

With respect to the second prong—the 'evil eye'—the relevant inquiry is whether the defendant has been "singled out for an impermissible motive not related to legitimate governmental objectives, which could include personal or political gain, or retaliation for the

exercise of constitutional rights." *Sonne v. Board of Trustees*, 67 A.D.3d 192, 203-204 (2d Dep't 2009).

New York courts have recognized that "cases predicating constitutional violations on selective treatment motivated by ill-will, rather than by protected-class status or an intent to inhibit the exercise of constitutional rights, are 'lodged in a murky corner of equal protection law in which there are surprisingly few cases and no clearly delineated rules to apply.'" *Bizzarro v. Miranda,* 394 F.3d 82, 86 (2d Cir. 2005). This is because "admission of intentional discrimination is likely to be rare" since "law enforcement officials are unlikely to avow that their intent was to practice constitutionally proscribed discrimination." *People v. Abram*, 178 Misc.2d 120, 125 (N.Y. City Ct. 1998).

In the instant matter, there is no murkiness or lack of clarity as to AG James's feelings towards Defendants. This is one of the rare circumstances in which a high-ranking law enforcement official has openly, publicly, and repeatedly made known her desire to selectively target Defendants. The many public statements made by AG James serve as compelling evidence that the instant action was commenced out of AG James's "malicious[,] bad faith intent" to prosecute the Defendants, *Bower*, 2 N.Y.3d at 631, and for the purpose of achieving a "personal or political gain," *Sonne, supra.*

Upon examination of AG James's statements, it cannot be reasonably disputed that she has displayed a wanton desire to harass, intimidate, and retaliate against Defendants. Before she even took office, her entire campaign for Attorney General was centered around her promise to "take on [Trump] and his business" if elected. Habba Aff. ¶17.  She even pledged, during a campaign speech, that she would employ her power as Attorney General as a "sword" against Donald J. Trump and that she "looked forward to going into the office of Attorney General every day, suing

Case 9:22-cv-81780-DMM   Document 11-3   Entered on FLSD Docket 12/16/2022   Page 27 of 32

him…and then going home." *Id.* ¶11. Her stated objective was to "vigorously fight" against him

by "us[ing] every area of the law to investigate President Trump and his business transactions,"

going so far as promising to prosecute "anyone in [Trump's] orbit." *Id.* ¶22. In what can only be

described as an overt threat, she warned that President Trump "should be scared," about her run

for Attorney General and threatened that "[t]he president of the United States has to worry about

three things: [Robert] Mueller, [Michael] Cohen, and Tish James. We're all closing in on him."

*Id.* ¶12.

AG James's animus Defendants is perhaps best encapsulated with the following statement,

which she made in a video promoted by her campaign:

> I believe that this president…is an embarrassment to all that we stand for. He should
> be charged with obstructing justice. I believe that the President…can be indicted
> for criminal offenses and we would join with law enforcement and other attorneys
> general across this nation in removing this President from office. [T]he office of
> attorney general will continue to follow the money because we believe he's
> engaged in a pattern and practice of money laundering. Laundering the money from
> foreign governments here in New York State, and particularly related to his real
> estate holdings. It's important that everyone understand, the days of Donald Trump
> are coming to an end.

*Id.* ¶18. These unsavory comments—which were made even *before* AG James was in office and

had any reason to suspect that Defendants were involved in any wrongdoing—expose this action

as being a political persecution intended to harass Defendants and fulfill the pre-campaign

promises of AG James, and nothing more.

AG James not only staked her election for Attorney General on her pursuit of President

Trump, but since becoming Attorney General, she has unrelentingly continued to target him, his

family, and his business. Despite the prohibition against a prosecutor "injecting a personal interest,

financial or otherwise, into the enforcement process," *Marshall v. Jericho*, 446 U.S. 238, 249-250

(1980), AG James, shortly after swearing in as Attorney General, stated that she was "definitely

Case 9:22-cv-81780-DMM Document 11-3 Entered on FLSD Docket 12/16/2022 Page 28 of 32

going to sue" President Trump and proclaimed that she was "*going to be a real pain in the ass…[h]e's going to know my name personally*." Habba Aff. ¶22 (emphasis added). In other words, she has proceeded to double down on the threats made during her campaign and has employed the vast array of her office's resources to investigating and, ultimately, prosecuting, Defendants. All the while, she has continued to attack them publicly and malign their character, exposing the true purpose of this enforcement action.

In sum, AG James's endless public promises to investigate Defendants, her open disparagement of President Trump, his family, and his business, and her unfounded accusations that Defendants are guilty of wrongdoing despite admittedly lacking evidence to substantiate those claims, all lead to only one plausible conclusion: AG James has selectively targeted Defendants and is weaponizing her office against them as a means of fulfilling a personal and political vendetta.

## B.    The NYAG is Improperly Targeting Defendants as a "Class of One"

"[T]he Supreme Court has….endorsed a class-of-one theory for equal protection claims…based on arbitrary disparate treatment." *NRP Holdings v. City of Buffalo,* 916 F.3d 177 (2d Cir. 2019).

To succeed on a 'class-of-one' theory, a party must demonstrate that he was "intentionally treated differently from others similarly situated and 'there is no rational basis for the difference in treatment.'" *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000). To prevail on similarity alone, a plaintiff must prove as follows: "'(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances

Case 9:22-cv-81780-DMM   Document 11-3   Entered on FLSD Docket 12/16/2022   Page 29 of 32

and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.'" *Hu,* 927 F.3d at 94.

For the same reasons outlined above, the NYAG's grossly divergent use of Executive Law § 63(12), coupled with the litany of malicious statements levied by AG James, establish that the NYAG has targeted Defendants, without any rational basis, for differential treatment.

**POINT IV**

**PLAINTIFF'S CLAIMS ARE BARRED BY THE
STATUTE OF LIMITATIONS**

Defendants adopt and incorporate the arguments contained in the Memorandum of Law filed by Defendants McConney and Weisselberg regarding statute of limitations. (NYSCEF No. 199). As detailed at length therein, the recent amendment to CPLR 213(9) cannot be applied retroactively, nor can it revive time-barred claims. *See, e.g., Matter of Regina Metro. v. N.Y. State,* 35 N.Y.3d 332 (2020). Thus, the Defendants cannot be held liable for any claims that arose on or before August 26, 2019, and even if the statute does apply retroactively, all claims accruing more than six years prior to this lawsuit cannot be maintained.[2]

**POINT V**

**PLAINTIFF'S FRAUD CLAIMS ARE BARRED BY DOCUMENTARY EVIDENCE
AND FAIL TO STATE A CLAIM**

Defendants adopt and incorporate the arguments set forth by Defendants McConney and Weisselberg in their Memorandum of Law regarding documentary evidence and failure to state a claim (NYSCEF No. 199).

The documentary evidence of the SoFc's, *see* Compl. Ex. 3-12, and the disclaimers explicitly set forth therein, conclusively establish a defense as a matter of law to the Executive

---

[2] A tolling agreement was entered into between the NYAG and Trump Organization, but President Trump was not a signatory thereto and therefore is not bound by its terms.

21

Case 9:22-cv-81780-DMM   Document 11-3   Entered on FLSD Docket 12/16/2022   Page 30 of 32

Law § 63(12) fraud claim alleged in the Complaint. *See, e.g., Natoli v. NYC Partnership*, 103 A.D.3d 611 (2d Dep't 2013) (agreement contained specific disclaimer provisions which conclusively establishing defense to claims). The unequivocal disclaimer language precludes Plaintiff from asserting that any corporate counter party reasonably relied upon the information contains in the SoFCs. *See HSH Nordbank v. UBS,* 95 A.D.3d 185 (1st Dep't 2012) (sophisticated bank could have justifiable reliance due to disclaimer in extensively negotiated agreement).

Additionally, the SoFC's constitute "compilation report[s]" which means they are unaudited statements that rely on information presented by Defendants themselves without any assurance from any professional regarding the accuracy of the financial statements or their conformity with generally accepted accounting principles. Similarly, the NYAG has failed to provide expert testimony supporting their fraud claim, which is based upon valuation of assets. Accordingly, the NYAG's Executive Law § 63(12) claim fails as a matter of law.

Case 9:22-cv-81780-DMM Document 11-3 Entered on FLSD Docket 12/16/2022 Page 31 of 32

## **<u>CONCLUSION</u>**

Therefore, the Complaint must be dismissed, with prejudice, pursuant to CPLR

3211(a)(1),(2),(3),(5),(7) and/or (8), and such further relief as the Court deems just and proper.

ALINA HABBA, ESQ.
MICHAEL T. MADAIO, ESQ.
**HABBA MADAIO & ASSOCIATES LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
                    -and-
112 West 34th Street, 17th and 18th Floors
New York, NY 10120
Phone: (908) 869-1188
E-mail: ahabba@habbalaw.com

*Counsel for Donald J. Trump, Allen
Weisselberg, Jeffrey McConney, The Donald
J. Trump Revocable Trust, The Trump
Organization, Inc., Trump Organization
LLC, DJT Holdings LLC, DJT Holdings
Managing Member LLC, Trump Endeavor
12 LLC, 401 North Wabash Venture LLC,
Trump Old Post Office LLC, 40 Wall Street
LLC and Seven Springs LLC*

23

Case 9:22-cv-81780-DMM Document 11-3 Entered on FLSD Docket 12/16/2022 Page 32 of 32

## CERTIFICATION OF COUNSEL

I hereby state, pursuant to pursuant to NYCRR 202.70.17, that the foregoing Memorandum of Law was prepared with Microsoft Word. Pursuant to Microsoft Word's word count feature, the total number of words in the foregoing brief (excluding the caption, table of contents, table of authorities, signature block, and this certification) is 7,000.

Dated: November 21, 2022
       New York, New York

_____
Alina Habba, Esq.